No. 01-344 T
(Judge Lawrence J. Block)

---

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

ROBERT J. ISLER and SUSAN L. ISLER,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT

EILEEN J. O'CONNOR
Assistant Attorney General

STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202)307-6496
(202)514-9440 (facsimile)

Page

# INDEX

Defendant's reply brief in support of its motion for partial dismissal of plaintiffs' complaint . . . . . . . . . . 1

Introduction . . . . . . . . . . 1

I. Preliminary matter . . . . . . . . . . 2

II. Defendant's motion is proper under RCFC 12(b)(1), and is not brought under either RCFC 12(b)(6) or RCFC 56. To grant plaintiffs a refund of tax motivated interest, the Court would have to violate § 7422(h) and change prior partnership item determinations . . . . . . . . . . 3

III. Plaintiffs' settlement agreements were partial and did not resolve tax motivated interest in their favor . . . . . . . . . . 5

A. Introduction . . . . . . . . . . 5

B. The AMCOR settlements resolved only some of the issues before the Tax Court . . . . . . . . . . 6

IV. Plaintiffs new constitutional arguments cannot be considered and lack merit . . . . . . . . . . 16

V. The Court should not follow *Weiner* . . . . . . . . . . 17

VI. Individual profit motive is irrelevant to whether tax motivated interest applies to a sham transaction under former § 6621(c)(3)(A)(v). . . . . . . . . . . 22

A. Introduction . . . . . . . . . . 23

B. Under § 6621(c)(3)(A)(v), any sham transaction is a tax motivated transaction subject to the imposition of tax motivated interest, regardless of an individual's motive for entering into the transaction . . . . . . . . . . 23

C. Plaintiffs reliance of Fifth Circuit decisions is misplaced . . . . . . . . . . 27

D. Plaintiffs' policy objection to tax motivated interest . . . . . . . . . . 30

**Page**

VII. The Tax Court sham determination constituted a valid basis for the assessment of tax motivated interest against the Islers and, under the doctrine of *res judicata*, is binding on plaintiffs . . . . . 31

VIII. Conclusion . . . . . 35

Appendix (attached under separate cover):

| Exhibit | Description |
|---|---|
| 1 | Excerpt from United States' Appellate Brief in *Weiner* |
| 2 | Motion for Entry of Decision in *Oasis Date Associates* |

## CITATIONS

**Cases:**

*Anderson v. Commissioner*, 62 F.3d 1266 (10th Cir. 1995) . . . . . 25, 26

*Chakales v. Commissioner*, 79 F.3d 726 (8th Cir. 1996) . . . . . 25-27

*Chamberlain v. Commissioner*, 66 F.3d 729 (5th Cir. 1995) . . . . . 27-29

*Cinema '84 v. Commissioner*, 294 F.3d 432 (2nd Cir. 2002) . . . . . 10

*Commissioner v. Sunnen*, 333 U.S. 591 (1948) . . . . . 32

*Computervision Corp. v. United States*, 455 F.3d 1355 (Fed. Cir. 2006) . . . . . 16

*Conway v. United States*, 326 F.3d 1268 (Fed. Cir. 2003) . . . . . 21

*Copeland v. United States*, 290 F.3d 326 (5th Cir. 2002) . . . . . 28, 31

*Cuyahoga Metropolitan Hous. Auth. v. United States*, 65 Fed. Cl. 534 (2005) . . . . . 14

*Dureiko v. United States*, 209 F.3d 1345 (Fed. Cir. 2000) . . . . . 11

*Durrett v. Commissioner*, 71 F.3d 515 (5th Cir. 1996) . . . . . 27-29

*Erickson v. United States*, 309 F.2d 760 (1962) . . . . . 35

*Field v. United States*, 328 F.3d 58 (2nd Cir. 2003) . . . . . 4, 5

**Page**

**Cases (continued):**

*Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . 33

*Genesis Oil & Gas, et al. v. Commissioner*, 93 T.C. 562 (1989) . . . . . . . . . . . . . . . . . . 20

*Heasley v. Commissioner*, 902 F2d 380 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 21, 27

*Hill v. Commissioner*, 204 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 24, 25, 31

*Kennedy v. Commissioner*, 876 F.2d 1251 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 29, 30

*Kraemer v. United States*, No. CIV. H-00-2948, 2002 WL 575791
(S.D. Tex. Feb. 13, 2002), *aff'd in part and rev'd in part by*
*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . 9, 11, 12

*Law v. Commissioner*, 84 T.C. 985 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Lockheed Martin Corp. v. United States*, 210 F.3d 1366,
1371-72 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lukens v. Commissioner*, 945 F.2d 92 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 27-29

*Lyons v. United States*, 45 Fed. Cl. 399 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*McCrary v. Commissioner*, 92 T.C. 827 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

Mosca v. United States, 650 F.2d 288 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Pasternak v. Commissioner*, 990 F.2d 893 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 29, 30

*Parklane Hoisery Co. v. Shore*, 439 U.S. 322 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Prochorenko v. United States*, 243 F.3d 1359 (Fed .Cir. 2001) . . . . . . . . . . . . . . . . . . 2, 3

*River City Ranches #1 LTD. v. Commissioner*, 401 F.3d 1136 (9th Cir. 2005) . . . . . 2, 4, 5

*Rodgers v. Commissioner*, 60 T.C.M. (CCH) 1386 (1990) . . . . . . . . . . . . . . . . . . . . . . 21

*Schachter v. Commissioner*, 67 T.C.M. (CCH) 3092 (1994) . . . . . . . . . . . . . . . . . . . . . 21

**Page**

**Cases (continued):**

*Thomas v. United States*, 166 F.3d 825 (6th Cir. 1999) . . . . . . . . . . . . . . 23, 25, 26, 29-31

*Thompson v. United States*, 223 F.3d 1206 (10th Cir. 2000) . . . . . . . . . . . . . . . . 25, 26, 31

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Trauma Serv. Group v. United States*, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . . . . . 9

*United States v. Int'l Bldg. Co.*, 345 U.S. 502 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Fior D'Italia, Inc.*, 536 U.S. 238 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Janis*, 428 U.S. 433 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Weiner v. United States*, 255 F.Supp. 2d 624 (S.D. Tex. 2002),
*aff'd in part and rev'd in part by Weiner v. United States*,
389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Weiner v. United States*, 255 F. Supp. 2d 663 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . 8, 26

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . 9, 12, 16, 17, 18

**Statutes:**

Internal Revenue Code of 1986 (Title 26, U.S.C.):[1]

§ 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
§ 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 31
§ 447 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
§ 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 1092 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
§ 6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

[1] All statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986, as in effect for the taxable year at issue or as in effect otherwise with respect to the facts of the present cases. Internal Revenue Code sections are referenced throughout the brief as "§ [section]."

**Page**

**Statutes (continued):**

§ 6224 . . . . . . . . . . 7, 10
§ 6225 . . . . . . . . . . 20
§ 6226 . . . . . . . . . . 4, 7, 8, 15, 20, 32, 33, 35
§ 6231 . . . . . . . . . . 7, 16
§ 6621 . . . . . . . . . . 1, 4, 5, 8, 11, 13, 16, 17, 19, 22-31, 34
§ 6653 . . . . . . . . . . 8, 11, 13
§ 6659 . . . . . . . . . . 23, 24
§ 6661 . . . . . . . . . . 8, 11, 13
§ 7422 . . . . . . . . . . 2-5

**Miscellaneous:**

Rules of the Court of Federal Claims:

Rule 12 . . . . . . . . . . 3-5
Rule 56 . . . . . . . . . . 3

Temp. Treas. Reg:

§ 301.6224(c)-3T(b) (1987) . . . . . . . . . . 6, 10
§ 301.6621-2T (1984) . . . . . . . . . . 25, 27, 31

H.R. Conf. Rep. No. 99-841 (1986), *reprinted in* 1986-3 C.B. (vol. 4) . . . . . . . . . . 25

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 01-344 T

(Judge Lawrence J. Block)

ROBERT J. ISLER and SUSAN L. ISLER,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' COMPLAINT

## INTRODUCTION

Defendant, the United States, respectfully submits this reply in support of its motion for partial dismissal.

In our opening brief, we explained that the Court lacks jurisdiction over plaintiffs' claim that they are not liable for tax motivated interest under former § 6621(c). Plaintiffs claim that their losses from a partnership, and the resulting tax underpayment, are not attributable to sham transactions by the partnership. But as we explained in our motion, the Tax Court determined in a *partnership* level proceeding that the transactions were, indeed, shams. Plaintiffs were parties to that proceeding. When they entered into a partial settlement during the pendency of the Tax Court proceeding that established the amount of their disallowed losses, the settlement did not disturb the IRS' determination in an FPAA that the losses derived from sham transactions.

Plaintiffs remained parties to the Tax Court proceeding after the partial settlement, and therefore were parties when the Tax Court determined that the partnership transactions were shams.

Our motion to dismiss is based on the simple proposition that the Court, in this *partner* level proceeding, cannot change partnership item determinations. As the Federal Circuit held in *Prochorenko v. United States*, 243 F.3d 1359, 1362-63 (Fed. Cir. 2001) (2-1 decision), § 7422(h) "prohibits refund suits directly contesting partnership items. . . ." *Br.* [Doc. #102] at 11. The sham nature of a partnership transaction for purposes of tax motivated interest analysis is a partnership item that must be litigated at the partnership level. *See River City Ranches #1 LTD. v. Commissioner*, 401 F.3d 1136, 1143-44 (9th Cir. 2005).

Plaintiffs offer a variety of arguments to oppose our motion. The discussion that follows targets their fundamental flaws.

## I. Preliminary Matter

Plaintiffs have submitted approximately five pages of additional asserted facts they consider relevant to the resolution of our motion. *See Br.* [Doc. #110] at 1-5. We address these assertions throughout our brief. To the extent we do not specifically address any factual assertion made by plaintiffs, our silence is not acquiescence, but represents our view that the assertion is irrelevant to the resolution of our motion.

**II. Defendant's motion is proper under RCFC 12(b)(1), and is not brought under either RCFC 12(b)(6) or RCFC 56. To grant plaintiffs a refund of tax motivated interest, the Court would have to violate § 7422(h) and change prior partnership item determinations.**

Plaintiffs contend that our motion to dismiss does not touch the Court's jurisdiction, but in reality is a motion for dismissal for failure to state a claim or a motion for summary judgment. This assertion is intertwined with a refrain repeated throughout plaintiffs' response - that our motion disregards binding Federal Circuit precedent and Second Circuit decisional law by interpreting § 7422(h) to prohibit not only partner level suits seeking to redetermine partnership items, but also partner level suits seeking refunds that flow from partnership item determinations. *See Br.* [Doc. #110] at 6-8, 9, 16-17, 20-21, 29-31.

Plaintiffs' brief misrepresents our position. We explicitly stated in our motion that binding Federal Circuit precedent, *Prochorenko v. United States*, 243 F.3d 1359, 1362-63 (Fed. Cir. 2001) (2-1 decision), interprets § 7422(h) to "prohibit[] refund suits *directly contesting* partnership items." *Br.* [Doc. #102] at 11 (emphasis added). Granting plaintiffs the relief they are seeking here would require the Court to change previous partnership item determinations, not just the effects stemming from them. Plaintiffs' losses were disallowed, and they were assessed with tax motivated interest, because it was determined that the partnerships' transactions were shams. Plaintiffs seek a refund of tax motivated interest by attacking the determinations already made (and confirmed) at the partnership level that the partnerships' transactions were shams. This is exactly the kind of direct attack on a partnership item that the Federal Circuit has held to be barred by § 7422(h). While tax motivated interest is an affected item,[2] its imposition turns not

---

[2] Contrary to plaintiffs' claim, we did not contend that tax motivated interest is a (continued...)

only on partner level considerations, but on the partnership level sham determination. It is that partnership level sham determination that plaintiffs can't challenge in this partner level proceeding.

Indeed, plaintiffs agree that the sham nature of a partnership transaction is a partnership item that must be litigated in a partnership level proceeding. *See Br.* [Doc. #110] at 30-31 ("The Ninth Circuit . . . correctly held that Tax Court has §6226 jurisdiction to make findings concerning the character of the partnerships' transactions."); 32 n.76 ("The economic substance of a partnership level transaction is a partnership item because it entails a determination of partnership income and/or loss."). Plaintiffs also agree that a tax motivated interest analysis can be made up of both partnership level determinations and subsequent partner level ones. *See id.* [Doc. #110] at 13 (". . . as the 9th Circuit recognized in *River City*, any partnership item determination that might be necessary to apply §6621(c) to a partner's tax liability must be determined in the partnership-level proceeding or the partnership item settlement.").

The Second Circuit's decision in *Field v. United States*, 328 F.3d 58 (2nd Cir. 2003) does not require converting our jurisdictional motion under RCFC 12(b)(1) to a different procedural posture. In *Field*, the Second Circuit held that tax motivated interest assessed under former § 6621(c) is not a partnership item - a holding with which we agree - and therefore that a refund suit for its recovery was not barred by § 7422(h). On its face, this conclusion is not startling. A refund suit for tax motivated interest is not *per se* barred by § 7422(h), because § 6621(c) interest is an affected item and computational adjustment. Crucially, however, the Second Circuit did

---

[2](...continued)
partnership item. *See Br.* [Doc. #102] at 20-21.

not address whether a refund suit for tax motivated interest would be barred by § 7422(h), if it was based in particular on changing a partnership item determination. Indeed, plaintiffs agree that *Field* would not preclude barring a partner level suit, if the suit necessitated change to a partnership item component of a tax motivated interest analysis. *See Br.* [Doc. #110] at 13 (". . . as the 9th Circuit recognized in *River City*, any partnership item determination that might be necessary to apply §6621(c) to a partner's tax liability <u>must be determined in the partnership-level proceeding or the partnership item settlement</u>.") (emphasis added). Thus, our motion is brought pursuant to RCFC 12(b)(1), because § 7422(h) precludes the Court from changing partnership item determinations necessary to grant plaintiffs a refund of tax motivated interest.

## III. Plaintiffs' settlement agreements were partial and did not resolve tax motivated interest in their favor.

### A. Introduction

In our opening brief, we explained as a factual matter that plaintiffs' settlement agreements were partial, because they did not settle every partnership item determination made in or related to the FPAAs. The IRS and plaintiffs did not reach any agreement on the determinations of the FPAAs that plaintiffs' partnerships' activities were shams. *See Br.* [Doc. #102] at 2. These facts are reflected in plaintiffs' own complaint and in exhibits on file with the Court, including copies of plaintiffs' settlement agreements, which do not claim to be comprehensive. *See id.* (citing references); *see e.g.*, Compl. [Doc. #1] ¶ 12c ("There was no agreement that the adjustments resulted from tax motivated transactions as defined in §6621(c) or the relevant regulations.").

The limited nature of the settlements demonstrates that plaintiffs' settlements did not

address, and therefore left undisturbed, FPAA sham determinations. Thus, they remained within the TEFRA partnership statutory scheme a valid basis on which the IRS could assess tax motivated interest.

In opposition to our motion, plaintiffs now contend that their settlement agreements were comprehensive and settled all partnership items of their partnerships, even though the agreements do not address the FPAA sham determinations. They argue that the agreements only show those items that were adjusted, not all the items that were settled as a matter of law. They then make the unsupported and erroneous claim that any items not adjusted in the agreements were settled in plaintiffs' favor and on the basis of the original reporting on their partnerships' returns.

### B. The AMCOR settlements resolved only some of the issues before the Tax Court.

Plaintiffs now argue, in contradiction of their own complaint, and at odds with the arguments their counsel made in other AMCOR litigation, that the settlement agreements were comprehensive and resolved all partnership items. While at times unclear, plaintiffs appear to rely on their settlement agreements, other AMCOR partners' settlement agreements, IRS representations to the Tax Court, an IRS letter dated January 15, 1999, which was attached to the aforementioned representations, and Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987). *See App.* [Doc. #110] at B27-B121; *see Br.* [Doc. #110] at 15-17. Plaintiffs are incorrect. Before explaining why, we turn to a summary of what the materials provided by plaintiffs reveal.

The materials reveal that the IRS once believed settlement agreements substantially similar if not identical to plaintiffs' April 9, 1997 agreement was comprehensive. There were

two waves of AMCOR partner settlement agreements, all substantially similar. The IRS viewed the settlements as reflecting agreement that tax motivated interest would be imposed. The IRS viewed the first wave of settlements, which included plaintiffs' settlement agreements, as comprehensive original settlements pursuant to § 6224(c)(1).

That statute addresses "[a] settlement agreement between the Secretary ... and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year...." IRS attorneys contended in the Tax Court that the § 6224(c)(1) settlements were comprehensive. They stated that the settling partners were no longer parties to the Tax Court proceedings pursuant to § 6226(d)(1)(A), and that statute precludes partners from participating in judicial proceedings after all their partnership items convert to nonpartnership items via § 6231(b)(1)(C).

The IRS believed the second wave to be comprehensive consistent settlements pursuant to § 6224(c)(2), which mirrored the settlements of the first wave. Section 6224(c)(2) directs the IRS "to offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in" a previous settlement agreement between the IRS and a partner regarding partnership items for that taxable year. Thus, the IRS believed the original settlements of the first wave gave rise to consistent settlement rights for partners in the second. Often, the IRS' belief in the consistent settlement nature of the second wave of agreements is made explicit by stamping them "consistent agreement." *See e.g. App.* [Doc. #110] at B71. Viewing the second wave of settlements as consistent with the first, the IRS' attorneys also advised the Tax Court that they were comprehensive. They likewise also represented that the settling partners were no longer parties to the Tax Court proceedings

pursuant to § 6226(d)(1)(A).[3]

Plaintiffs seize here upon these representations by the IRS (while ignoring their counsel's contrary position, discussed *infra*) and assert that they mandate concluding their (and other AMCOR partners') settlements were in fact and in law comprehensive. On the basis of plaintiffs' new view that the settlements were comprehensive, they argue that no settling AMCOR partner is bound by any decision in Tax Court partnership litigation, and therefore they are not bound by the July 19, 2001 decision that the transactions were shams in *Oasis Date Associates*, *see Br.* [Doc. #102] at 1-2, 3. They argue further that, if the settlement agreement did not explicitly mention an item, it was settled "unadjusted, as reported on the original Form 1065 partnership return." *Br.* [Doc. #110] at 16. In essence, they argue that silence in the agreement about whether an item was settled means that it was settled - and in plaintiffs' favor.

While they ignore this part of the story, plaintiffs' counsel successfully persuaded two federal courts that the settlements were only partial, not comprehensive, as the IRS was maintaining. The two federal courts held that AMCOR partners had not agreed to the assessment of tax motivated interest. *See Weiner v. United States*, 255 F.Supp.2d 663, 670-71

---

[3] The IRS' attorneys' view that the settlements were comprehensive was also revealed in a January 15, 1999 letter to certain AMCOR partners. *See e.g. App.* [Doc. #110] at B62-B68. The purpose of the letter was to advise partners who had not yet settled that they could request a settlement consistent with the original settlements that would also be comprehensive. Tellingly, the letter expressed the IRS' understanding that the terms of the comprehensive settlements included that settling partners agreed to the imposition of tax motivated interest:

> A request for consistent settlement terms received by February 11, 1999, may result in the concession of the above penalties [additions to tax under 26 U.S.C. §§ 6653 or 6661]by the Government (<u>aside from the increased rate of interest under section 6621 of the Internal Revenue Code</u>).

*See e.g. App.* [Doc. #110] at B68 (emphasis added).

(S.D. Tex. 2002); *Weiner v. United States*, 255 F.Supp.2d 624, 655 (S.D. Tex. 2002), *aff'd in part and rev'd in part by Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004); *Kraemer v. United States*, No. CIV. H-00-2948, 2002 WL 575791, at *2, 12 (S.D. Tex. Feb. 13, 2002), *aff'd in part and rev'd in part by Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004). Plaintiffs' present claim that the settlements were comprehensive is inconsistent with the courts' rulings, which were the products of their counsel's entreaties.

Quite apart from the litigants' prior positions as to whether the settlements were comprehensive, the facts reveal that the agreements themselves did not settle the question before the Tax Court as to whether the partnerships' transactions were shams. The agreements only specify the amounts of certain partnership items to which the IRS and plaintiffs agreed. For example, the settlement agreements set out the amount of plaintiffs' claimed partnership losses that were disallowed. In addition, the agreements are limited to the determinations set forth in the schedule of adjustments attached to the agreements, and the schedules on their face make no claim to comprehensiveness but merely set forth the amounts of certain partnership items to be adjusted. *See e.g. App.* [Doc. #110] at B27 (". . . the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items . . . shown on the attached schedule of adjustments."). Since the contracts, on their face, reveal no mutual intent to contract or unambiguous offer and acceptance of a contract on the sham issue, as a matter of law, none exists. *See e.g. Trauma Serv. Group v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997); *see generally* Dismore, Fed. Cl. 04-1787, Reply [Doc. #31] at 3-4.[4] (Indeed, as mentioned above, the Tax Court went on to determine that the partnerships' transactions were shams.)

[4] The cited *Dismore* brief is available to the Court on the ECF system.

But, among other things, plaintiffs say, as a legal matter, Temp. Treas. Reg. § 301.6224(c)-3T(b) (1987) mandates that their agreements were comprehensive. They claim that plaintiffs' original settlements had to be comprehensive under the regulation, because only comprehensive settlements give rise to a right to consistent (and, *ipso facto* comprehensive) settlements. However, as the Second Circuit has explained, the regulation merely defined the type of settlement that, prior to January 26, 1999, gave rise to a right under § 6224(c)(2) of another partner to enter a settlement consistent with the defined settlement. *See Cinema '84 v. Commissioner*, 294 F.3d 432, 437 (2d Cir. 2002). The regulation simply informed the IRS that *if* it concluded that a settlement was comprehensive, then it was required to offer terms consistent with that settlement to another partner. The IRS had to decide whether an original settlement satisfied the regulation's criteria. It decided that the settlement was comprehensive, and the regulation addresses the consequences of that decision. It does not make a settlement comprehensive.

Plaintiffs also argue that the settlement agreements implicitly settled the sham determination, and did so in their favor. They say that the disallowance of only a portion of their reported partnership losses means they offered and the IRS accepted (unexpressed) terms under which the disallowed deductions were not attributed to sham transactions. According to plaintiffs, if the IRS had maintained the sham position, no loss deductions would have been allowed at all. *See Br.* [Doc. #110] at 32.

Plaintiffs' argument that a failure to express an agreement on a particular matter constitutes an agreement on that matter is pure bootstrapping. As just noted, the settlement agreements say nothing about the FPAA sham determination that was being contested in Tax

Court proceedings and was subsequently decided by the Tax Court. In addition, plaintiffs' view of the settlement is belied by a description of the discussions that preceded the settlement document.[5]

The discussions that led to the AMCOR settlements indicate that the IRS understood that there was agreement that partners were agreeing to concede tax motivated interest in exchange for IRS concessions regarding additions to tax. These discussions are laid out in full with the Court in filings in other AMCOR cases. *See Scuteri*, Fed. Cl. 01-358T, Resp. [Doc. #60] App. A at A1-A75, and *Dismore*, Fed. Cl. 04-1787 T, Reply [Doc. #31] at 7-8.[6] Jerry Gossett, an IRS appeals officer who negotiated the AMCOR partnership settlements, explains:

> 11. As part of the basis for settlement, the Commissioner agreed to concede that no additions to tax under 26 U.S.C. §§ 6653 or 6661 would be assessed. However, because the Service had determined that the purported farming transactions were shams and the AMCOR Partnerships' activities lacked economic substance, the Commissioner agreed to concede the additions to tax and penalties at the partner level only if the taxpayers conceded that tax motivated interest under 26 U.S.C. § 6621(c) would apply to any deficiency in income taxes at the individual partner level.
> . . .
> 14. The LNAO decided to use Form 870-P(AD) as the means by which individual partners could offer to settle, in accordance with the Basis of Understanding, their partnership items and affected items.

*See Scuteri*, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A6, A7.[7]

---

[5] Because plaintiffs attempt to squeeze a settlement of the sham issue from terms that on their face do not mention it but only settle amounts of certain partnership items, extrinsic evidence is permitted to demonstrate that the IRS and plaintiffs never contracted on the sham issue. *See e.g. Dureiko v. U.S.*, 209 F.3d 1345, 1356-57 (Fed. Cir. 2000).

[6] To avoid an unnecessarily large record in this case, we incorporate and rely on these documents, but we will file them separately, if the Court desires.

[7] As set forth in the Declaration of Inocentes A. Tecala preceding the Gossett Declaration cited here, the Gossett Declaration was filed originally by the Government in United States District Court (S.D. Tex.) in *Kraemer v. United States*, No. 03-20176. The *Kraemer* case was
(continued...)

Mr. Gossett also directly contradicts plaintiffs' claim that the IRS' agreement to reduce the disallowed losses determined in the FPAA means the IRS had agreed the losses were not generated by sham transactions. *See Br.* [Doc. #110] at 32. He explains how a portion of the partnership deductions disallowed by the FPAA were restored in the settlement without any abandonment of the FPAA determination that the underlying transactions were shams. The explanation has everything to do with administrative convenience and nothing to do with a purported agreement that the partnerships' transactions were not shams. The IRS, in calculating the adjustments set forth in the schedules attached to the settlement agreements, offset the FPAA's total disallowance of first year partnership losses by an amount that credited partners for income they had recaptured and paid taxes on in later years pursuant to §§ 447/481. Put more directly, the partners claimed large losses initially and recaptured a small portion of those benefits by reporting income in later years. Thus, when the IRS disallowed all of the initial losses, it would be only fair to reduce the income that was reported later. Administratively, the IRS made all the adjustments in the early year, offsetting the income against disallowed losses. From an administrative standpoint, this allowed the IRS to avoid opening and adjusting multiple years of partnership returns, and reviewing thousands of refund claims from partners for multiple years. Partners benefitted too. They would not have to claim, and would not receive, refunds for

---

[7](...continued)
part of the nationwide AMCOR litigation. *See Kraemer v. United States*, No. CIV. H-00-2948, 2002 WL 575791 (S.D.Tex. Feb. 13, 2002), *aff'd in part and rev'd in part by Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004). Gossett, now retired, remains available to testify, if necessary. We understand that the original, signed declaration is on file with the district court in the Southern District of Texas. While defendant would be unable directly to provide the Court with the original (see RCFC Gen. Order 42A, VIII.29.), we presume that the district court would be able to assist the Court if it seeks confirmation regarding the declaration.

the later income years. In the IRS' view, the offset was an administrative tool and was consistent with attributing the remaining disallowed losses to transactions that were shams. *See Scuteri*, Fed. Cl. 01-358 T, Resp. [Doc. #60] App. A at A8-A10 ¶¶ 19-21.

The documents plaintiffs have provided to the Court bolster and confirm Mr. Gossett's explanation. From the January 15, 1999 letter from the IRS to AMCOR partners who had not yet settled the Tax Court litigation, plaintiffs point to the statement that partners who opted for a consistent settlement would avoid future litigation. This statement merely reflects the IRS' view (before plaintiffs' counsel successfully challenged it) that the settlements were comprehensive and provided for the imposition of tax motivated interest (which depends, in part, on whether the partnerships' transactions were shams). Plaintiffs neglect to point out that in the very same letter, the IRS set forth some of the content it believed part of the comprehensive settlement, namely, that partners would pay tax motivated interest on their underpayments:

> A request for consistent settlement terms received by February 11, 1999, may result in the concession of the above penalties [additions to tax under 26 U.S.C. §§ 6653 or 6661]by the Government (<u>aside from the increased rate of interest under section 6621 of the Internal Revenue Code</u>).

*See e.g. App.* [Doc. #110] at B68 (emphasis added).

Consistent with its beliefs and representations to the Tax Court and AMCOR partners, the IRS, soon after entering a settlement agreement with plaintiffs, provided the Islers with notice that the underpayment resulting from the settlement was subject to interest computed at the higher tax motivated interest rate. *See App.* [Doc. #110] at B122-B124; *Resp.* [Doc. #70] ¶ 21.[8] Corresponding assessments followed within one year of the settlements.

---

[8] In the Factual Background section of our opening motion, Doc. #70 is incorrectly cited (continued...)

The IRS' belief that the settlements were comprehensive, and included tax motivated interest, continued for some time, until rejected by judicial decisions. In fact, in early AMCOR filings in the Court of Federal Claims, the United States asserted as a defense to AMCOR partners' claims for tax motivated interest that they were barred from such relief as a result of their settlement agreements. *See e.g. Wood*, Fed. Cl. No. 02-56 T, Answer [Doc. #11] at ¶ 16. As noted *supra*, at the urging of plaintiffs' counsel, two decisions from the Southern District of Texas held that such settlements did not include any agreement on tax motivated interest. *See supra* page 9; *see also Dismore*, Fed. Cl. No. 04-1787, Reply [Doc. #31] at 6-8.

Faced with judicial determinations that the AMCOR partnership agreements were partial, the IRS was obliged to consider the legal consequences of a partial settlement. As explained in our opening briefing, if the settlement was partial, the FPAA sham determinations have not been disturbed. Under the TEFRA statutory scheme, the undisturbed FPAA determinations that the partnerships' transactions were shams therefore remained a valid basis for the IRS to assess tax motivated interest.[9]

---

[8](...continued)
as Doc. #73. Defendant regrets the error.

[9] In light of the historical discussion set forth supra, there is no basis for plaintiffs' claim that judicial estoppel applies here against the government. *See Resp.* [Doc. #110] at 18-19. As we explained, included among the IRS' representations that the settlements were comprehensive was the representation that partners would owe tax motivated interest as part of their settlement agreements. In addition, plaintiffs' counsel are the very individuals who urged the Courts to conclude that the settlements were partial. Plaintiffs, having won that battle, should not be heard to argue that the settlements are comprehensive. Under these circumstances, the Court should invoke its discretion and not invoke the equitable doctrine. *See Cuyahoga Metropolitan Hous. Auth. v. United States*, 65 Fed. Cl. 534, 553-60 (2005). The IRS is not playing fast and loose with the courts; rather, having had its original legal theory rejected, it has attempted to arrive at the correct legal conclusion given the changed landscape. It was plaintiffs' counsel, acting on
(continued...)

Even if the Court were to agree with plaintiffs that the settlements were comprehensive, it would still be necessary to inquire how the settlements dealt with terms not mentioned in them. Plaintiffs say, in that case, the settlement agreements should be read as adjusting the partnership items explicitly set forth in the Forms 870-P(AD) and leaving unadjusted any partnership items not so mentioned. In other words, according to plaintiffs, anything not mentioned in the settlement would be deemed resolved in their favor, *i.e.*, as originally filed. But prior to any settlement, an FPAA *adjusts* partnership items reported on a partnership's return. Here, the FPAAs determined that the transactions reported by the partnerships were shams and adjusted the derivative deductions to zero. Once adjusted, the reporting of a partnership item on the partnership return can only be reinstated if a court re-adjusts the adjustments made in an FPAA. That is why partners file a "petition for . . . readjustment." § 6226(a) (emphasis added). Thus, if plaintiffs are correct that the settlements were comprehensive, the result is a mystery settlement with no way to fill in the missing terms. Presumably, in such case, the Court would look to the intent of the parties. As set forth above, the IRS intent is clear: partners agreed to tax motivated interest.

Finally, plaintiffs mistakenly argue that our view of the law of partial settlements is based on statutes and regulations not effective for the tax years at issue. *See Br.* [Doc. #110] at 17, 24-26. To the contrary, we explained the law of partial settlements applicable to plaintiffs' settlements based on the applicable statutory scheme and explained subsequent amendments in footnotes to provide background and to demonstrate that the law of partial settlements was only

[9](...continued)
behalf of AMCOR partners, that brought about the change in landscape - - a landscape they now wish to contradict.

clarified not changed. *See Br.* [Doc. #102] at 7-8 and nn.7-8. To accept plaintiffs' position, the Court would have to conclude that, prior to August 5, 1997, partial settlements of partnership items never occurred. That would be an absurd result, and one the Fifth Circuit rejected with respect to an AMCOR settlement based on a plain language reading of § 6231(b)(1)(C) (as it was in effect with respect to plaintiffs' settlements). *See Weiner v. United States*, 389 F.3d 152, 156 n.2 (5th Cir. 2004).

**IV. Plaintiffs' new constitutional arguments cannot be considered and lack merit.**

Plaintiffs raise a new constitutional due process claim:

> A holding that the Plaintiffs cannot challenge the §6621 assessment in a partner-level proceeding would be an improper taking or conversion of their defense to that assessment and would violate the substantive and procedural due process rights of all partners in all partnerships for tax years prior to 1997 because it would deny them *any* forum of competent jurisdiction to assert a refund claim based on an erroneous §6621(c) penalty interest assessment.

*Br.* [Doc. #110] at 21-22 (emphasis in original). First, plaintiffs' constitutional claims were not raised in plaintiffs' administrative refund claims, *see* Compl. [Doc. #1] Exs., and therefore cannot be litigated here pursuant to the doctrine of variance, *see Computervision Corp. v. United States*, 455 F.3d 1355 (Fed. Cir. 2006); *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371-72 (Fed. Cir. 2000).

Second, plaintiffs' assertion is based on their incorrect characterization of our arguments. Plaintiffs say that, under our argument,

> a partner's challenge to a §6621(c) penalty interest assessment can be litigated *only* in the partnership-level case where he is barred from raising the nonpartnership item elements. For years prior to 1997, this would create a catch-22 that impermissibly denies partners *any* court of competent subject matter jurisdiction to address §6621(c) penalty interest claims.

*Br.* [Doc. #110] at 22. But, as we have detailed above, our argument is that a partner may only challenge the character of a partnership's transactions in a partnership level proceeding. Plaintiffs agree. *See Br.* [Doc. #110] at 31-32 and n.76. Thus, where the sham nature of a partnership's transactions forms part of a tax motivated interest analysis, that component must be litigated in a partnership level proceeding. Plaintiffs agree with this as well. *See Br.* [Doc. #110] at 13. All other partner specific components necessary to determine whether a partner is liable for tax motivated interest must be determined at the partner level. This was explained in our brief. *See Br.* [Doc. #102] at 20-21.

Plaintiffs were a part of a Tax Court partnership level case filed in 1991 that explicitly challenged the partnership level component relevant to tax motivated interest in this case: the sham nature of plaintiffs' partnerships' activities. While they cannot revisit the sham issue in this partner level proceeding, plaintiffs would be free to raise any partner specific challenges to the assessment of tax motivated interest. Plaintiffs have not been deprived of due process.

**V. The Court should not follow *Weiner*.**

In response to our motion, plaintiffs reiterate their "attributable to" argument for a refund of tax motivated interest. *See Br.* [Doc. #110] at 26-29. Relying on *Weiner v. Commissioner*, 389 F.3d 152, 159-63 (5th Cir. 2004), they contend that the IRS erroneously assessed tax motivated interest against them, because the disallowance of partnership losses (and resulting tax underpayments) under their settlements cannot be attributed to tax motivated transactions. They point out that their settlement agreements do not provide the required nexus, and argue that the FPAA sham determinations cannot. They reason that the FPAAs disallowed the losses on

multiple grounds, and only some of the grounds support attributing the disallowed losses to sham transactions.

Furthermore, say plaintiffs, the required nexus cannot be established in the present proceeding, because the sham nature of a partnership transaction is a partnership item that cannot be litigated in a partner level proceeding. We agree that the nature of the partnership transactions is beyond the jurisdictional scope of the Court in the present proceeding. The Fifth Circuit accepted plaintiffs' former arguments, stating:

> The same situation is present in these cases: the taxpayers settled or conceded the disallowances and paid the delinquent taxes, thus removing the need for a trial on the merits of those issues. This court can conceive of no good reason to treat the taxpayers in this case differently from the taxpayers in *Todd, McCrary, Heasley, Rogers,* or *Schachter*. There is no way, given the multiple reasons provided for the disallowance in the FPAAs, to determine whether the underpayments are "attributable to" a tax motivated transaction.

*Weiner*, 389 F.3d at 162.

We anticipated plaintiffs' *Weiner* based arguments in our brief, *see Br.* [Doc. #102] at 16-17 and n.13, and here respond in greater detail. The *Weiner* appellate panel was not presented with, and therefore did not address, our jurisdictional and *res judicata* arguments regarding tax motivated interest. Both arguments are based on the partialness of plaintiffs' settlements and the legal consequence of partial settlements under TEFRA. *Weiner* also relied on cases outside the TEFRA partnership context. *See id.* at 16-17 n.13.

Before the Fifth Circuit in *Weiner*, the United States argued unsuccessfully that the district court had jurisdiction to determine whether taxpayers overpaid § 6621(c) interest, and, accordingly, to make findings incident to such determination, including findings that a partnership engaged in sham or fraudulent transactions. *See* Ex. 1, App. We followed suit in our

initial briefs to this Court in the original three AMCOR representative cases. *See Isler*, Fed. Cl. No. 01-344 T, Resp. [Doc. #71] at 20-22; *Scuteri*, Fed. Cl. No. 01-358 T, Resp. [Doc. #60] at 17-19; *Prati*, Fed. Cl. No. 02-60 T, Resp. [Doc. #47] at 20-23. However, we subsequently withdrew the argument and replaced it with the arguments made in our motion for partial dismissal, explaining to the Court that the earlier argument was the subject of internal debate within the Tax Division and that the replacement arguments represented the resolution of the debate. *See Isler*, Fed. Cl. No. 01-344 T, Mot. [Doc. #102] at 2-3; *Scuteri*, Fed. Cl. No. 01-358, Mot. [Doc. #72] at 2; *Prati*, Fed. Cl. No. 02-60, Mot. [Doc. #71] at 2.

The Fifth Circuit in *Weiner* therefore did not consider the result that obtains under TEFRA, where a taxpayer settles some disputed partnership items but not the sham nature of the partnerships' transactions. We have explained that, in such circumstance, FPAA sham determinations remain valid unless readjusted by a court, and elaborate below that, in addition, partially settling partners remain parties to the partnership proceedings and are bound by any subsequent decision on unsettled matters. Thus, either the FPAA determinations or judicial decisions can support imposition of tax motivated interest against partners who did not settle the sham issue but settled other partnership items. These conclusions follow the statutory and regulatory scheme governing partial settlements of partnership items and honor the deferential position FPAA determinations hold under TEFRA.

Accordingly, applying the Fifth Circuit's decision in *Weiner* here would contravene the law of partial settlements and degrade FPAA sham determinations. With respect to partial settlements, it would permit a partner to settle some partnership items and, as to unsettled items, avoid both the FPAA and a subsequent unfavorable judicial decision on unsettled items.

With respect to FPAA determinations, the situation grows even worse. TEFRA directs deference for FPAA determinations by permitting them to support assessments unless settled or overturned. FPAA determinations support assessment 1) where a timely noticed taxpayer takes no action in response to an FPAA or takes untimely action in petitioning an FPAA to court, *see Genesis Oil*, 93 T.C. at 566, 2) while a readjustment proceeding in district court or the Court of Federal Claims remains in its infancy, § 6225(a), or 3) after a judicial proceeding where the court does not readjust the FPAA's adjustments, for example, dismisses a petition for failure to comply with the jurisdictional deposit requirement of § 6226(e), § 6226(h). In each instance, the determination is undisturbed and, if it is a determination that transactions were a sham, supports the assessment of tax motivated interest. Thus, it is irrelevant that one valid FPAA determination would not support imposition of tax motivated interest where at least one FPAA determination would and has not been readjusted. However, under *Weiner*, in any of these scenarios, a taxpayer avoids paying tax motivated interest if the FPAA contains multiple grounds to disallow deductions and a court or settlement do not express whether the resolved tax liability is based on grounds that also would support tax motivated interest. A taxpayer might thus avoid tax motivated interest simply by doing nothing after receipt of an FPAA - after paying the assessment and commencing a partner level action, the taxpayer will argue that the FPAA sham determination cannot be evaluated due to the bifurcation of proceedings mandated by TEFRA and cannot, as a matter of law, support imposing tax motivated interest because other determinations in the same FPAA would not. Congress did not craft such a loophole.[10]

---

[10] By degrading FPAA determinations, plaintiffs' *Weiner* argument improperly attempts to shift the burden to us to prove that their underpayments were attributable to sham transactions. (continued...)

Finally, the *Weiner* court was concerned with judicial economy, and perceived no reason to hold in favor of an additional full round of litigation at the partner level after a settlement agreement at the partnership level. That concern does not apply here. We do not contend that an additional round of litigation should be conducted at the partner level to decide whether partnership transactions were shams. Instead, we agree this Court has no such jurisdiction. Rather, we maintain that partners who settle only some of their partnership items are subject to the law of partial settlements, and, as applied here, were properly assessed tax motivated interest. No more litigation is needed here to establish the basis for the imposition of tax motivated interest.

For the same reasons *Weiner* should not apply here, *Weiner's* and plaintiffs' reliance on other decisions is misplaced.[11] None of those cases were partnership cases decided under TEFRA, and therefore none of them addresses the law of partial settlements in the partnership context. There are also additional reasons these cases do not apply here, some of which we have already addressed. *See Resp.* [Doc. #47] at 4-14, 17-20.

---

[10](...continued)
Although we have explained that the FPAA determinations validly attribute plaintiffs' underpayments to tax motivated transactions, in the present refund suits, it is plaintiffs' burden to show that they overpaid their tax liabilities, here, that their underpayments were not so attributable. *See e.g. United States v. Janis*, 428 U.S. 433, 440 (1976); *Conway v. U.S.*, 326 F.3d 1268, 1278 (Fed. Cir. 2003). The assessment of tax motivated interest against plaintiffs is entitled to a presumption of correctness. *See e.g. United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 243 (2002). Thus, plaintiffs have the task of demonstrating the assessment of tax motivated interest incorrect.

[11] *Heasley v. Commissioner*, 902 F.2d 380, 382-83 (5th Cir. 1990), *Todd v. Commissioner*, 862 F.2d 540 (5th Cir. l988), *Schachter v. Commissioner*, 67 T.C.M. (CCH) 3092 (1994), *Rodgers v. Commissioner*, 60 T.C.M. (CCH) 1386 (1990), *McCrary v. Commissioner*, 92 T.C. 827 (1989), and *Law v. Commissioner*, 84 T.C. 985 (1985).

## VI. Individual Profit Motive is irrelevant to whether tax motivated interest applies to a sham transaction under former § 6621(c)(3)(A)(v).

Plaintiffs argue further that the Court has jurisdiction to make any partner fact-specific determinations needed with respect to the imposition of tax motivated interest. The sole partner fact specific determination pointed to by plaintiffs is their motivation for investing in their partnerships. *See Br.* [Doc. #110] at 32-38. We addressed this anticipated argument in our opening brief. *See Br.* [Doc. #102] at 17-18 and n.14. As explained above, the sham nature of a partnership transaction is a partnership item over which the Court lacks jurisdiction. And if a partnership transaction is a sham, it is considered a "tax motivated transaction" to which tax motivated interest may apply. *See* § 6621(c)(3)(A)(v). But there are other considerations – partner specific considerations – in determining whether tax motivated interest applies. A partner's profit motive for investing in a sham partnership transaction is not one of them, however. *See* § 6621(c)(3)(A)(v).

We now respond to the particulars of plaintiffs' partner motivation argument as revealed in their response to our motion. *See Br.* [Doc. #110] at 32-38. The fundamental flaw underlying their argument and the Fifth Circuit case law is their confusing the statutory tax motivated transactions (including sham transactions), as to which individual profit motive is irrelevant, with an additional regulatory tax motivated transaction, which by its terms inquires whether the transaction was entered into with a profit motive, and/or judicial economic substance doctrine.

### A. Introduction

By its terms, § 6621(c)(1) as in effect for the years in issue required the imposition of

additional interest on underpayments "attributable to tax motivated transactions." Section 6621(c)(3)(A) of the Internal Revenue Code of 1986 defined a "tax motivated transaction" as follows:

> (i) any valuation overstatement (within the meaning of section 6659(c)),
>
> (ii) any loss disallowed by reason of section 465(a) and any credit disallowed under section 46(c)(8),
>
> (iii) any straddle (as defined in section 1092(c) without regard to subsections (d) and (e) of section 1092),
>
> (iv) any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period, and
>
> (v) any sham or fraudulent transaction.

As set forth *infra*, the statutory language, the legislative history, and the case law support the conclusion that in the case of a sham transaction, as with other tax motivated transactions, the increased rate of interest applies regardless of the taxpayer's motive for entering into the transaction.

**B. Under § 6621(c)(3)(A)(v), any sham transaction is a tax motivated transaction subject to the imposition of tax motivated interest, regardless of an individual's motive for entering into the transactiom.**

The definition of a tax motivated transaction contains no reference to an individual taxpayer's motives. *See* § 6621(c)(3)(A); *Thomas v. United States*, 166 F.3d 825, 832 (6th Cir. 1999) ("On its face I.R.C. § 6621(c) has no motive requirement"). As the Ninth Circuit has recognized, the "'tax motivated transactions' set out in § 6621(c)(3)(A) show a legislative pattern established by Congress which treats violations of certain code sections as implicit

violations of § 6621(c)," without regard to an individual taxpayer's intent. *Hill v. Commissioner*, 204 F.3d 1214, 1220 (9th Cir. 2000). The Ninth Circuit explained that an individual taxpayer's intent is irrelevant with respect to the tax motivated transactions specified in §§ 6621(c)(3)(A)(i) and (ii) (id.):

> Section 6621(c)(3)(A)(i) imposes increased interest on "any value overstatement (within the meaning of section 6659(c))." Section 6659(c) defines a value overstatement as any time the claimed value or adjusted basis of property is 150% or more of the actual value or adjusted basis. Section 6621 requires no inquiry into the subjective state of mind of the individual making the claim or any requirement that there be something more than the mere violation of § 6659(c).
>
> Similarly, § 6621(c)(3)(A)(ii) imposes the increase on any loss disallowed under § 465(a) or any credit disallowed under § 46(c)(8). Section 465 limits the amount of possible deductions to the amount an individual has at risk in the venture. The calculations under § 465 look solely to the transaction itself . . . and not to the individual's subjective state as to whether he thinks he's at risk. Section 46(c)(8) limits the value of certain investment credits so that a credit cannot be had on that portion of an "investment" which is comprised of nonrecourse debt. Again, § 6621 operates to impose the penalty without consideration of anything beyond the bare requirements of the referenced code sections.

Similarly, the tax motivated transaction described in § 6621(c)(3)(A)(iii) contains no reference to a taxpayer's motivation. That subsection requires the imposition of increased interest with respect to any tax underpayment attributable to any "straddle," as defined in § 1092(c). Section 1092 defines the term "straddle" as "offsetting positions with respect to personal property." § 1092(c)(1). As with §§ 6621(c)(3)(A)(i) and (ii), § 6621(c)(3)(A)(iii) "operates to impose the penalty without consideration of anything beyond the bare requirements of the referenced code sections." *Hill*, 204 F.2d at 1220.

Section 6621(c)(3)(A)(iv) identifies as a "tax motivated transaction" "any use of an accounting method specified in regulations . . . as a use which may result in a substantial distortion of income. . . ." Again, the imposition of additional interest does not include any

inquiry into the state of mind of the person using the prohibited accounting method.

Like §§ 6621(c)(3)(A)(i) to (iv), § 6621(c)(3)(A)(v) on its face contains no reference to a taxpayer's motivation. It simply classifies "any sham or fraudulent transaction" as a "tax motivated transaction." § 6621(c)(3)(A)(v). Just as taxpayer's motivations are irrelevant in applying the definitions of "tax motivated transaction" contained in §§ 6621(c)(3)(A)(i) through (iv), the taxpayer's motives are also irrelevant in applying the definition of "tax motivated transaction" contained in § 6621(c)(3)(A)(v).

Three appellate courts that have addressed the question agree that § 6621(c)(3)(A)(v), by its terms, authorizes the assessment of additional interest against a taxpayer participating in any sham transaction, regardless whether the taxpayer personally had a profit motive in participating in the transaction. *Thompson v. United States*, 223 F.3d 1206, 1212-13 (10th Cir. 2000); *Thomas*, 166 F.3d at 832-34; *Anderson v. Commissioner*, 62 F.3d 1266, 1274 (10th Cir. 1995); *Chakales*, 79 F.3d at 727-28; *see also Hill*, 204 F.3d at 1219-20 (taxpayer's individual motivation was irrelevant in determining liability for § 6621(c) interest based on Temp. Treas. Reg. § 301.6621-2T (1984)); *see generally* H.R. Conf. Rep. No. 99-841 at II-796, *reprinted in* 1986-3 C.B. (vol. 4) at 796 (Congress intended to treat sham transactions similarly to the tax motivated transactions identified in §§ 6621(c)(3)(A)(i)-(iv).).

For example, in *Thompson*, 223 F.3d at 1212-13, the taxpayers conceded that the transaction was a sham, but proposed a jury instruction that, if the jury found that they had invested in the transaction expecting to make a profit, the jury must find § 6621(c) inapplicable. The trial court gave the requested instruction over the Government's objection. The jury returned a verdict in taxpayers' favor, apparently finding that the taxpayers had a profit motive.

 1880162.11

The Tenth Circuit reversed. In holding the jury instruction erroneous, the Tenth Circuit stated that taxpayers' "'argument [of profit motive] might have some merit if the statute made the taxpayer's motivation for entering into the transaction a determining factor. However, where the "tax motivated transaction" is a "sham or fraudulent transaction," the taxpayer's motivation is irrelevant.'" *Thompson*, 223 F.3d at 1212 (*quoting Anderson*, 62 F.3d at 1274). The court concluded that "section 6621(c) simply leaves no room for consideration of the individual taxpayer's motivation when the taxpayer concedes the transaction was a sham." *Thompson*, 223 F.3d at 1212.

These cases, as well as the plain statutory language, demonstrate that an individual taxpayer's motivation is irrelevant to the imposition of § 6621(c) interest in cases involving sham transactions. Plaintiffs attempt, as did the district court in *Weiner*, 255 F. Supp. 2d at 679 n.9, to distinguish *Thompson*, 223 F.3d 1206 and *Thomas*, 166 F.3d 825 on the grounds that the partners in those cases conceded the relevant partnership transactions were shams, while plaintiffs made no such concession in their settlement agreements. This distinction lacks merit. For purposes of § 6621(c)(3)(A)(v), it is immaterial whether a transaction is a sham because the taxpayer so concedes (*Thompson, Thomas, Anderson*), whether it is a sham because a court so finds (*Chakales* and the July 19, 2001 Tax Court decisions relevant to this case), or whether it is a sham because so determined in an FPAA unaffected by settlement and upheld by the Tax Court. In any such situation, the taxpayer is subject to the imposition of additional interest under § 6621(c)(3)(A)(v).

**C. Plaintiffs' reliance on Fifth Circuit decisions is misplaced**.

As noted in our opening brief, plaintiffs cite to the Fifth Circuit's decisions in *Durrett*, *Chamberlain*, *Lukens*, and *Heasley*, to argue that a taxpayer's profit motive is relevant to liability for § 6621(c) interest.[12] Plaintiffs' reliance on these cases is misplaced. As explained in our opening brief and amplified below, none of the four cases construes the plain language of § 6621(c)(3)(A)(v). *See Br.* [Doc. #102] at 18 n.14.

In *Heasley*, the attempted imposition of § 6621 interest was based on Temp. Treas. Reg. § 301.6621-2T, Q-4 (1984), rather than on § 6621(c)(3)(A)(v), which is at issue here. Under the authority granted by § 6621(c)(3)(B), Temp. Treas. Reg. § 301.6621-2T, A4(1) (1984) added a sixth category of tax motivated transaction subject to the higher interest rate, *viz* "an activity engaged in by an individual . . . that is not engaged in for profit" when the Commissioner had disallowed a deduction under I.R.C. § 183. Thus, for this category of tax motivated transaction alone, the express language of Temp. Treas. Reg. § 301.6621-2T made an individual's profit motive relevant, as did § 183, to which the regulation refers.[13] It was in this different context that the Fifth Circuit observed that "the tax court also should have considered the Heasleys' intent when determining whether the Heasleys did not engage in the transaction for profit." 902 F.2d at 386. Because *Heasley* did not involve a sham transaction determination under § 6621(c)(3)(A)(v), at issue here, plaintiffs' reliance on it is misplaced. *See Chakales*, 79 F.3d at

---

[12] *Durrett v. Commissioner*, 71 F.3d 515 (5th Cir. 1996), *Chamberlain v. Commissioner*, 66 F.3d 729 (5th Cir. 1995), *Lukens v. Commissioner*, 945 F.2d 92 (5th Cir. 1991), and *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990)

[13] Section § 183 provides, "In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed. . . ."

728.

Plaintiffs' reliance on *Lukens*, *Chamberlain*, and *Durrett* is also misplaced. In each case, the Tax Court upheld § 6621(c) interest because the taxpayer had participated in a sham transaction. On appeal, each taxpayer contended that he had a profit motive and that, therefore, the additional interest was improper. The Fifth Circuit rejected the contention in each case, because the Tax Court had found that the taxpayer did not have a profit motive, and this finding was not clearly erroneous. *Durrett*, 71 F.3d at 517; *Chamberlain*, 66 F.3d at 732; *Lukens*, 945 F.2d at 99-100. The Fifth Circuit accordingly affirmed the imposition of § 6621(c) interest in all three cases. Thus, these cases do not hold that a sham transaction is not tax motivated for purposes of § 6621(c) unless the taxpayer individually lacked a profit motive; for they merely affirmed the findings of the Tax Court that the taxpayers did not in fact have a bona fide profit motive.[14]

To be sure, the cases contain dicta suggesting that § 6621(c) interest should not be imposed in a case involving a sham transaction if the taxpayer had a profit motive. For example, in *Lukens*, the Fifth Circuit stated, "A sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance." 945 F.2d at 99. We explained in our opening brief that this definition of sham transaction resulted from conflating

---

[14] In *Copeland v. United States*, 290 F.3d 326 (5th Cir. 2002), which postdates *Durrett, Chamberlain*, and *Lukens*, the Fifth Circuit characterized those cases in a manner that supports the suggested reading here. The appellate court noted each opinion "rested [its] affirmance of the imposition of the I.R.C. § 6621(c) interest rate at least in part on the recognition of the Tax Court's factual finding that the individual Taxpayers lacked a profit motive." *Copeland*, 290 F.3d at 338. *Durrett, Chamberlain*, and *Lukens* thus did not decide the question whether § 6621(c) interest could be imposed upon a taxpayer who had a profit motive but participated in a sham partnership transaction.

two different tax motivated transaction definitions and thus tainted *Chamberlain* and *Durrett*, both of which relied on the *Lukens* definition. Also for example, in *Chamberlain*, the Fifth Circuit, after reiterating the conflated definition, observed, "In determining a profit motive we focus on the intent of the taxpayer, not that of the underlying entity or activity." *Chamberlain*, 66 F.3d at 732 & n.13.

Sixth Circuit decisions predating *Thomas v. United States*, 166 F.3d 825, contained similar statements, which that Court later repudiated. In *Pasternak v. Commissioner*, 990 F.2d 893, 904 (6th Cir. 1993), the Sixth Circuit stated, "Because the Tax Court correctly determined that petitioners' motives for investing in the leasing transactions were to reduce their tax liability rather than to reap a profit, the section 6621(c) penalty must also be sustained." Similarly, in *Kennedy v. Commissioner*, 876 F.2d 1251, 1256 (6th Cir. 1990), the Sixth Circuit reasoned:

> Whatever motives drove GFTD investors to participate, there is little doubt that tax motives were predominant. Because investments entered into primarily for tax benefits are not profit motivated, . . . petitioners cannot avoid the Tax Court's increased interest assessment authorized by IRC § 6621(c).

Relying on *Kennedy* and *Pasternak*, the District Court in *Thomas* held that the taxpayer's profit motive is relevant in determining his liability for § 6621(c) interest.

The Sixth Circuit reversed. It characterized the district court's reading of *Pasternak* and *Kennedy* as "misguided," stating that those cases "focused on the taxpayer's motive as part of the analysis in deciding whether the transactions were shams." *Thomas*, 166 F.3d at 832, 833. It concluded that "*Pasternak* and *Kennedy* impose[d] no separate motive requirement to sustain an interest rate increase under I.R.C. § 6621(c)." *Id*. at 833. It then followed the other courts in holding that "by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham." *Id.* at 834.

As was the district court's view in *Thomas*, plaintiffs' reading of Fifth Circuit appellate decisions can be understood as "misguided." *Thomas*, 166 F.3d at 832. The Fifth Circuit decisions, as the Sixth Circuit understood *Pasternak* and *Kennedy*, "impose no separate motive requirement to sustain an interest rate increase under I.R.C. § 6621(c)." *Ibid*. Thus, the Fifth Circuit cases can be harmonized with the Sixth, Eighth, and Tenth Circuit holdings that "by its plain language I.R.C. § 6621(c) imposes no inquiry into the taxpayer's investment motive when the transaction is found to be a sham." *Id*. at 834. To the extent the Court disagrees with this reading of the Fifth Circuit precedent, we also rely on our opening brief critique of it.

**D. Plaintiffs' policy objection to tax motivated interest.**

Plaintiffs also oppose the imposition of tax motivated interest by assuming plaintiffs were innocent dupes of the partnership in which they invested, and, with that assumption, by making the following policy argument: "passive investors who were in no way personally at fault for the disqualification of the relevant deductions and who are required by § 6222 to report consistently with the partnership's return should not be subject to a potentially huge 'no fault' penalty." *Br.* [Doc. #110] at 38. This argument is an attempt to rewrite the statute and has no merit. As set forth *supra*, passive limited partners, even if they were not personally at fault, are subject to § 6621(c) interest under the circumstances specified in §§ 6621(c)(3)(A)(i) through (v) without regard to their motives. For example, if partnership benefits are based on a valuation overstatement, passive limited partners are liable for § 6621(c) interest regardless whether they had a profit motive or were personally at fault. *See* § 6621(c)(3)(A)(i). In addition, the Tenth Circuit responded directly to this argument:

> '[I]t might well be more just that taxpayers who unwittingly enter into sham transactions in hopes of making a profit should not be treated as harshly as taxpayers who do so knowing full well that they are engaging in a sham. Unfortunately, this is not the law, which is dictated here by the inflexible terms of § 6621(c) and the law defining "sham transactions."'

*Thompson*, 223 F.3d at 1213 (*quoting Thomas*, 166 F.3d at 834-35 (Boggs, J., concurring)). In sum, as the Ninth Circuit stated in *Hill*, 204 F.3d at 1220, "Section 6621 requires no inquiry into the subjective state of mind of the individual."[15]

## VII. The Tax Court sham determination constituted a valid basis for the assessment of tax motivated interest against the Islers and, under the doctrine of *res judicata*, is binding on plaintiffs.

In our opening brief, we explained that plaintiffs' settlement was partial and stated that, as a legal consequence, the Robert J. Isler remained party to the Tax Court proceeding in which the FPAA determination that his partnership's activities were shams was being contested, and that the Tax Court upheld the determination. *See Br.* [Doc. #102] at 7-8 and nn.7-8, 14-16 and n.12. In response, plaintiffs charge that the Tax Court proceedings post settlement are irrelevant and that they are not bound by its decisions. *See Br.* [Doc. #110] at 9-10, 24. We discussed this *res judicata* issue more thoroughly in our opening brief in *Prati* than in this case or *Scuteri*. For clarity of the record, we set it forth in more detail here in response to plaintiffs' charge that the Tax Court's decision does not apply to them. We have no objection to plaintiffs being permitted

---

[15] In *Copeland v. United States*, 290 F.3d 326, 336-37 (5th Cir. 2002), the Fifth Circuit criticized *Hill* for not interpreting Temp. Treas. Reg. § 301.6621-2T, A-4(1) to require that a deduction must be disallowed directly under § 183, but did not disagree with the Ninth Circuit's view that an individual's profit motive or lack thereof is irrelevant for purposes of imposition of additional interest under § 6621(c)(3)(A). The correctness of the Ninth Circuit's application of § 301.6621-2T, A-4, in *Hill* is not at issue here.

a response.

Plaintiffs are bound by *res judicata* by the Tax Court's decision that the disallowed losses of the partnership were attributable to sham transactions. Prior to settlement, Robert J. Isler was a party to those proceedings by statute, § 6226(c). Because plaintiffs' settlement agreement was partial, Isler remained a party to those proceedings after settlement as to all unsettled items, including whether the partnerships' transactions were shams. When the Tax Court subsequently determined that the partnerships' transactions were, indeed, shams, Isler became bound like any other party by the decision. Plaintiffs are thus barred by the doctrine of *res judicata* from claiming that their disallowed losses are not attributable to sham transactions.

"Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979).[16] A finding of res judicata requires "'that: (1) the court's prior decision must be a valid and final judgment, (2) the suit before the court must involve the same claim or cause of action as in the prior decision, (3) the prior decision must have been made on the merits of the case, and (4) the same parties must be involved in both cases.'" *Lyons v. U.S.*, 45 Fed. Cl. 399, 403 (1999) (quoting *Mosca v. United States*, 224 Ct. Cl. 678, 679, 650 F.2d 288 (1980)). "Additionally, the Supreme Court has attached significant importance in making sure the nonmovant has had a full and fair opportunity to litigate the claim below." *Id.* (quotation omitted).

The first requirement is satisfied, for the Tax Courts' July 19, 2001 decision was a valid

---

[16]The Supreme Court has specifically held that *res judicata* is applicable in federal tax cases. *Commissioner v. Sunnen*, 333 U.S. 591, 598-99 (1948).

and final judgment. A notice partner of Isler's partnership filed a readjustment petition pursuant to § 6226(b). Thus, under § 6226(f), the Tax Court had "jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates and the proper allocation of such items among the partners." Pursuant to § 6226(g), the Tax Court's decision was valid and subject to review just as any other decision of the Tax Court:

> Any determination by a court under this section shall have the force and effect of a decision of the Tax Court . . . and shall be reviewable as such.

Finally, under §§ 7481, 7483, the decision became final 90 days after entered, *i.e.*, on October 17, 2001.

The second requirement – that both suits must involve the same claim or cause of action – is also satisfied. In comparing claims, the Federal Circuit has endorsed a transactional test. *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 479 (Fed. Cir. 1991). The test focuses on whether two claims are based on a "common nucleus of operative facts," not whether the relief requested or legal theories asserted are the same. *Lyons*, at 403-404.

As regards tax motivated interest, both the claims made in *Oasis Date Associates*, and plaintiffs' claims here rest on identical factual grounds, that the partnerships' disallowed deductions were not generated by sham transactions. The FPAA issued to Isler's partnership disallowed the losses reported on the partnerships' 1984 return, and asserted as one ground that the partnerships' activities were shams. A notice partner filed a readjustment petition with the Tax Court, specifically contesting the sham determination. Under § 6226(f), the Tax Court had jurisdiction to determine the partnership items of ODA, including whether their loss generating activities were shams. The Tax Court's decision disallowed a portion of the deductions disallowed by the FPAA and attributed the disallowed deductions to tax motivated transactions

for purposes of § 6621(c).

Plaintiffs' claim for refund of tax motivated interest in the present proceeding is identical to the claim at issue before the Tax Court. Plaintiffs contend that the partnership losses disallowed by their settlement agreements cannot be attributed to tax motivated sham transactions. While their legal theory they now advance is different than that asserted in the Tax Court - they contend the Court has no jurisdiction to consider the merits of the sham determination whereas the merits were at issue in the Tax Court - the identical factual nucleus is involved: the nature of the partnerships' transactions that gave rise to the partnerships' disallowed deductions. The Tax Court decided the issue in the Commissioner's favor, and plaintiffs cannot avoid that ruling here.

The decision of the Tax Court in *Oasis Date Associates* was a decision on the merits, thus satisfying the third requirement of *res judicata*. The decision was entered on July 19, 2001, pursuant to a motion for entry of decision filed April 13, 2001. *See Mot.* [Doc. #52] App. B, Ex. 8; Ex. 2, App. The motion reflects the agreement of the Commissioner and the tax matters partner of ODA to be bound by the July 19, 2001 decision, including the attributing of deductions disallowed thereunder to sham transactions for purposes of § 6621(c). Tax decisions based on an agreement of the parties are *res judicata*. *See U.S. v. International Bldg. Co.*, 345 U.S. 502, 506 (1953); *Erickson v. U.S.*, 159 Ct. Cl. 202, 217, 309 F.2d 760, 768 (1962). Accordingly, the decisions were merits based determinations on the unsettled sham issue and with respect to which plaintiff Robert J. Isler was bound.

The final requirements for application of *res judicata* are that the same parties must be involved in both cases and have had a full and fair opportunity to litigate in the prior proceeding.

 1880162.11

By statute, Robert J. Isler was a party in *Oasis Date Associates*, with full rights to participate and litigate the sham determination. § 6226(c)(1) and (2). The settlement agreement did not divest him of his party status pursuant to § 6226(d)(1)(A), as he retained an interest in the unsettled sham determination. Therefore, the final requirement for application of *res judicata* is met in this case.

## VIII. Conclusion

For the foregoing reasons, the Court should grant our motion and dismiss plaintiffs' claims for refund of tax motivated interest.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

August 28, 2006