**No. 01-344 T**
(Judge Block)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

ROBERT J. ISLER and SUSAN L. ISLER,

PLAINTIFFS

VS.

UNITED STATES OF AMERICA,

DEFENDANT

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE UNITED STATES' SUPPLEMENT TO MOTION TO DISMISS**

---

THOMAS E. REDDING
TERESA J. WOMACK
SALLIE W. GLADNEY
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
Telephone: (713) 965-9244
Telecopier: (713) 621-5227
Attorneys for Plaintiffs Robert J. Isler and Susan L. Isler

## TABLE OF CONTENTS

Plaintiffs' Response in Opposition to the

Additional/alternative Ground in Support

of the United States' Motion to Dismiss

Plaintiffs' Tax Motivated Interest Claims . . . . . . . . . . 1

1. Plaintiffs' §6621(c) Claims Are Not Subject to The Six-Month Period for Filing a Refund Claim . . . . . . . . . . 3

   a. Plaintiffs' Claims Are Not Based on Computational Errors . . . . . . . . . . 3

   b. Plaintiffs' Claims are Not for Erroneous Computations of Computational Adjustments . . . . . . . . . . 4

   c. The Government's Reliance on *Olson* is Misplaced . . . . . . . . . . 5

   d. The Government's Reliance on Treas. Reg. §301.6231(a)(6)-1T(b) Is Also Misplaced . . . . . . . . . . 7

2. Application of the §6621(c) Penalty Rate of Interest Is an Affected Item . . . . . . . . . . 11

3. The General §6511(a) Refund Claim Period Applies to Affected Items that Require Partner-Level Determinations . . . . . . . . . . 13

   a. The Government Relies on a Single, Minority Authority . . . . . . . . . . 13

   b. The Majority Approach Proves Plaintiffs' Claims were Timely . . . . . . . . . . 14

   c. Plaintiffs' Approach Reconciles the Various Statutory Provisions . . . . . . . . . . 15

   d. Plaintiffs' Approach Is Consistent With TEFRA's Legislative History . . . . . . . . . . 16

4. Only Plaintiffs' Approach Recognizes the Unique Nature of §6621(c) and Protects Partner's Due Process Rights . . . . . . . . . . 17

   a. Section 6621(c) Can Only Be Raised in A Refund Action . . . . . . . . . . 17

   b. IRS Procedures Do Not Provide Adequate Opportunity to File a Refund Claim . . . . . . . . . . 18

   c. Even Six Months Is Insufficient Time to Make Payment in Full . . . . . . . . . . 20

   d. Plaintiffs Had Only Two Months To Pay the Liability in Full and File a Refund Claim Pursuant to a Misleading Notice of Computational Adjustment . . . . . . . . . . 21

5. Conclusion . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Cases**

*AK Steel Corp. v. United States*,
226 F.3d 1361 (Fed.Cir.2000) . . . . . 10
*Barlow v. Commissioner*,
301 F.3d 714 (6th Cir. 2002) . . . . . 6, 17
*BedRoc Ltd., L.L.C. v. United States*,
541 U.S. 176 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) . . . . . 8
*Bob Hamric Chevrolet, Inc. v. United States*,
849 F.Supp. 500 (W.D.Tex. 1994) . . . . . 13, 14
*Brookstone Corp. v. United States*,
1994 WL 621576 (S.D.Tex.) (unpublished)
*aff'd per curium*, 58 F.3d 637 (5th Cir. 1995). . . . . . 2, 3, 14-16
*Carter v. United States,*
530 U.S. 255 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) . . . . . 8
*Chevron v. N.R.D.C., Inc.*,
467 U.S. 837, 104 S.Ct. 2668 (1984) . . . . . 9
*Colautti v. Franklin,*
439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) . . . . . 10
*Comsat Corp. v. FCC*,
250 F.3d 931 (5th Cir.2001) . . . . . 9
*Connecticut Nat. Bank v. Germain*,
503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) . . . . . 8
*Copeland v. United States*,
290 F.3d 326 (5th Cir. 2002) . . . . . 2, 7, 13
*Crooks v. Harrelson*,
282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156 (1930) . . . . . 10
*Dial U.S.A., Inc., v. Commissioner*,
95 T.C. 1 (1990) . . . . . 12
*Duncan v. Walker,*
533 U.S. 167, 121 S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001) . . . . . 8
*Estate of Smith v. United States*,
328 F.3d 760 (5th Cir. 2003) . . . . . 2
*FCC v. RCA Comm.*,
346 U.S. 86 (1953) . . . . . 10
*Field v. United States*,
328 F.3d 58 (2nd Cir. 2003)("*Field I*") . . . . . 2, 3, 18
*Grapevine Imports, Ltd. v. United States*,
71 Fed.Cl. 324 (2006) . . . . . 8
*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564, 102 S.Ct. 3245 (1982) . . . . . 10
*In re Lueders*,
111 F.3d 1569, 42 USPQ2d 1481 (Fed.Cir.1997) . . . . . 9
*In re Zurko*,

142 F.3d 1447 (Fed.Cir. 1998) . . . . . . . . . . 9
*Jama v. Immigration and Customs Enforcement,*
543 U.S. 335 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) . . . . . . . . . . 7
*Kuralt v. United States*,
866 F.Supp. 727 (S.D.N.Y., 1994) . . . . . . . . . . 3
*Meese v. Keene*,
481 U.S. 465, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987) . . . . . . . . . . 9, 10
*N.C.F. Energy Partners v. Commissioner*,
89 T.C. 741 (1987) . . . . . . . . . . 11, 12, 15
*Olson v. United States*,
172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . 5-7, 11
*Olson v. United States*,
37 Fed. Cl. 727 (1997) . . . . . . . . . . 6, 12
*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) . . . . . . . . . . 8
*River City Ranches #1 Ltd. v. Commissioner*,
401 F.3d 1136 (9th Cir. 2005) . . . . . . . . . . 2
*Roberts v. Commissioner*,
94 T.C. 853 (1990) . . . . . . . . . . 12
*Santa Fe Snyder Corp. v. Norton*,
385 F.3d 884 (5th Cir. 2004) . . . . . . . . . . 9
*Statesman II Apartments, Inc. v. United States*,
66 Fed.Cl. 608 (2005) . . . . . . . . . . 9
*Stenberg v. Carhart,*
530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) . . . . . . . . . . 10
*Texaco Inc. v. Duhe*,
274 F.3d 911 (5th Cir. 2001) . . . . . . . . . . 10
*United States v. Lanier*,
520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) . . . . . . . . . . 10
*University Heights at Hamilton Corp v. Commissioner*,
97 T.C. 17 (1991) . . . . . . . . . . 12
*Weiner v. United States*,
255 F. Supp.2d 673 (S.D.TX. 2002) . . . . . . . . . . 13
*Weiner v. United States*,
389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . 2
*White v. CIR*,
95 T.C. 209 (1990) . . . . . . . . . . 17
*Woody v. Commissioner*,
95 T.C. 193 (1990) . . . . . . . . . . 11, 15
*Yellow Transportation, Inc. v. Michigan*,
537 U.S. 36 (2002) . . . . . . . . . . 9
*Yocum v. United States*,
66 Fed.Cl. 579 (2005) . . . . . . . . . . 10

**Statutes**

26 U.S.C. §213 . . . . . 6, 11
26 U.S.C. §6227 . . . . . 14
26 U.S.C. §6228(b) . . . . . 2
26 U.S.C. §6230(a)(1) . . . . . 15
26 U.S.C. §6230(a)(1)(A)(i) . . . . . 15
26 U.S.C. §6230(a)(2)(A)(i) . . . . . 15, 16, 18
26 U.S.C. §6230(c) . . . . . 1-3, 14
26 U.S.C. §6230(c)(1) . . . . . 3
26 U.S.C. §6230(c)(1)(A)(i) . . . . . 1, 2, 4
26 U.S.C. §6230(c)(2) . . . . . 3
26 U.S.C. §6230(c)(2)(A)(i) . . . . . 1-4, 13, 15
26 U.S.C. §6230(d)(6) . . . . . 13, 14
26 U.S.C. §6231(a)(3) . . . . . 2
26 U.S.C. §6231(a)(5) . . . . . 11
26 U.S.C. §6231(a)(6) . . . . . 4, 5, 8, 10
26 U.S.C. §6511(a) . . . . . 2, 13-16
26 U.S.C. §6511(g) . . . . . 14
26 U.S.C. §6601 . . . . . 7, 8, 16
26 U.S.C. §6601(e)(1) . . . . . 6
26 U.S.C. §6621(c) . . . . . 1-7, 11-16, 18-23
26 U.S.C. §6659 . . . . . 6
26 U.S.C. §7422(h) . . . . . 1-3
28 U.S.C. §1346(a)(1) . . . . . 1

**Regulations**

Treas. Reg. §301.6231(a)(5)-1T(a) . . . . . 11
Treas. Reg. §301.6231(a)(6)-1T(b) . . . . . 7, 8

**Other Authorities**

1989 IRS NSAR 9164, 1989 WL 1173044. . . . . . 19
1991 LGM TL-95, 1991 WL 1168400 . . . . . 18, 19

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 01-344 T

(Judge Block)

ROBERT J. ISLER and SUSAN L. ISLER,
PLAINTIFFS
VS.
UNITED STATES OF AMERICA,
DEFENDANT

# PLAINTIFFS' RESPONSE IN OPPOSITION TO THE UNITED STATES' SUPPLEMENT TO MOTION TO DISMISS

The government's most recent motion to dismiss Plaintiffs' §6621(c) claims does not withstand close scrutiny. The government erroneously asserts that Plaintiffs' §6621(c) refund claims were not timely pursuant to §6230(c)(2)(A)(i) because they were not filed within six months from the date the IRS mailed notices of computational adjustment to the Plaintiffs. However, Plaintiffs' claims are not subject to §6230(c), particularly §6230(c)(1)(A)(i) or §6230(c)(2)(A)(i). The six-month period of limitations does not apply because the claims do not allege that the IRS made erroneous computations and they do not challenge any partnership item or erroneous computation of a computational adjustment.

In considering a TEFRA related refund claim for recovery of §6621(c) penalty interest, the Second Circuit Court of Appeals began with the conclusion that:

> District courts generally have subject matter jurisdiction over tax refund claims pursuant to 28 U.S.C. §1346(a)(1). However, under 26 U.S.C. §7422(h), "[n]o action may be brought for a refund attributable to partnership items (as defined in §6231(a)(3)) except as provided in §6228(b) or §6230(c)." [FN2]
>
> FN2. Neither exception to §7422(h) is applicable to this case. ***Plaintiffs-Appellants do not seek a refund based upon a***


R:\DOCS\TAXCONT.T\twwrn036.is1.wpd

> ***computational error under §6230(c)***, nor do Plaintiffs-Appellants seek review of the Internal Revenue Service's ("IRS") denial of a request for an administrative adjustment under §6228(b). [Emphasis added].[1]

The *Field* court's initial observation that a claim to recover penalty interest imposed under §6621(c) is not a §6230(c) based claim is consistent with a prior determination by the Southern District of Texas that was affirmed by the Fifth Circuit - claims for recovery of §6621(c) penalty interest are not claims for computational errors under §6230(c).[2] The *Brookstone* court further held that claims for refund of §6621(c) penalty interest are not subject to the §6230(c)(2)(A)(i) six-month period of limitations for filing a §6230(c)(1)(A)(i) claim, but are subject to the standard period for filing refund claims set out at §6511(a).[3] Plaintiffs in this action timely filed their claims pursuant to §6511(a).

A more complete analysis of the short-lived, "draconian,"[4] "punitive,"[5] "penalty"[6] interest provisions of §6621(c) vis-a-vis TEFRA-related refund procedures illustrates that the government has constructed a false predicate and relied on misconstrued and/or minority authority to support its argument that Plaintiffs' claims are necessarily subject to §6230(c) and not the standard refund claim periods at §6511(a). Contrary and better reasoned authority does not compel the government's conclusions but uniformly and unanimously affirms Plaintiffs' approach to TEFRA-related §6621(c) refunds. Plaintiffs urge the Court to follow the better reasoned, majority approach and deny the

---

1 *Field v. United States*, 328 F.3d 58 (2nd Cir. 2003)("*Field I*").

2 *Brookstone Corp. v. United States*, 1994 WL 621576 (S.D.Tex.) (unpublished), *aff'd per curium*, 58 F.3d 637 (5th Cir. 1995).

3 *Brookstone* at *5.

4 *Weiner v. United States*, 389 F.3d 152, 159 (5th Cir. 2004).

5 *Copeland v. United States*, 290 F.3d 326, 336 (5th Cir. 2002).

6 *E.g.*, *River City Ranches #1 Ltd. v. CIR*, 401 F.3d 1136, 1138 (9th Cir. 2005)(describing §6621(c) as penalty interest); *Estate of Smith v. United States*, 328 F.3d 760, 767, 769 (5th Cir. 2003).

government's motion to dismiss.

Finally, the government's most recent motion to dismiss Plaintiffs' §6621(c) claims and its prior motion to dismiss the same claims are mutually exclusive. In its earlier motion the government asserted this Court lacks jurisdiction over Plaintiffs' §6621(c) refund claims because §6621(c) is a partnership item. Plaintiffs responded that this Court does have jurisdiction over those claims because §6621(c) penalty interest is an affected item. In this most recent motion, the government relies on the same authorities as Plaintiffs and now agrees that §6621(c) is an affected item. If §6621(c) is an affected item, as the government now emphatically asserts, there is no §7422(h) bar on this court's refund jurisdiction and the government's prior motion should be denied.

**1. <u>Plaintiffs' §6621(c) Claims Are Not Subject to The Six-Month Period for Filing a Refund Claim</u>**

**a. Plaintiffs' Claims Are Not Based on Computational Errors**

The government wrongly asserts that the six-month limitations period for filing refund claims set out at §6230(c)(2)(A)(i) controls Plaintiffs' §6621(c) claims. As the caption to §6230(c) literally reads, that section addresses only "Claims Arising Out of Erroneous Computations, Etc." Similarly, the specific language of §6230(c)(1)(A)(i) specifically refers only to claims asserting the IRS "**erroneously computed** any computational adjustment necessary to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return...." There is nothing in the body of §§6230(c)(1) or (2) that indicates Congress meant for this section to apply in any way other than the plain meaning of "erroneous computations," which are essentially math mistakes.[7] Like the claims at issue in *Field* and *Brookstone*, Plaintiffs' §6621(c) claims here do not assert and are

[7] *Kuralt v. United States*, 866 F.Supp. 727, 728 (S.D.N.Y., 1994) (describing §6230(c)(1)(A) claims for "mathematical error").

not based on the theory that the IRS computations are in error. Plaintiffs do assert that the IRS has made erroneous substantive determinations about the applicability of the §6621(c) penalty rate of interest or, even worse, made a naked determination to apply that rate of interest without addressing the partner-level factual determinations required by statute and regulation before the §6621(c) penalty rate can be applied.

**b. Plaintiffs' Claims are Not for Erroneous Computations of Computational Adjustments**

The six-month limitations period also does not apply to Plaintiffs' claims because, by its express terms, §6230(c)(2)(A)(i) only applies to claims for refund made pursuant to §6230(c)(1)(A)(i). That subsection only applies to challenges to the erroneous computation of a "computational adjustment." Consequently, the government's motion to dismiss Plaintiffs' §6621(c) claims is based on a false predicate that theirs' are "claims for refund on the grounds that the Secretary ***erroneously computed*** any ***computational adjustment*** necessary to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, ...."[8]

**c. Assessment of §6621(c) Penalty Interest is NOT "necessary to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return..."[9]**

Even if §6621(c) penalty interest can be assessed as a "computational adjustment," it is not one "necessary to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return."[10] By the very language of this statute, the type of claims referred to are only those based directly on the erroneous computation of the actual necessary change

---

8 §6230(c)(1)(A)(i). [Emphasis added].

9 §6230(c)(1)(A)(i).

10 *Id.*

in a partner's distributive share of a partnership item (e.g., item of income, deduction, credit, etc.) shown on the partnership return. Whether or not the resulting tax deficiency is subject to penalty interest is not a partnership item appearing on the partnership return and required to be consistently reported on the partner's tax return. Nor is the determination of penalty interest in any way "necessary" to "make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return."

**d. The Assessment of Penalty Interest is Not a "Computational Adjustment"**

Under TEFRA "computational adjustment" is an expressly defined term of art. Section 6231(a)(6) defines a computational adjustment as any "change in the ***tax*** liability of a partner which properly reflects the treatment under this subchapter of a partnership item." [Emphasis added]. A review of TEFRA procedures clarifies the nature of computational adjustments and illustrates the government's mistaken characterization of Plaintiffs' §6621(c) claims for refund of penalty ***interest***.

Partnerships do not pay taxes. They report the partnership's tax items, *i.e.*, partnership items. Individual partners report their share of partnership items on their individual returns and use their share of those items in calculating their personal tax liability. Computational adjustments are the simple mathematical, mechanical calculations of a partner's tax liability that result from computing a partner's share of partnership item adjustments and calculating the resulting changes to personal tax liability.

The relevant documents in this case illustrate the statutory definition. The Islers executed Forms 870-P(AD) that settled the "determination of partnership items of the partnership for the year shown on the attached schedule of adjustments." The Schedules of Adjustments identify the partnership items and amounts of the adjustments. But after the Islers executed that Form 870-P(AD), it was still necessary to calculate their share of those partnership item adjustments, apply their share of those adjustments to their personal tax returns, and calculate their personal resulting adjusted tax liability.

The calculations necessary to change the ***tax*** liability of a partner to properly reflect the treatment of a partnership item is the computational adjustment defined at §6231(a)(6). The process can be seen on the Form 4549A-CG.

Plaintiffs have not asserted that the IRS erroneously computed the tax resulting from the partnership item adjustments. Consequently, the six-month period for filing a refund claim for an erroneous computational adjustment does not apply to Plaintiffs' §6621(c) claims.

**e. The Government's Reliance on *Olson* is Misplaced**

In support of its assertion that application of the §6621(c) penalty rate of interest is a computational adjustment, the government relies on dicta and speculation in two footnotes in *Olson* that have been taken out of context and do not stand for the government's proposition.[11] The Federal Circuit did not find or hold that application of the §6621(c) penalty rate of interest is a computational adjustment. Neither did the Court of Federal Claims. That issue was never before either court.

There were three distinct issues in *Olson*. Plaintiffs in that action asserted that the tax associated with carryover adjustments was not a computational adjustment but a substantive affected item and could not be assessed unless the IRS issued a notice of deficiency because it was necessary to make additional fact determinations at the individual partner level. The second issue was whether the IRS could assess §6659 penalties for carryover years without issuing a notice of deficiency if the partner agreed to waive the penalty deficiency notice as to the source year but the agreement was silent as to carryover years. The third issue was whether the IRS could assess §6621(c) penalty interest for carryover years when the settlement agreeing to §6621(c) penalty interest was limited on its face to the source year and did not reference carryover years.

---

[11] *Olson v. United States*, 172 F.3d 1311, n.1and n.2 (Fed. Cir. 1999).

The Court of Federal Claims began its §6659 and §6621(c) analysis with a recitation of general law: "[w]ithout a valid waiver, the IRS would have been required under §6213(a) to issue a notice of deficiency to plaintiffs before assessing the §6659 penalty." The original opinion included §6621(c) in that statement of general law.[12]

At footnote 1, the Federal Circuit called attention to the government's motion to revise that portion of the original *Olson* opinion to remove the reference to §6621(c) penalty interest. The undersigned counsel represented the Olsons in that action and did not oppose that motion because it is generally accepted that interest assessments, including §6621(c) penalty interest, are not subject to subchapter B of the Chapter 63 deficiency procedures.[13] Judge Weise allowed the motion and revised the opinion to remove the cite to §6621(c).

Judge Weise did not hold and the revision did not reflect a decision that §6621(c) penalty interest is a "computational adjustment," as the Federal Circuit implied in dicta at footnote 2 of the appellate opinion. Again, plaintiffs in that action did not raise that issue and it was not before the court. Moreover, the §6659 and §6621(c) issues were not appealed and were not before the Federal Circuit at all. The government's entire argument for dismissal hangs on this mistaken supposition in dicta in *Olson.*[14]

**f. The Government's Reliance on Treas. Reg. §301.6231(a)(6)-1T(b) Is Also Misplaced**

The government makes a cursory reference to Treas. Reg. §301.6231(a)(6)-1T(b) as its only other authority that the §6621(c) penalty rate of interest is a computational adjustment subject to the

---

12 *Olson v. United States*, 37 Fed. Cl. 727, 737 (1997).

13 §6601(e)(1). *See Barlow v. Commissioner*, 301 F.3d 714, 720-22 (6th Cir. 2002).

14 *See Jama v. Immigration and Customs Enforcement,* 543 U.S. 335, 351 n. 12, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) ("Dictum settles nothing, even in the court that utters it.").

six-month period for filing a refund claim. This regulation re-defines a computational adjustment to include interest. The government has not cited any authority supporting application of its interpretation of this regulation to §6621(c) claims because none exists.

In making this assertion, the government ignores the unique nature of §6621(c) and the crux of Plaintiffs' claim. Plaintiffs do not claim, as the government asserts, that the IRS "erroneously computed" the interest they owed under their settlements. The IRS's mathematical calculations appear correct.

The crux of Plaintiffs' claim is that the IRS improperly applied the §6621(c) rate at all.[15] As can be seen from Plaintiffs' motion for summary judgment, by statute and regulation the §6621(c) penalty rate is not and cannot be applied automatically or mechanically as is standard §6601 interest. The applicability of the increased rate of interest under §6621(c) is distinguishable from the mechanical application of standard §6601 interest because it first requires a substantive, partner-level determination that the tax liability was attributable to a tax motivated transaction, as defined by statute and regulation. This issue is discussed more fully in Plaintiffs' motion for summary judgment.

Moreover, Treas. Reg. §301.6231(a)(6)-1T(b) impermissibly broadens the statutory definition of a computational adjustment to include interest that is due with respect to an underpayment or overpayment of tax. While standard §6601 interest could arguably be informally described as a computational adjustment, it does not meet the statutory definition of a "computational adjustment," which is defined as and limited to tax.

Any analysis must always begin with the plain language of the statute.[16] For the tax years at

---

15 *Copeland* at 332-3.

16 *Duncan v. Walker,* 533 U.S. 167, 121 S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001); *Carter v. United States,* 530 U.S. 255, 257, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000); *Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324, 328-329 (2006) ("Statutory construction must begin with the

issue, Congress defined "computational adjustment" in §6231(a)(6) as:

> **the change in the tax liability** of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments. [Emphasis added.]

The preeminent canon of statutory interpretation requires that courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there."[17] The court's inquiry "begins with the statutory text, and ends there as well if the text is unambiguous."[18]

No court has ever held §6231(a)(6) to be ambiguous or silent. Nonetheless, the IRS issued Temp. Treas. Reg. §301.6231(a)(6)-1T(b) which redefines a computational adjustment to include "any interest due with respect to any underpayment or overpayment of tax attributable to adjustments to reflect properly the treatment of partnership items."

The traditional maxim of statutory construction, *expressio unis est exclusio alterius*, is well settled: the expression of one thing is the exclusion of others.[19] "It is axiomatic that the statutory definition of the term excludes unstated meanings of that term."[20] Congress expressly limited computational adjustments to "change[s] in ... tax liability." Interest is not a "tax liability" and,

---

language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."), *quoting Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

17 *BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004), *quoting Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

18 *BedRoc* at 183.

19 "The doctrine [*expressio unis est exclusio alterius*] instructs that where law expressly describes a particular situation to which it shall apply, an irrefutable inference must be drawn that what was omitted or excluded was intended to be omitted or excluded." *In re Zurko*, 142 F.3d 1447, 1456 (Fed.Cir. 1998), *quoting In re Lueders*, 111 F.3d 1569, 1576 n. 12, 42 USPQ2d 1481, 1486 n. 12 (Fed.Cir.1997).

20 *Meese v. Keene*, 481 U.S. 465, 484-485, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987).

therefore, by definition it cannot be a computational adjustment.

In *Chevron*[21] the Supreme Court mirrored the canons of statutory constructions when it established the two step analysis that controls when a court may rely on an agency's regulation and how a court determines if that regulation is valid: if Congress by statute spoke to the question at issue the courts *must* give effect to Congress's unambiguously expressed intent,[22] *only* if the statute is held to be ambiguous or silent may a court then look to an agency's regulation for guidance and determine if that regulation is a permissible construction.[23] Here the statute unambiguously defines a "computational adjustment" as "the change in the **tax liability** of a partner ... ." Emphasis added. The plain language of the definition is neither ambiguous nor silent.

Interest is not a "tax liability" and the IRS may not simply ignore *Chevron*'s "silent or ambiguous" requirement to wedge it into the statutory definition by regulation when Congress spoke clearly and unambiguously and chose to leave it out.[24]

As the Federal Circuit recognizes:

> When Congress makes such a clear statement as to how categories are to be defined and distinguished, neither the agency nor the courts are permitted to substitute their own definition for that of Congress, regardless of how close the substitute definition may come to achieving the same result as the statutory definition, or perhaps a result that is arguably better.[25]

---

[21] *Chevron v. N.R.D.C., Inc.*, 467 U.S. 837, 842-44, 104 S.Ct. 2668 (1984).

[22] *Statesman II Apartments, Inc. v. United States*, 66 Fed.Cl. 608, 623 (2005); *see also Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884, 890 (5th Cir. 2004), *quoting Comsat Corp. v. FCC*, 250 F.3d 931, 937-38 (5th Cir.2001); *Yellow Transportation, Inc. v. Michigan*, 537 U.S. 36, 45 (2002).

[23] *Chevron*, 467 U.S. at 842-44, 104 S.Ct. 2778.

[24] *Yocum v. United States*, 66 Fed.Cl. 579, 586 (2005) ("The legislative intent of Congress is to be derived from the language and structure of the statute itself, if possible."), *quoting United States v. Lanier*, 520 U.S. 259, 268 n. 6, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

[25] *AK Steel Corp. v. United States*, 226 F.3d 1361, 1372 (Fed.Cir.2000).

"When a statute includes an explicit definition, [courts] must follow that definition ...."[26]

Congress could define "computational adjustment" to include interest. "The statute, however, does not do so and no principle of statutory interpretation grants [federal courts] judicial license simply to rewrite statutory language by ascribing additional, material terms."[27] The government's attempt to improperly shoe-horn it in by regulation is shortsighted and ill-advised. "[I]nterpretations of a statute which would produce absurd results are to be avoided ... ."[28] If the government wants interest included in §6231(a)(6) it should go to Congress, not the courts and not the IRS.[29] "Congress did not purport to transfer its legislative power to the unbounded discretion of the regulatory body."[30]

**g. Whether Interest, Including Penalty Interest, is Assessed as a Computational Adjustment need Not be Addressed by This Court.**

The issue argued in f. above need not be addressed by the Court. Determining whether or not interest, even §6621(c) penalty interest, is assessed as a computational adjustment is not necessary to the jurisdictional issue before the Court. Plaintiffs' claim is only subject to the six-month filing requirement if it is a claim based on §6621(c)(1)(A)(i). Therefore, even if it is based on an interest assessment made as a computational adjustment, it is <u>not</u> a claim that the computational adjustment was "erroneously computed." Nor would the interest "computational adjustment" be one that is "necessary to make the partnership items on the partner's return consistent with the treatment of the partnership

---

26 *Meese*, 481 U.S. at 484-485; *see also Stenberg v. Carhart,* 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000); *Colautti v. Franklin,* 439 U.S. 379, 392 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979).

27 *Texaco Inc. v. Duhe*, 274 F.3d 911, 920 (5th Cir. 2001).

28 *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252 (1982).

29 *Griffin* at 575 ("But in such case the remedy lies with the law making authority, and not with the courts."), *quoting Crooks v. Harrelson*, 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930).

30 *FCC v. RCA Comm.*, 346 U.S. 86, 90 (1953).

items on the partnership return." In short, Plasintiff's claim still fails to meet two of the three elements defining the types of claims addressed by §6621(c)(1)(A)(i), even if the interest assessment is a computational adjustment.

**2. <u>Application of the §6621(c) Penalty Rate of Interest Is an Affected Item</u>**

In contrast to the government's evolving series of contradictory approaches to Plaintiffs' §6621(c) claims, Plaintiffs continue to assert, based on the great weight of law and better reasoned analysis, that imposition of the §6621(c) penalty rate of interest is an affected item.

By statutory definition, affected items are any items that are affected by partnership items.[31] There are two types of affected items.[32]

The first type only requires a mathematical, computational adjustment to record the change in a partner's tax liability resulting from the proper treatment of partnership items once the partnership proceeding is complete.[33] *Olson* held that carryovers are computational affected items. The threshold for the medical expenses deduction under §213 is another example of this first type of affected item, as is alternative minimum tax ("AMT").[34] A change in an individual partner's adjusted gross income due to partnership item adjustments will cause a resulting mechanical change in the §213 threshold and/or AMT that can be computed mathematically without further determinations at the partner level.

The second type of affected item is dependent on factual determinations, not merely computations, that can only be made at the individual partner level once the partnership-level

---

31 §6231(a)(5).

32 *See Olson*, 172 F.3d at 1317, *citing Woody v. Commissioner*, 95 T.C. 193, 202 (1990).

33 *See Olson* , 172 F.3d at 1317.

34 *See* Treas. Reg. §301.6231(a)(5)-1T(a).

proceeding is complete.[35] Some courts refer to these types of affected items as "substantive" affected items.[36] "At risk" and basis are affected items to the extent that they are not partnership items.[37] The *Roberts* court held "at risk" was a substantive affected item because the amount at risk depended on the operation of third party side agreements more appropriately determined at the partner level. The *Dial* court held that basis is not a partnership item because it is not required to be taken into account for the taxable year under subtitle A. It is a substantive affected item, however, because a partner's basis is partially comprised of partnership items, such as debt.[38]

Just as it is well-settled that §6621(c) penalty interest is an affected item, it is also well-settled that §6621(c) penalty interest is this second type of affected item - one that requires findings of fact peculiar to the partner.[39] The most common finding of fact cited by the unanimous authorities is the determination of the amount of the taxpayer's underpayment that is attributable to a tax motivated transaction.[40] Application of the formula for making that determination necessarily implicates additional partner-level determinations.

Additional partner-level fact determinations are also necessary with respect to some of the grounds for tax motivated transactions set out by statute and regulation. Here the government asserts that §6621(c) penalty rate was applicable because the underpayment was attributable to sham

---

35 *See Olson*, 172 F.3d at 1317-8, *citing N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744 (1987).

36 *Olson*, 37 Fed. Cl. at 732.

37 *Roberts v. Commissioner*, 94 T.C. 853 (1990); *Dial U.S.A., Inc., v. Commissioner*, 95 T.C. 1 (1990).

38 *University Heights at Hamilton Corp v. Commissioner*, 97 T.C. 17 (1991).

39 *See N.C.F. Energy Partners* at 744.

40 *See N.C.F. Energy Partners* at 746.

transactions. As Plaintiffs discussed more fully in their motion for summary judgment, sham is a two prong test that requires a profit motive determination. All of the authorities to reach the issue of sham in a context of TEFRA-related §6621(c) claims have unanimously determined that profit motive is a fact issue to be determined at the individual partner level, which can only be done after the partnership level proceeding is complete.[41]

Because Plaintiffs' claims do not assert that the IRS made erroneous computations and because §6621(c) penalty interest is not a "computational adjustment" necessary to bring the partner's return consistent with the partnership return, Plaintiffs were not required to file claims for refund within the six-month period following the issuance of the notice of the computational adjustment as required by §6230(c)(2)(A)(i).

**3. The General §6511(a) Refund Claim Period Applies to Affected Items that Require Partner-Level Determinations**

The government asserts the standard §6511(a) period for filing refund claims does not apply in this case because §6230(d)(6) excepts claims for refund of attributable to a partnership item (or an affected item) from subchapter B of Chapter 66 (which includes §6511(a)). The government fills the alleged void in the period for filing affected item refund claims left by §6230(d)(6) with an unsupported extension of the §6230(c)(2)(A)(i) six-month period to substantive affected item claims. But as can be seen above, the §6230(c)(2)(A)(i) period does not apply to Plaintiffs' claims. The better reasoned majority approach applies the standard §6511(a) three year/two year period for filing substantive affected item refund claims, including §6621(c) refund claims.

---

41 See discussion in *Copeland* at 337-8; *Weiner v. United States*, 255 F. Supp.2d 673, 678-88 (S.D.TX. 2002).

**a. The Government Relies on a Single, Minority Authority**

The government's entire argument that the general §6511(a) refund period does not apply to Plaintiffs' §6621c) claims is supported by only one, unreviewed authority issued by a magistrate judge in the Western District of Texas.[42]

In *Bob Hamric*, the court reasoned that "regular refund procedures," including the period for filing refund claims set out at §6511(a), do not apply to partnership or affected items. For authority the court relied solely on §6230(d)(6) and §6511(g).

Reliance on §6511(g) in *Bob Hamric* is erroreous. That section unambiguously states that the provisions of §6227 (which is not at issue here) and §§6230(c) and (d) apply in lieu of the provisions set out at §6511(a) - but only with respect to partnership items. Section 6511(g) does not proscribe the regular period for filing refund claims with respect to affected items. The government does not rely on §6511(g) in its motion.

The *Bob Hamric* court also relied on §6230(d)(6) for support, which at first glance seems more problematical for Plaintiffs. Plaintiffs do not dispute, and now even the government agrees, §6621(c) penalty interest is an affected item.

**b. The Majority Approach Proves Plaintiffs' Claims were Timely**

*Brookstone* is a better reasoned, contradictory, albeit unpublished, authority issued the year after *Bob Hamric* by Judge Rosenthal of the Southern District of Texas. *Brookstone* was affirmed *per curium* by the Fifth Circuit. *Brookstone* held that the standard three year/two year period for filing a refund claim set out at §6511(a) applied to §6621(c) refund claims and establishes that it should be applied in this case as well.[43]

---

42 *Bob Hamric Chevrolet, Inc. v. United States*, 849 F.Supp. 500, 509 (W.D.Tex. 1994).

43 *Brookstone*., *4-5

*Brookstone* recognized that §6230(d)(6) on its face excepts affected items from the standard §6511(a) refund period. But as *Brookstone* makes clear, application of that provision turns on the finer distinctions between TEFRA-affected items and well-established §6621(c) precedent.

The *Brookstone* court recognized that there are two types of affected items, "computational affected items" and non-computational, "substantive affected items" that depend on fact findings peculiar to the particular partner. That court determined that the classification of an affected item determines which deficiency and refund procedures apply - the unique TEFRA procedures or the standard, non-TEFRA deficiency and refund procedures.

The *Brookstone* court recognized that under TEFRA the standard deficiency procedures do not apply to computational affected items.[44] On the other hand, by statute, the standard deficiency procedures do apply to substantive affected items.[45]

That court was persuaded that because the standard, non-TEFRA *deficiency* procedures apply to substantive affected items, the standard, non-TEFRA *refund* procedures must likewise apply. The *Brookstone* court was persuaded that to hold otherwise would treat a substantive affected item as a §6230(a)(1)(A)(i) computational adjustment, a conclusion that *Brookstone* and other courts have expressly rejected.[46]

The *Brookstone* court also agreed that the Plaintiffs' §6621(c) claims in that case were based on substantive affected items and did not challenge the IRS's computation of the change in tax liability as a result of the settlement and were, consequently not subject to the §6230(c)(2)(A)(i) six-month

---

44 §6230(a)(1).

45 §6230(a)(2)(A)(i). *See Brookstone* at *4-5, *citing Woody*, at 202 and *N.C.F. Energy Partners*, at 744-5.

46 *Brookstone* at *5.

period for filing a refund claim.[47] Plaintiffs have made the same assertion here.

Actually, §6230(d)(6) presents a greater problem for the government than for Plaintiffs. For tax years prior to 1997, *Brookstone* is correct that §6230(d)(6) did expressly provide that the statute of limitations under §6511 for filing refund claims did not apply to claims "attributable to affected items." However, since the six-month limitations period for filing a claim under §6230(c)(2)(A)(i) does not apply because Plaintiffs' claims do not arise under §6230(c)(2)(A)(i), there is NO specific statute of limitations for filing the §6621(c) penalty interest claim unless the *Brookstone* analysis is accepted. This Court need not resolve whether there might be a longer statute of limitations applicable than that under §6511, because Plaintiffs' claims were timely filed within two years of payment even if §6511 does apply.

Section §6230(d)(6) was amended for tax years after 1997 to remove entirely its application to any claims attributable to affected items, thus removing this ambiguity regarding relative refund statutes.

**c. Plaintiffs' Approach Reconciles the Various Statutory Provisions**

Holding that substantive affected items remain subject to the standard §6511(a) refund claim period, consistent with the *Brookstone* approach, does not leave §6230(c)(2)(A)(i) meaningless as the government asserts, but gives effect to the statutory provisions. Claims based on erroneous computations to pure computational adjustments to tax would still be subject to the six-month refund claim period. Claims based on erroneous computations of purely computational adjustments to tax affected items would still be subject to the six-month period. Possibly, erroneous computations of §6601 interest would be subject to the six-month period - if the regulation is upheld. However, this is

---

[47] *Brookstone* at *5.

still doubtful because it would not be a computational adjustment necessary to make the partner's return consistent with the partnership's.

It is the government's approach that overreaches by making all partnership items, affected items, computational adjustments, and interest refund claims subject to the §6230(c)(2)(A)(ii) six-month period whether they are claims for an erroneous computation of a computational adjustment or not. The *Brookstone* approach is also the only approach that takes into account the effect of TEFRA procedures on substantive affected items, especially with respect to the imposition of §6621(c) penalty rate of interest.

**d. Plaintiffs' Approach Is Consistent With TEFRA's Legislative History**

The legislative history to TEFRA clearly contemplated that refund claims would be filed after payment of TEFRA-related tax deficiencies pursuant to the standard §6511(a) refund period. The legislative history plainly states:

> A separate statute of limitations applicable to nonpartnership items of a partner may have expired when the computational adjustment of a partner's tax liability attributable to a FPAA or final court decision is made. In such a case neither the Secretary (to reduce a refund) nor a partner (to reduce an assessment) may raise nonpartnership items in determining the partner's tax liability resulting from such computational adjustment. However, if the partner has in fact overpaid his income tax liability for the taxable year with respect to which the computational adjustment was made, he may obtain credit or refund of such overpayment by filing a claim within 2 years following such overpayment, as prescribed by sections 6511(a) and (b)(2)(B). If such claim is not allowed, suit may be filed pursuant to section 7422(a). Any overpayment which may be refunded pursuant to such a claim or suit for refund would be attributable only to nonpartnerhsip items.[48]

**4. <u>Only Plaintiffs' Approach Recognizes the Unique Nature of §6621(c) and Protects Partner's Due Process Rights</u>**

Because there is no pre-payment forum to challenge the imposition of the §6621(c) penalty rate

---

[48] H.R. Conf. Rep. 97-760, 97th Cong., 2nd Sess. 1982, P.L. 97-248, Tax Equity and Fiscal Responsibility Act of 1982 (Aug. 17, 1982), 1982 U.S.C.C.A.N. 1190, 1982 WL 25049, p.611.

of interest and the nature of §6621(c) assessments in TEFRA-related proceedings is unique, the standard §6511(a) period for filing a refund claim should apply and not the abbreviated six-month statute. Moreover, the six-month period should not be imposed on claims for refund of §6621(c) penalty interest because it raises significant due process concerns.

**a. Section 6621(c) Can Only Be Raised in A Refund Action**

It is generally accepted that because interest is not a deficiency, the Tax Court lacks prepayment jurisdiction over §6621(c) penalty interest.[49]

The Sixth Circuit has held that the lack of a pre-payment forum to challenge §6621(c) penalty interest does not violate taxpayer Fifth Amendment due process rights because:

> ...the law is well settled that the availability to a taxpayer of a post-payment judicial forum in which to obtain a determination of his tax obligations is sufficient to satisfy due process requirements."[50]

Because taxpayers have only a post-payment right to judicial review, the procedures associated with the assessment of §6621(c) penalty interest and the procedures associated with perfecting a post-payment claim are of particular concern and illustrate why nothing less than the standard §6511(a) period should apply to §6621(c) refund claims.

**b. As Proffered by the Government, IRS Procedures Do Not Provide Adequate Opportunity to File a Refund Claim**

In the TEFRA context, the IRS cannot propose application of the §6621(c) penalty rate in the Notice of Final Partnership Administrative Adjustment ("FPAA"), which is the TEFRA equivalent of

---

49 *See Barlow* at 720-2 (discussing rationale behind the Tax Court's lack of pre-payment jurisdiction over §6621(c) penalty interest and limits on overpayment jurisdiction), *citing White v. CIR*, 95 T.C. 209, (1990). It is also generally agreed that the Tax Court has overpayment jurisdiction over §6621(c) as long as the claim is brought in conjunction with a petition for a redetermination for the same year. §6621(c)(4); *Barlow* at 720-2.

50 *Barlow* at 722.

a notice of deficiency at the partnership-level. By statute, the FPAA is limited in scope to proposed adjustments to partnership items and penalty interest is not a partnership item.[51] While the underlying partnership item determinations necessary to apply the §6621(c) penalty rate must necessarily be proposed in the FPAA before the IRS can apply that rate, the actual decision to apply the rate is not and should not be included in the FPAA.[52] A §6621(c) determination was not asserted in the Plaintiffs' FPAAs.

Once the partnership-level proceeding is complete, the IRS is required to send the partners notices of deficiency for proposed assessments related to substantive affected items.[53] But unlike many other penalties that are affected items requiring a partner-level determination where the procedures permit assessment only after a statutory notice of deficiency was issued (for tax years before 1997), no notice of deficiency is (or was) required because the §6621(c) rate of penalty interest is assessed as interest.

It has long been the IRS's procedure to not include §6621(c) determinations in any partner-level statutory notice of deficiency issued at the conclusion of the partnership-level proceeding and to automatically assess §6621(c) penalty interest at the time the tax is assessed - even though additional partner-level fact determinations are required to be made before that penalty rate of interest applies.[54] If, as here, there were no other substantive affected items to be assessed at the conclusion of the

---

51 *Field I, supra*.

52 1991 LGM TL-95, 1991 WL 1168400. Plaintiffs are not citing to this LGM as precedential authority, only as some persuasive indication that the IRS recognizes and follows the approach urged by Plaintiffs.

53 §6230(a)(2)(A)(1).

54 1991 LGM TL-95, 1991 WL 1168400; 1990 LGM TL-21, 1990 WL 1086208; 1989 IRS NSAR 9164, 1989 WL 1173044. These sources are not cited for precedential authority but only as persuasive evidence regarding IRS procedures with respect to the imposition of penalty interest.

partnership-level proceedings and no notice of deficiency is issued, then the IRS practice is to simply apply the penalty rate and assess the resulting interest with the tax.

In making this procedural determination, the IRS recognized that taxpayers, especially TEFRA partners prior to 1997, did not have a pre-payment right and were limited to challenging the application of that penalty rate in overpayment/refund actions. In at least one of the internal memoranda instructing IRS officers, agents, and counsel to not assert §6621(c) in partner-level deficiency notices, the IRS concluded and advised that the unique nature of §6621(c) penalty interest as a substantive affected item makes it subject to the standard §6511(a) period for filing a refund claim and that suit on those claims is not precluded by §7422(h).[55]

While the IRS's procedure is that §6621(c) interest should be assessed with the underlying tax, the IRS also recognizes that §6621(c) interest can be assessed pursuant to the normal rules for assessing interest. Therefore, the IRS has ten years after assessing the underlying tax to independently assess and collect §6621(c) interest.[56] The Sixth Circuit recently reached the same conclusion in *Field II*, holding that the IRS has ten years from the date of the underlying tax assessment to assess §6621(c) penalty interest.[57]

This option to assess §6621(c) penalty interest years after the IRS has sent the notice of computational adjustment and assessed the tax makes a mockery of government's claims that §6230(c)(2)(A)(i) establishes a six-month period for filing a refund claim. Upholding application of the government's argument literally gives the IRS the option of assessing the interest after the period for filing a claim has passed and, for tax years prior to 1997, would leave partners with absolutely no

---

55 1989 IRS NSAR 9164, 1989 WL 1173044.

56 §6601(g) and §6502(a). 1990 LGM TL-21, 1990 WL 1086208 at n.8.

57 *Field v. United States*, 381 F.3d 109, 113 (6th Cir. 2004)("*Field II*").

recourse to challenge the imposition of the penalty interest.

**c. Even Six Months Is Insufficient Time to Make Payment in Full**

Even if the IRS assesses interest at the penalty rate at the same time tax is assessed, the effect of applying the §6230(c)(2)(A)(i) six-month period is to reduce or totally eliminate the amount of time a partner has to file a §6621(c) refund claim. While the IRS has sent Forms 4549 to the partners in this case that included references to §6621(c), frequently the first official notice a partner receives that the IRS has assessed penalty interest is the actual assessment. That assessment could be and is frequently made months after the computational adjustment notice is mailed to the partner.

Even if the IRS indicates that it intends to assess §6621(c) penalty interest in the notice of computational adjustment, as it did in the Plaintiffs' Form 4549s, partners are left an abbreviated time to pay the significant tax and interest liabilities in full and file their claims. This enormity of that hurdle distinguishes the short limitations period for filing a pre-payment action in the Tax Court and the short six-month period for filing a refund claim due to mathematical errors.

The distinction is clearly reflected in the changes to TEFRA enacted in 1998 for tax years ending after 1997. With those amendments the jurisdiction in a TEFRA prepayment partnership level proceeding was expanded to cover penalties and a partner's defenses, which can now be raised in a partnership-level proceeding. With that new prepayment forum provided, §6230(c) was also amended to provide a six-month period to file a refund claim. This is arguably a reasonable time if the opportunity first existed to have raised those defenses in the prepayment partner level proceeding.

Whether §6621(c) is even now covered, post-1997, by these procedures is unclear because it remains a unique creature; a penalty rate of interest requiring a partner level determination and not a "penalty" treated as tax. If not for these very ancient cases it would be irrelevant since §6621(c) was repealed in 1989.

Moreover, as this case illustrates, the reality is that partnership tax controversies frequently drag out for years. In the AMCOR partnership cases, the tax years at issue were 1984-1986. The tax controversy was not resolvable until 1997 at the earliest (when a settlement became available) - 13 to 15 years later.[58] As a consequence, the amount of interest at issue in the AMCOR and other TEFRA cases is usually at least 3 times the amount of tax liability and is usually quite significant. Moreover, the amount of the particular type of interest at issue, §6621(c) penalty interest, can easily be 25% to 30% of the total interest assessment. The sheer size of the liability ordinarily precludes any realistic opportunity to make full payment within a short, theoretical six-month period - let alone make payment in an actual two month or less period of time. Few people have ready access to liquid assets necessary to pay tens or hundreds of thousands of dollars of liability in such a short period of time.

**d. Plaintiffs Had Only Five Months To Pay the Liability in Full and File a Refund Claim Pursuant to a Misleading Notice of Computational Adjustment**

With respect to the Islers, the government asserts that the relevant notice of computational adjustment was the Form 4549 sent to them at the end of August of 1997.

In general, in TEFRA situations, the IRS's practice is to not address or include interest, particularly §6621(c) TMT penalty interest, on the Form 4549A-CG. Consequently, the Form 4549 does not provide actual notice of the amount of interest that is eventually assessed.

Here the IRS notified the Islers of the adjustments to their partnership items via the Form 4549. The Form 4549 sent to the Islers state that they will be assessed ***tax*** of $4,990.00. Significantly, the Islers' Form 4549 was silent regarding interest and did not include any proposed assessment of §6621(c) TMT interest. See the Form 4549 attached at Exhibit A.

---

[58] For partners who did not enter into settlements but remained parties to the Tax Court proceeding, the controversy was not resolved until 2001 - or 15 to 18 years later.

The IRS made the resulting assessments on September 27, 1997 - a full month into their alleged six-month period for filing a refund claim. The IRS assessed tax of $4,990.00 and interest and penalty interest of $11,682.06. On November 22, 1995, the Islers remitted $16,717.00 to the IRS to stop the running of interest on any validly assessed 1984 liabilities. The IRS summarily applied the 1995 remittance to the September assessments and refunded the difference of $44.94 to them. See the IRS's transcript of account for the Islers for 1984 attached at Exhibit B.

The IRS not disclose to the Islers the amount of interest or §6621(c) TMT penalty interest it proposed to assess against them in the Form 4549. The IRS also did not notify the Islers that it did actually assess §6621(c) interest against them at the time it applied their 1995 remittance and sent them a refund.

Tax interest is compounded daily using a floating rate that changes quarterly. Tax interest calculations must generally be made by specialized computer software that is pre-programed with the IRS's rate changes. As the attached calculations illustrate, a lay taxpayer, such as the Islers, would not have been able to calculate the interest due on the $4,990.00 tax assessment and would have had no idea that the IRS had assessed interest at the §6621(c) TMT penalty rate or whether ir was correct. See the summary computation of interest calculated at the standard interest rate attached at Exhibit C. Compare with the summary computation of interest calculated at the §6621(c) TMT penalty rate attached at Exhibit D.

The IRS is not required to notify taxpayers about changes to interest computations. And as is its practice in TEFRA cases, the IRS does not notify partners that it is assessing §6621(c) at the time it notifies partners of the amount of a proposed tax assessment. The failure to disclose the proposed §6621(c) TMT assessment on the Form 4549, combined with the complete lack of subsequent notice that it had actually assessed interest at the greater §6621(c) penalty rate and the amount of that

assessment was misleading and deprived the Islers of the any real opportunity to file a refund claim within the too short six-month limitations period the government urges this Court to adopt.

If a refund claim for interest assessed like a computational adjustment is subject to the six months filing deadline, as now asserted by the government, then the IRS's failure to inform the partners of how it computed the interest that it *actually assessed* against them is deceptive and may mislead lay taxpayers to not file valid refund claims. For all of the reasons set forth above, it is not subject to that six-month limitations period.

**5. Conclusion**

Plaintiffs' §6621(c) penalty interest refund claims do not fall within the scope of the six-month period for filing claims under §6230(c)(2)(A)(i). Plaintiffs' §6621(c) penalty interest refund claims were timely filed with the standard §6511(a) period for filing claims.

WHEREFORE, Plaintiffs respectfully object to the granting of the United States' motion to dismiss their §6621(c) claims and pray that the Court deny that motion.

Respectfully submitted,

/s/Thomas E. Redding

Thomas E. Redding, Attorney of Record
Teresa J. Womack
Sallie W. Gladney
REDDING & ASSOCIATES, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244 / (713) 621-5227 Fax
**ATTORNEYS FOR PLAINTIFFS**