# In The United States Court of Federal Claims

Nos. 03-2028T & 04-907T

(Filed: April 18, 2007)

---

| | |
|---|---|
| KENNETH C. KEENER,<br>WILLIAM P. SMITH, and<br>ANNE D. SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | * Tax refund suit; Motion for partial dismissal; Tax Equity and Fiscal Responsibility Act (TEFRA); Unified partnership provisions; 26 U.S.C. § 7422(h) – no action attributable to partnership item; Jurisdictional issue involving 26 U.S.C. § 6229 is either partnership item or affected item over which this court lacks refund jurisdiction; Waiver; Impact of individual partner settlements; Issue involving imposition of interest under 26 U.S.C. § 6621(c) is either partnership item or affected item over which this court lacks refund jurisdiction; Motion granted. |

---

**OPINION**

---

*Thomas E. Redding* and *Teresa Jean Womack,* Redding & Associates, P.C., Houston, Texas, for plaintiffs.

*Bart Duncan Jeffress*, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Eileen J. O'Connor*, for defendant.

**ALLEGRA, Judge:**

In this tax suit, Kenneth C. Keener, William P. Smith and Anne D. Smith (collectively plaintiffs) seek refunds of federal income taxes and interest paid in connection with their investments in various partnerships. At issue on defendant's motion for partial dismissal of plaintiffs' complaints is whether this court has jurisdiction, notwithstanding 26 U.S.C. § 7422(h), to entertain plaintiffs' claims that: (i) Notices of Final Partnership Administrative Adjustments (FPAAs) were untimely filed by the Internal Revenue Service (IRS) and cannot support the tax assessments against them; and (ii) they are entitled to recover interest charged against them for "tax-motivated transactions" pursuant to now-repealed 26 U.S.C. § 6621(c).

## I. BACKGROUND

In the early 1980s, American Agri-Corp, Inc. (AMCOR) organized a number of limited partnerships, for which it acted as general partner, and solicited investments from other individuals. Kenneth Keener was a limited partner in Agri Venture II (AVII) during the 1984 tax year, and a limited partner in Agri Venture Fund (AVF) during the 1985 tax year. William Smith was a limited partner in Richgrove Grape Associates (RGA) during the 1984 tax year, and a limited partner in Desert Highlands Vineyards (DVA) in the 1985 tax year. Each entity reported an ordinary loss deduction in the relevant year, which was apportioned between partners *pro rata*. The taxpayers, each filing jointly with their spouse, reported their proportionate shares of partnership losses on their 1984 and 1985 income tax returns.

In 1991, the IRS sent each of the aforementioned partnerships a FPAA, which stated that the loss deductions reported in 1984 and 1985 were not allowable because each "partnership's activities constitute[d] a series of sham transactions." Finding no allowable deductions, the agency adjusted the partnerships' reports accordingly, and assessed each of the partners their respective shares of the unpaid tax and interest. Also in 1991, several partners filed petitions for readjustment in the U.S. Tax Court, contesting the adjustments made in the FPAA. *Inter alia*, the partners claimed that the FPAA was issued after the applicable period of limitations had expired, and contested the characterization of the partnerships' activities as "sham transactions."

In 1997, while the Tax Court litigation was still pending, each of the plaintiffs and the IRS entered into settlements via Forms 870-P(AD). After accepting these settlements, the IRS assessed additional tax liability and interest pursuant to section 6621(c) of the Code.[1] Plaintiffs paid these additional amounts, and filed claims for refunds with the IRS. On July 19, 2001, the Tax Court rendered a decision in the partnership-level proceeding, finding the various partnership transactions to be sham transactions.[2] The IRS denied plaintiffs' refund claims shortly thereafter. Thereupon, plaintiffs commenced separate refund suits in this court in 2003 and 2004, arguing: (i) that the FPAAs were issued after the applicable period of limitations had expired, rendering any amounts assessed and paid following issuance of the FPAA refundable overpayments, and (ii) alternatively, that the IRS improperly assessed penalty interest against plaintiffs because the loss deductions that they claimed were not the result of sham transactions. On August 11, 2005, these suits were consolidated.

---

[1] All references here are to the Internal Revenue Code of 1986 (26 C.F.R.), as amended, and in effect during the years at issue.

[2] Specifically, the Tax Court found that "the foregoing adjustments to partnership income and expenses are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursement method of accounting." It further found that "the assessments of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6629."

On November 4, 2005, and August 14, 2006, defendant filed partial motions to dismiss, contesting the court's subject matter jurisdiction. On February 21, 2006, plaintiffs filed a motion for partial summary judgment, contending that the section 6621(c) penalty interest was improperly assessed because plaintiffs' transactions were not shams, or tax-motivated, transactions. Each of these motions has been fully briefed. On November 16, 2006, the court conducted oral argument, but restricted the discussion to issues involving its subject matter jurisdiction.

## II. DISCUSSION

Before embarking into the wilds of the TEFRA partnership provisions, one is well-advised to review the contours of the terrain.

### A. Statutory Background

"Although they file information returns under section 701 of the Code," this court has observed, "partnerships, as such, are not subject to federal income taxes. Instead, under section 702 of the Code, they are conduit entities, such that items of partnership income, deductions, credits, and losses are allocated among the partners for inclusion in their respective returns." *Grapevine Imports Ltd. v. United States*, 71 Fed. Cl. 324, 326 (2006); *see also United States v. Basye*, 410 U.S. 441, 448 (1973). Prior to 1983, the examination of a partnership for federal tax purposes was a tedious affair, essentially encompassing an audit of each partner. The limitations period for making assessments was determined at the partner level and, because any resulting litigation was also conducted at that level, multiple proceedings in different venues involving the same partnership were common, sometimes producing a welter of inconsistent results. *See* Arthur B. Willis, John S. Pennell & Philip F. Postlewaite, Partnership Taxation (hereinafter "Pennell") at ¶ 20.01[2] (6th ed. 1999) (describing the pre-1983 procedures); *Grapevine Imports*, 71 Fed. Cl. at 326-27.

Seeking to remedy this sitution, Congress revolutionized the scheme for auditing partnerships in the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324, 648-671 (TEFRA). TEFRA "created a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002) (citing H.R. Conf. Rep. No. 97-760, at 599-600 (1982)). Under this new regime, partnerships are required to file informational returns reflecting the distributive shares of income, gains, deductions, and credits attributable to their partners, while individual partners are responsible for reporting their *pro rata* share of tax on their income tax returns. *See* 26 U.S.C. § 701; *Weiner v. United States*, 389 F.3d 152, 154 (5th Cir. 2004), *cert. denied*, 544 U.S. 1050 (2005); *Kaplan v. United States*, 133 F.3d 469, 471 (7th Cir. 1998).

The threshold determination whether, *vel non*, an item is a "partnership item" governs how the TEFRA procedures apply. The treatment of partnership items is resolved at the partnership level, in a unified partnership proceeding. 26 U.S.C. § 6221; *see also id*. at §§

6211(c), 6230(a)(1). While TEFRA defines a "partnership item" in various ways, the concept generally encompasses items "required to be taken into account for the partnership's taxable year" and those "more appropriately determined at the partnership level than at the partner level." *Id*. at § 6231(a)(3).[3] Which items are "more appropriately determined at the partnership level" is further refined in Treasury Regulation section 301.6231(a)(3)-1(a), which provides that such items include the income, gains, losses, deductions and credits of a partnership. *See also Prochorenko v. United States*, 243 F.3d 1359, 1363 (Fed. Cir. 2001). In addition, Treasury Regulation section 301.6231(a)(3)-1(b) states –

> The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing and characterization of items of income, credit, gain, loss, deduction, etc.

Nonpartnership items are those items that are not partnership items, 26 U.S.C. § 6231(a)(4), the tax treatment of which is resolved at the individual partner level, using, *inter alia*, the normal deficiency procedures of the Code. *Id*. at §§ 6211, 6212, 6230(a)(2); *see Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000) (per curiam). At the interstices between partnership and nonpartnership items lies a third category of TEFRA items, so-called "affected items," hybrids of a sort, defined as "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5).[4]

If the IRS decides to adjust any "partnership items" reflected on the partnership's return, it must notify the individual partners of the adjustment through a FPAA. 26 U.S.C. § 6223; *Kaplan*, 133 F.3d at 471. The period for making assessments under TEFRA is, with exceptions not pertinent herein, the cross-product of two vectors corresponding to sections 6229(a) and 6501 of the Code. The former provides generally that –

> the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of –

---

[3] In relevant part, section 6231(a)(3) states –

> (3) Partnership item. – The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

26 U.S.C. § 6231(a)(3).

[4] Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of such "affected items." *See Olson v. United States*, 172 F.3d 1311, 1316-17 (Fed. Cir. 1999).

> (1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions).

Section 6501(a) of the Code provides in pertinent part: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ." Contrary to plaintiffs' claims herein, the Federal Circuit recently held that section 6229(a) of the Code unambiguously extends the statute of limitations in section 6501 of the Code for assessing taxes on partnership items. *AD Global, LLC ex rel. North Hills Holding, Inc. v. United States*, 2007 WL 624366 at *2 (Fed. Cir. March 2, 2007). In that case, the court opined that "[section] 6229(a) does not provide a separate statute of limitations, but simply creates a minimum period that may extend the regular statute of limitations for partnership items." *Id*. at *1; *see also Crnkovich*, 202 F.3d at 1335 n.7; *Grapevine*, 71 Fed. Cl. at 339.[5]

For ninety days following issuance of an FPAA, the tax matters partner (TMP) has the exclusive right to file a petition for readjustment of the partnership items in the Tax Court, this court, or a United States District Court. 26 U.S.C. § 6226(a); *see also Monahan v. Comm'r of Internal Revenue*, 321 F.3d 1063, 1065 (11th Cir. 2003). Thereafter, certain other partners with significant holdings in the partnership have sixty days to file a petition for readjustment. 26 U.S.C. § 6226(b)(1). If a partner's tax liability might be affected by the outcome of the litigation of partnership items, that partner may participate fully in the proceeding. *Id*. at §§ 6224(a), 6224(c). The IRS may assess additional tax liability against individual partners within one year of the final conclusion of the partnership's tax determination. *Id.* at § 6229(d). In theory, the

---

[5] Outlining how its ruling comports with the TEFRA statutory scheme, the Federal Circuit explained –

> TEFRA generally requires determination of the tax treatment of partnership items at the partnership level. In the partnership-level administrative proceeding, the IRS may adjust items reported on the partnership tax return which, in turn, would affect the corresponding items on the income tax returns of the individual partners. Each partner receives notice of the beginning of such an administrative proceeding, may participate in the proceeding, and receives notice of the FPAA. This scheme contemplates that adjustments to partnership items are made in one proceeding before assessments are made at the individual partner level. Our interpretation may extend the regular statute of limitations in § 6501(a) for assessments to individual partners, but does not alter the statutory scheme of determining partnership items in one partnership-level proceeding.

*AD Global*, 2007 WL 624366 at *3 (citations omitted). The court thus concluded that its construction of section 6229(a) "is consistent with a statutory scheme that intends that adjustment to a partnership tax return be completed in one consistent proceeding before individual partners are assessed for partnership items." *Id*.

partner may contest the tax liability by paying the assessment and filing a refund action in this court. However, with exceptions not relevant herein, "[n]o action may be brought [in this court] for a refund attributable to partnership items (as defined in section 6231(a)(3))." *Id*. at § 7422(h); *see also Prochorenko*, 243 F.3d at 1362-63.

To the extent a partner settles his partnership tax liability with the IRS, the partner no longer participates in the partnership level litigation, and instead is bound by the terms of the settlement agreement. 26 U.S.C. §§ 6224(c)(1), 6226(d), 6228(a)(4)(B). Partnership items convert to nonpartnership items when the IRS enters into a settlement agreement with the partner with respect to such items. *Id*. at § 6231(b)(1)(C). If a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of § 7422(h) no longer applies. *See Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995).

With this brief *tour d'horizon*, the court now turns to the twin jurisdictional dilemmas posed by defendant's first dismissal motion.

**B. FPAA Limitations Period**

Plaintiffs chiefly base their refund claims on the theory that their respective individual statutes of limitations on assessments had run prior to the time the IRS assessed income taxes and interest against them in 1998 and 2001, respectively. To avoid the jurisdictional bar of 26 U.S.C. § 7422(h), they argue that whether section 6229(a) extended their individual limitations periods on assessment found in section 6501 of the Code is not a "partnership item." In so contending, they stress that the specific timing of the assessment periods under section 6501 is unique to each partner, claiming, as a result, that the assessment periods here are "affected items" that the Tax Court could not have reached in the partnership-level case. Because these issues were not before the Tax Court, they maintain, they could not have been encompassed within the section 6224(c) partnership item settlements. The result, according to plaintiffs, is that the limitations issue may be raised here. Not so, defendant contends. It asserts that plaintiffs may not raise their statute of limitations defense for the first time here, having failed to pursue it at the earlier partnership-level proceeding.

Plaintiffs' argument hinges on several faulty premises, which the court will examine in detail. The first of these is that the limitations issue presented involves either an affected item, or perhaps a nonpartnership item that ***can*** be resolved here. In fact, as will be seen, the converse is true – the limitations issue involves either a partnership item or an affected item that ***cannot*** be resolved here.

In a well-rehearsed claim, plaintiffs assert that the issues presented do not constitute a partnership item because the provisions at issue, sections 6229(a) and 6501 of the Code, lie in subtitle F of title 26. They note that section 6231(a)(3) defines a partnership item as any item required to be taken into account for the partnership's taxable year "under any provision of subtitle A." But, the latter reference does not, in so many words, prevent a court from treating, as

partnership items, legal issues that impact whether the Commissioner's treatment of partnership items arising under subtitle A will be sustained. Indeed, the relevant Treasury Regulation defines a "partnership item" as including "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b). Reflecting the breadth of this definition, issues concerning section 6229 have been held to involve an underlying legal determination within the meaning of this regulation and thus have been treated as partnership items. *See Weiner*, 389 F.3d at 157; *Slovacek*, 36 Fed. Cl. at 255. Other cases, often citing the above legislative regulation, repeatedly have held that the presence of various provisions in subtitle F does not prevent them from being considered partnership items. Some of these cases deal with the assessment provisions in subtitle F, *see, e.g.*, *River City Ranches #1 Ltd. v. Comm'r of Internal Revenue*, 401 F.3d 1136, 1144 (9th Cir. 2005); while others deal with subtitle F provisions that involve the conduct or authority of the TMP, *see Kaplan*, 133 F.3d at 473; *Clark*, 68 F. Supp. 2d at 1345; *Klein v. United States*, 86 F. Supp. 2d 690, 696 (E.D. Mich. 1999). Based on these various decisions, as well as the statutory and regulatory provisions upon which they are based, it would appear that to the extent this case requires a construction of section 6229(a), it involves a partnership item, preventing those arguments from being considered here. *See Weiner*, 398 F.3d at 156 (rejecting the notion that the placement of section 6229(a) in subtitle F is controlling).

One, of course, might reasonably argue that issues involving the interaction of sections 6229 and 6501 are instead "affected items" – parsing the definition under section 6231(a)(5), this interaction could be viewed as giving rise to an item (the section 6501 limitations) "affected by a partnership item" (the 6229(a) extension). *See* Treas. Reg. § 301.6231(a)(5)-1(a). But, even if true, that does not mean that this court has jurisdiction over this issue. Under the TEFRA partnership rules, affected items essentially have two prongs – one involves a partnership issue, while the second involves a nonpartnership issue, with the latter affecting the former. *See* Pennell, *supra*, at ¶20.02[4][c]. It is well-established that the partnership prong of an affected item – in this case, the proper construction of section 6229(a) – must be determined first in a unified partnership proceeding. The result from that proceeding is then applied at the individual partner level to the extent that it impacts what otherwise is a nonpartnership item – in this case, the limitations period on assessments. As the Tax Court has repeatedly explained, "because the tax treatment of an 'affected item' depends upon the partnership-level determination, affected items generally cannot be tried as part of a partner's tax case prior to the completion of the partnership-level proceeding'" *GAF Corp. & Subs. v. Comm'r of Internal Revenue*, 114 T.C. 519, 528 (2000) (quoting *Gillilan v. Comm'r of Internal Revenue*, 66 T.C.M. (CCH) 398, 401 (1993)); *see also Katz v. Comm'r of Internal Revenue*, 335 F.3d 1121, 1124 (10th Cir. 2003); *Dubin v. Comm'r of Internal Revenue*, 99 T.C. 325, 328 (1992); *Clark*, 68 F. Supp. 2d at 1347; *Maxwell v. Comm'r of Internal Revenue*, 87 T.C. 783, 792-93 (1986).[6] These cases hold that

[6] Other cases are not to the contrary. For example, while several cases talk in terms of penalties being affected items addressed at the individual partner level, *Monahan*, 321 F.3d at 1066, these cases involve situations in which the partnership items affecting the penalties had

partners must first raise any partnership item that "affects" their personal items at the partnership-level proceeding – they must, in other words, obtain resolution of the partnership prong of their affected items before later turning to the affected nonpartnership prong.

But, what if they do not? What if, for example, the partnership item is not resolved in the partnership-level proceeding or the partner no longer is a party to that proceeding when the issue is resolved? In such circumstances, the structure of the TEFRA partnership provisions seemingly dictates that a court may not, in a partner-level proceeding, consider a challenge to the partnership prong of an affected item, thus effectively precluding such a court from considering the affected item at all. Certainly, the TEFRA provisions authorize the individual partner to pursue, in the partnership proceeding, the resolution of any partnership issues that might impact his affected items. In this regard, section 6226(c) of the Code entitles a partner to participate fully as a party in the partnership proceeding, presumably allowing such a partner to raise issues that are not raised by the TMP. *See Clark*, 68 F. Supp. 2d at 1345-46 (discussing this provision).[7] Such partners also may generally opt out of any settlements reached by the TMP, should they so choose. *See* 26 U.S.C. § 6224(c). Moreover, while, under section 6226(d) of the Code, a partner forfeits this right to participate in the unified partnership proceeding if he settles all of his partnership items, such is apparently not the case if a partial settlement leaves extant one or more partnership items that impact an affected item. Tying these provisions together, section 6229(a) expressly extends the statute of limitations for "affected items" undoubtedly to ensure that this process can run its course. *See AD Global*, 2007 WL 624366 at *3; Pennell, *supra*, at ¶20.02[5]. It is implicit in this structure that if the partner chooses not to pursue his rights in the unified partnership proceeding, he may not later challenge the partnership prong of his affected item in a subsequent partner-level proceeding. And the cases so hold. *See GAF Corp.*, 114 T.C. at 526-27; *Lindsey v. Comm'r of Internal Revenue*, 84 T.C.M. 521, 522 (2002) (finding no jurisdiction, noting "[p]etitioners had an opportunity to raise their allegation during the TEFRA procedures, but they failed to do so"). Indeed, a contrary holding would threaten "the line of demarcation drawn by Congress between the audit and litigation of partnership tax matters and the resolution

---

already been resolved at the partnership level. *See*, *e.g.*, *Callaway v. Comm'r of Internal Revenue*, 231 F.3d 106, 110 (2d Cir. 2000); *see also Chimblo v. Comm'r of Internal Revenue*, 177 F.3d 119, 121 (2d Cir. 1999), *cert. denied*, 528 U.S. 1154 (2000); *Olson v. United States*, 37 Fed. Cl. 727, 733 (1997), *aff'd*, 172 F.3d 1311 (Fed. Cir. 1999).

[7] In this regard, one group of commentators has stated that "[n]o matter who files the petition for readjustment of partnership items for a taxable year, every person who was a partner in the partnership at any time during the taxable year involved and who has an interest in the outcome of the action is a party to the action," adding that "[t]he court having jurisdiction of the action must allow the person to participate in the action." Pennell, *supra*, at ¶20.06[2]. Consistent with the statute, such partners are considered full parties in the partnership-level proceedings under both the TEFRA partnership procedural rules adopted by the Tax Court and this court. *See* RUSTC 245, 247; RCFC, Appendix F, paras. 4, 6. It should be noted that if the TMP does not file a petition to initiate the partnership-level proceeding, the partner may file such a petition. 26 U.S.C. § 6226(b)(1).

of all other tax items of the partner." *Carmel v. Comm'r of Internal Revenue*, 98 T.C. 265, 269 (1992).

Whether the court views the interaction of sections 6229(a) and 6501 as involving a partnership item or as an affected item, the result is the same – the court is precluded from considering the statute of limitations issue plaintiffs raise in this partner-level proceeding. This conclusion proceeds from two distinct rationales. First, in terms of the Code, any resulting refund here would be "attributable to" partnership items within the meaning of section 7422(h), at least as the quoted language in that provision is ordinarily understood. *See Braunstein v. Comm'r of Internal Revenue*, 374 U.S. 65, 70 (1963) ("attributable" means "caused or generated by"); *Gilman v. Comm'r of Internal Revenue*, 933 F.2d 143, 151 (2d Cir. 1991), *cert. denied*, 502 U.S. 1031 (1992) ("attributable" means "stems from"); *see also* The Am. Heritage Dictionary of English Language 117 (4th ed. 2000).[8] Consistent with this view, it would appear that section 7422(h) precludes the court from considering, in partner-level proceedings, not only partnership items standing alone, but also partnership items that impact affected items otherwise before the court, such partnership items being what the court has termed the "partnership prong" of the affected item. Construing the statute in this fashion has the added value of effectuating, rather than defeating, the twin purposes of section 7422(h) – to promote judicial economy and consistency of decision. It avoids the prospect of courts wasting considerable resources deciding substantive tax issues in unified partnership proceedings, only to find out later that no assessments can be made. And it averts the welter of conflicting decisions that might result should each partner, in pursuing affected items, be allowed litigate in an individual refund action issues common to the partnership as a whole partnership.[9]

Second, wholly apart from section 7422(h), it appears that plaintiffs have waived their limitations objection. As others of their colleagues apparently did, they could have pursued their statute of limitations defense in the earlier partnership-level proceeding, but, apparently in the

---

[8] In *Monti v. United States*, 223 F.3d 76 (2d Cir. 2000), the Second Circuit held that a non-settling partner's claim for tax treatment consistent with that accorded other partners in a settlement with the IRS was not a claim for refund attributable to a "partnership item." In so concluding, the court rejected an interpretation of the "attributable to" language that would have swept into partnership proceedings claims "entirely about and entirely dependent on facts peculiar to a single partner." *Id*. at 82. Here, of course, resolution of the limitations issue is not entirely dependent upon facts peculiar to plaintiffs; indeed, the arguments made by plaintiffs are common to any partners from whom the section 6501 assessment period assertedly had run. Other cases have distinguished *Monti* on this basis. *See Weiner*, 389 F.3d at 157-58.

[9] If plaintiffs were correct virtually any partnership item could be indirectly considered in a partner-level proceeding. To give but one more example, section 213(a) determines the allowability of medical expenses as a function of the individual's adjusted gross income, which, of course, would depend upon the partnership distributive share of the partnership income or loss. A case concerning such a medical expense deduction should not provide a vehicle for consideration of the partnership's income or losses. *See Callaway*, 231 F.3d at 110 n.4.

interest of obtaining a favorable settlement, chose not to do so.[10] In such circumstances, the jurisprudence of both the Tax Court and this court suggest that the limitations argument they now raise is not jurisdictional, but rather was an affirmative defense that, by their actions, was waived. *See*, *e.g.*, *United States v. Hitachi America, Ltd.*, 172 F.3d 1319, 1333-34 (Fed. Cir. 1999); *Columbia Bldg., Ltd. v. Comm'r of Internal Revenue*, 98 T.C. 607, 611-12 (1992); *cf. John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006) (statute of limitations in 28 U.S.C. § 2501 is jurisdictional and not waived). Nor are plaintiffs correct in asserting that such a waiver should not apply here because the courts have refused to consider arguments concerning section 6229(a) in unified partnership proceedings. In fact, arguments concerning that section were raised in the very partnership proceeding in which plaintiffs initially participated. *Agri-Cal Venture Assocs. v. Comm'r of Internal Revenue*, 80 T.C.M. (CCH) 295, 297 (2000). And similar issues concerning the impact of section 6229 on assessment periods have been resolved in a variety of partnership-level proceedings under section 6226(f) of the Code, most recently in the Federal Circuit's decision in *AD Global*, 2007 WL 624366 at *1-2.[11] Accordingly, plaintiffs should not now be heard to raise limitations objections that they could have pressed – and that others, indeed, pressed – in the unified partnership proceeding.

This court is not the first to reach these conclusions. Far from it. In *Chimblo*, 177 F.3d at 125, the taxpayer also argued that the individual limitations period in section 6501 had expired prior to the time the IRS issued the relevant FPAA notices. The Second Circuit, however, noted that such a statute of limitations defense is not jurisdictional and could be waived if not raised at the appropriate time. *Id*. Finding further that issues concerning the construction of section 6229 were partnership items, the court noted that "[i]n the context of this case, one involving the application of TEFRA, petitioners had a right to raise the partnership statute of limitations defense in the earlier partnership-level proceeding, but failed to do so." *Id*. The Second Circuit concluded that a statute of limitations defense concerns a "partnership item . . . that must be raised at the partnership level." *Id*. "Allowing individual taxpayers to raise a statute of limitations defense in multiple partner-level proceedings," the court observed, "would undermine TEFRA's dual goals of centralizing the treatment of partnership items and ensuring the equal treatment of partners." *Id*.

A legion of decisions are to similar effect, proceeding either on the basis that section 6229(a) involves a partnership item or that the failure to raise that section in a partnership-level proceeding resulted in a waiver. *See Weiner*, 389 F.3d at 156-57 ("the majority of courts to

---

[10] Plaintiffs certainly could have raised this issue even if it was not raised by other partners. In this regard, section 6226(c) of the Code indicates that in partnership-level proceedings: "(1) each person who was a partner in such partnership at any time during such year shall be treated as a party to such action, and (2) the court having jurisdiction of such action shall allow each such person to participate in the action."

[11] *See also*, *e.g.*, *Grapevine Imports*, 71 Fed. Cl. at 328-29; *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r of Internal Revenue*, 114 T.C. 533, 535 (2000), *appeal dismissed and remanded*, 249 F.3d 175 (3d Cir. 2001).

consider this issue have held that the FPAA statute of limitations issue is a partnership item that must be litigated in a partnership level proceeding"); *Davenport Recycling Assocs. v. Comm'r of Internal Revenue*, 220 F.3d 1255, 1260 (11th Cir. 2000) ("taxpayers must raise the statute of limitations defense within the context of a partnership-level proceeding"); *Williams v. United States*, 165 F.3d 30 (6th Cir. 1998) (Table), 1998 WL 537579, at *3 ("It is well established that [FPAA] statute of limitations challenges are considered challenges to a partnership item.); *Kaplan v. United States*, 133 F.3d 469, 473 (7th Cir. 1998) ("this kind of statute of limitation challenge concerns a partnership item"); *Crowell v. Comm'r of Internal Revenue*, 102 T.C. 683, 693 (1994) ("[w]e conclude that the statute of limitations defense as it pertains to the FPAA . . . should have been prosecuted within the context of a partnership level proceeding and is not properly before us in this proceeding").[12] Although these decisions employ different rationales, they uniformly "have reasoned that because the FPAA limitation issue affects the partnership as a whole, it should not be litigated in an individual partner proceeding, as such a result would contravene the purposes of TEFRA." *Weiner*, 389 F.3d at 156-57. And this court sees no reason to disagree.

Plaintiffs' settlement agreements with the IRS do not render the above cases inapposite. To be sure, as in effect during the years in question, section 6231(b)(1)(C) of the Code converted partnership items into nonpartnership items when "the Secretary enters into a settlement agreement with the partner with respect to such items." Thus, by virtue of a settlement agreement, items previously viewed as partnership items can become individualized, arguably rendering the constraints imposed by section 7422(h) inapplicable. *See Slovacek v. United States*, 40 Fed. Cl. 828, 829-30 (1998); *Olson*, 37 Fed. Cl. at 733. Plaintiffs assert that such a metamorphosis happened here, but with a novel and convenient twist – while they contend that the agreements were sufficient to convert the limitations issue into a nonpartnership item, they assert that the agreements did not resolve the limitations issue, leaving them free to litigate that issue here. If plaintiffs are right, their agreements put them in a truly enviable position – what might be described as "heads we win, tails we win bigger" – that is, if the limitations provision did not bar the assessments here, the agreements limit plaintiffs' tax liability, but if the limitations provision barred the assessments, plaintiffs owe nothing.

While the field of federal taxation is marked by several "*Helvering*" doctrines such as "substance over form," there is, strictly speaking, no "too good to be true" rule. Yet, that is no cause for this court blithely to embrace an absurd result – or to conclude that the IRS or the Congress did so. In terms of the IRS, two provisions in the settlement agreements at issue suggest that any objections concerning the timeliness of the assessments were waived by plaintiffs in exchange for benefits received from the IRS. The agreements thus provide that the taxpayer "offers to waive the restrictions on the assessment and collection of any deficiency attributable to partnership items" and that "no claim for refund or credit based on any change in

---

[12] *See also Clark*, 68 F. Supp. 2d at 1344; *Thomas v. United States*, 967 F. Supp. 505, 506 (N.D. Ga. 1997); *Barnes v. United States*, 1997 WL 732594, at *3 (M.D. Fla. 1997), *aff'd*, 158 F.3d 587 (11th Cir. 1998).

the treatment of partnership items may be filed or prosecuted." In the court's view, the most reasonable reading of these provisions – indeed, the only interpretation that would not render them virtually meaningless – is that plaintiffs, in exchange for being allowed to deduct some of the losses associated with their investments, agreed not to challenge the validity of any assessments resulting from the specified treatment of the partnership items. *See Slovacek v. United States*, 36 Fed. Cl. 250, 256 (1996) (agreeing that the plaintiffs waived "their right to rely on the supposed invalidity of the partnership's waiver of the statute of limitations in executing the Form 870-L(AD)"); *see also Olson v. United States*, 172 F.3d at 1318.[13] Accordingly, far from aiding plaintiffs, if anything, these settlement agreements suggest yet another reason why this court should not consider plaintiffs' limitations argument.[14]

Assuming, *arguendo*, that the agreements did not settle the limitations issue *sub judice*, then it would seem to follow that they were ineffective to convert that issue into a nonpartnership item for purposes of section 7422(h). Upon close reading, the language of section 6231(b)(1)(C) plainly applies on an item-by-item basis, as it states that the partnership items of a partner shall become nonpartnership items as of the date the Secretary enters into a settlement agreement with the partner with respect to "such items." The last phrase, of course, would be superfluous if, as plaintiffs intimate, the entry of a settlement agreement as to ***any*** partnership item converts ***every*** partnership item into a nonpartnership item. That the phrase "such items" refers only to those items actually covered by an agreement is confirmed by several other subparagraphs in section 6231(b)(1) that employ the same phraseology. One of these, section 6231(b)(1)(A), provides that partnership items shall become nonpartnership items as of the date the Secretary mails to such partner a notice that "such items" shall be treated as nonpartnership items. Modifying this provision, section 6231(b)(2)(B)(i) of the Code states that this notice may be provided as to "one or more of such [partnership] items." Because "such items," as used in the notice provision of section 6231(b)(1)(A), obviously connotes that less than all the available partnership items need be converted, it is reasonable to assume that the same holds true in section 6231(b)(1)(C), that is, that only those partnership items actually resolved in a settlement agreement are converted to nonpartnership status.[15] *See Weiner*, 389 F.3d at 156 n.2 ("The Code provides that only those

---

[13] It is, of course, axiomatic that an interpretation of an agreement "which gives a reasonable meaning to all parts will be preferred to one which . . . achieves a weird and whimsical result." *Arizona v. United States*, 575 F.2d 855, 863 (Ct. Cl. 1978); *see also Fortec Constr. v. United States*, 760 F.2d 1288, 1292 (Fed. Cir. 1985); *Franconia Assocs v. United States*, 61 Fed. Cl. 718, 730 (2004).

[14] Although plaintiffs do not raise this issue, it should be noted that even if the settlement agreements were not binding of their own force, they became so under principles of equitable estoppel once the IRS could not recoup the benefits conferred upon plaintiffs. *See Union Pacific R. Co. v. United States*, 847 F.2d 1567, 1571-73 (Fed. Cir. 1988).

[15] Another common rule of construction holds that identical words in different parts of the same statute are presumed to have the same meaning. *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 88-89 (1934); *Murakami v. United States*, 52 Fed. Cl. 232, 241 (2002).

partnership items encompassed by the settlement agreement are converted to nonpartnership items."). This view is also consistent with the statute's legislative history, which, though limited on this point, plainly suggests that section 6231's conversion of partnership to nonpartnership items can occur selectively.[16]

Contrary to plaintiffs' claims, the court sees nothing in the regulations that existed prior to 1997 to indicate that section 6224(c) settlements had to be comprehensive. Plaintiffs make the latter claim in asserting that the agreements in question necessarily had to convert plaintiffs' limitation periods to nonpartnership items. But, plaintiffs err in suggesting that any such comprehensiveness was dictated by Treas. Reg. § 301.6224(c)-3T(b) (1987), which states that "[s]ettlements shall be comprehensive, that is a settlement may not be limited to selected items." A careful review reveals that this regulation had nothing to do with the scope of all TEFRA settlements, but rather was designed only to implement the requirement under section 6224(c) of the Code that if the IRS enters into a settlement agreement with any partner, it shall offer any other partner who so requests settlement terms consistent with those contained in the first settlement agreement. Placed in its proper context, it is readily apparent that not every TEFRA settlement had to be "comprehensive" under this regulation, but rather only those subsidiary agreements entered into based upon the consistency requirement – in other words, the regulation sensibly indicates that to obtain a consistent settlement, the second partner seeking to settle must

---

[16] *See* H.R. Conf. Rep. 97-760 at 609 (discussing the notice provision and stating that "[t]he Secretary may notify a partner that ***a*** partnership item will be treated as ***a*** nonpartnership item") (emphasis added); *id.* at 611 ("Neither the Secretary nor the taxpayer will be permitted to raise nonpartnership items in the course of a partnership proceeding nor may partnership items, except to the extent they become nonpartnership items under the rules, be raised in proceedings relating to nonpartnership items of a partner."). In 1997, Congress modified sections 6229(f)(1) and 6601(c) to deal specifically with situations in which the IRS and a taxpayer entered into a settlement agreement with respect to some, but not all, of the partnership items in dispute for a partnership taxable year. While this provision is ineffective for the years in question, it is notable that, in the 1992 legislative history, Congress clearly thought that current law, dating back to the original TEFRA, anticipated that settlement agreements could be entered into covering some, but not all, partnership items. Thus, in explaining the reason for passing the provision, the accompanying House Report states that –

> [w]hen a partial settlement agreement is entered into, the assessment period for the items covered by the agreement may be different than the assessment period for the remaining items. This fractured statute of limitations poses a significant tracking problem for the IRS and necessitates multiple computations of tax with respect to each partner's investment in the partnership for the taxable year.

H.R. Rep. No. 102-631, at 145 (1992); *see also* H.R. Rep. No. 105-148, at 591 (1997).

agree to all the terms that were in the original settlement.[17] Moreover, even if plaintiffs' interpretation were correct – requiring the court to conclude that the Treasury imposed a requirement of comprehensiveness found nowhere in the statute – it is difficult to see how that assists them. If the limitations period was resolved by the agreement, plaintiffs cannot raise it here; if it was not resolved by the agreement, the issue was resolved by the prior litigation, in which the Tax Court explicitly ruled that section 6229 extended the statute of limitations on assessment. Nothing in these regulations suggests that Congress intended that a settlement could be both ineffective to resolve the treatment of an issue and yet convert that same issue into a nonpartnership item that could then be raised, at the partner's choosing, in an individual refund suit.[18]

In sum, the settlement agreements here may well present an additional basis for rejecting plaintiffs' claims, they certainly provide no escape path from the refund suit limits imposed by section 7422(h). Those statutory restrictions require the court to dismiss plaintiffs' complaints to the extent they raise the sections 6229/6501 limitations issue.

---

[17] The latter point, indeed, was made explicit in temporary regulations issued in 1999. *See* Treas. Reg. § 301.6224(c)-3T(b) (2001), 64 Fed. Reg. 3837, 3838 (Jan. 26, 1999) ("A consistent settlement agreement must mirror the original settlement and may not be limited to selected items from the original settlement."). This requirement seems logical, as the give-and-take that occurs in resolving multiple items via settlement seemingly would preclude a partner from picking and choosing among settlement terms.

[18] In rejecting a similar claim, the Fifth Circuit recognized that adopting the taxpayer's position would undercut Congress' intent in enacting TEFRA, stating in *Weiner* –

> From a practical perspective, a finding of jurisdiction over the statute of limitations issue would create an absurd result that contravenes TEFRA. As was the case here, partners could settle with the IRS and thus eliminate their ability to participate in and be bound by the result of any partnership-level proceeding. But if, as here, the Tax Court decided the substantive statute of limitations issue against the partnership, the settling partners could simply bring individual partner-level suits in the district courts and attempt to obtain a different ruling on the statute of limitations issue. Thus, some partners would be required to pay the assessed deficiency, while others would not. The result advocated by the taxpayers here is at odds with TEFRA's goal of consolidating decisions that affect the partnership as a whole.

389 F.3d at 158. In fact, even if plaintiffs could convince the court that this result was intended, it remains that section 6231(b)(1)(C) only talks of partnership items and says nothing about converting "affected items" into nonpartnership items, arguably leaving the partnership prong of such items to be resolved in partnership-level proceedings.

### C. Penalty Interest

Defendant next asserts that this court lacks jurisdiction, under section 7422(h), to consider plaintiffs' claim that the IRS erred in asserting interest against them under former 26 U.S.C. § 6621(c). Between 1984 and 1989, the latter section provided for an increased rate of interest on substantial underpayments of tax attributable to "tax-motivated transactions."[19] In relevant part, subsection (c)(3) thereof defined "tax motivated transactions" as "any loss disallowed by reason of section 465(a)" and "any sham or fraudulent transaction." 26 U.S.C. §§ 6621(c)(3)(ii), (v). In fact, the IRS invoked both of the latter prongs in assessing interest here. Before analyzing this issue under TEFRA, it is appropriate to outline what is involved, in terms of proof, in disallowing losses under section 465(a) of the Code and the sham transaction doctrine, respectively.

Section 465(a)(1) operates as a limitation on the loss deductions allowed by other provisions of the Code, stating that "any loss" from an activity covered by the section "shall be allowed only to the extent . . . the taxpayer is at risk." To the extent pertinent here, a "taxpayer" is considered to be at risk for the amount of cash contributed and for certain amounts borrowed for the activity. 26 U.S.C. § 465(b). Furthermore, a "taxpayer" generally is not at risk for "amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." *Id*. at § 465(b)(4).[20] The decisional law is quite clear that, in the case of a partnership, the "taxpayer" to whom these "at-risk" rules apply is the individual partner. Indeed, it would be difficult to envision otherwise, particularly since partnerships themselves do not qualify as taxpayers for purposes of the Code. Nonetheless, courts applying the "at risk" provisions must often consider not only what the partner contributed to the partnership, but the nature of the obligations flowing among the partner, the partnership, and, at times, third-parties. Reflecting this, several cases directly involving the "at risk" provisions have concluded that their application is not a "nonpartnership item," but rather an affected item. *See*, *e.g.*, *Ginsburg v. Comm'r of Internal Revenue*, 127 T.C. 75, 92-83 (2006); *Greenberg Bros. P'ship #4 v. Comm'r*

---

[19] Upon enactment in 1984, this provision was codified as 26 U.S.C. § 6621(d). It was amended and redesignated as 26 U.S.C. § 6621(c) by the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2744, §§ 1511(c)(1)(A)-(C). Section 6621(c) applies to interest accruing after December 31, 1984, even if the transaction was entered into before the date of its enactment. Tax Reform Act of 1984, § 144(c), Pub. L. No. 98-369, Div. A, July 18, 1984, 98 Stat. 494 (1984). This subsection was among several penalty provisions replaced with a single "accuracy-related" penalty by the 1989 Act. *See* H.R. Rep. No. 101-247, at 1388-94 (1989). Despite its repeal, section 6621(c) remains applicable to tax years prior to 1989.

[20] Section 465 was added to the Code in 1976 to combat abuse of tax shelters caused by nonrecourse financing, and other situations in which taxpayers were effectively immunized from any realistic possibility of suffering. *See* S. Rep. No. 94-938, at 47-49 (1976); *see also Comm'r of Internal Revenue v. Tufts*, 461 U.S. 300, 309 n.7 (1983); *Pritchett v. Comm'r of Internal Revenue*, 827 F.2d 644, 646 (9th Cir. 1987).

*of Internal Revenue*, 111 T.C. 198, 202 (1998); *Hambrose Leasing 1984-5 Ltd. P'ship v. Comm'r of Internal Revenue*, 99 T.C. 298, 312-13 (1993); *Roberts v. Comm'r of Internal Revenue*, 94 T.C. 853, 861 (1990).[21] Under this view, issues involving items such as the nonrecourse character of partnership notes or the economic substance of partnership transactions are to be resolved in a partnership-level proceeding, with those determinations then being binding on the partners in any refund litigation that would ensue. *See Greenberg Bros. P'ship*, 111 T.C. at 202 ("there are partnership item components to the at risk calculation that affect that determination at the partner level"); *Hambrose Leasing*, 99 T.C. at 312.

The situation is slightly different for transactions found to be tax-motivated because they are shams. There are two predominant "tests" for identifying such shams. The Fourth Circuit has adopted a two-prong standard for disregarding a transaction under the so-called "sham transaction doctrine," stating that "[t]o treat a transaction as a sham, the court must find that the taxpayer was motivated by no business purposes other than obtaining tax benefits . . . and that the transaction has no economic substance because no reasonable possibility of a profit exists." *Rice's Toyota World Inc. v. Comm'r of Internal Revenue*, 752 F.2d 89, 91 (4th Cir. 1985). A better approach to this sham analysis, which is more flexible and enjoys the support of a majority of the circuits, holds that "the consideration of business purpose and economic substance are simply more precise factors to consider in the [determination of] whether the transaction had any practical economic effects other than the creation of income tax losses." *Sochin v. Comm'r of Internal Revenue*, 843 F.2d 351, 354 (9th Cir), *cert. denied*, 488 U.S. 824 (1988).[22] Nonetheless,

---

[21] The Treasury Regulations under section 6231 leave this issue somewhat unresolved in stating that "[t]he application of the at-risk limitation under section 465 to a partner with respect to a loss incurred by a partnership is an affected item to the extent that it is not a partnership item." Treas. Reg. § 301.6231(a)(5)-1(c).

[22] *See also Winn-Dixie Stores, Inc. v. Comm'r of Internal Revenue*, 254 F.3d 1313, 1316 (11th Cir. 2001), *cert. denied*, 535 U.S. 986 (2002) (noting that the doctrine has "few bright lines," but clearly applies to "'transactions whose sole function is to produce tax deductions'" (quoting *Kirchman v. Comm'r of Internal Revenue*, 862 F.2d 1486, 1492 (11th Cir. 1989)); *ACM P'ship v. Comm'r of Internal Revenue*, 157 F.3d 231, 247 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999) ("these distinct aspects of the economic sham inquiry do not constitute discrete prongs of a rigid two-step analysis, but rather represent related factors both of which inform the analysis of whether the transaction had sufficient substance, apart from its tax consequences, to be respected for tax purposes"); *James v. Comm'r of Internal Revenue*, 899 F.2d 905, 908-09 (10th Cir. 1990) (referring to this as the "better approach"); *Rose v. Comm'r of Internal Revenue*, 868 F.2d 851, 854 (6th Cir. 1989) ("the essential inquiry is whether the transaction had any practicable economic effect other than the creation of economic tax losses"). This more generic approach to applying the sham transaction doctrine is more in accord with *Frank Lyon Co. v. United* States, 435 U.S. 561, 583-84 (1978), where the Supreme Court stated that a transaction will be accorded tax recognition only if it has "economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached."

what is important for our purposes is that, under either approach, the business motives and the reasonable possibility of profit in regards to a transaction executed by the partnership are determined at the partnership level. *See Tallal v. Comm'r of Internal Revenue*, 778 F.2d 275, 276 (5th Cir. 1985); *Transpac Drilling Venture, 1983-2 by Dobbins v. United States*, 32 Fed. Cl. 810, 820 (1995), *aff'd*, 83 F.3d 1410 (Fed. Cir. 1996); *Hawley v. Comm'r of Internal Revenue*, 55 T.C.M. (CCH) 217, 223 (1988). The focus thus is on the partnership's motives in entering into the relevant transaction, "not [on] an individual partner's motive for joining the partnership." *Tallal*, 778 F.3d at 276. This inquiry requires the court to focus "on the actions of those persons selected to manage the affairs of the partnership." *Pasternak v. Comm'r of Internal Revenue*, 990 F.2d 893, 901 (6th Cir. 1993); *see also Simon v. Comm'r of Internal Revenue*, 830 F.2d 499, 507 (3d Cir. 1987). Given this, it is not surprising that courts directly dealing with the sham transaction doctrine have concluded that its application presents a partnership item. *See Transpac*, 32 Fed. Cl. at 820; *see also Nault v. United States*, 2007 WL 465310 at *4-5 (D.N.H. Feb. 9, 2007).

So where does this leave us? In fact, the courts have split on whether issues concerning the imposition of interest under section 6621(c) may be raised in a partner-level proceeding. These cases, in many ways, focus on the reverse of this issue – whether the particular issues raised regarding the application of section 6621(c), *e.g.*, whether a transaction is a sham, must be resolved in a partnership-level proceeding. In several decisions, the Tax Court has concluded that "section 6621(c) interest is not a 'partnership item' and is not within the Court's scope of review in a partnership level proceeding." *Affiliated Equip. Leasing II v. Comm'r of Internal Revenue*, 97 T.C. 575, 576-78 (1991) (citing *White v. Comm'r of Internal Revenue*, 95 T.C. 209, 212 (1991)); *see also N.C.F. Energy Partners v. Comm'r of Internal Revenue*, 89 T.C. 741, 744 (1987). Agreeing with this conclusion, the Second Circuit, in *Field v. United States*, 328 F.3d 58, 60 (2d Cir. 2003), held that interest assessed against a partner under section 6621(c) was not a partnership item and thus did not trigger application of section 7422(h). In so concluding, the Second Circuit held that section 6621(c) does not come within the definition of a partnership item. It concluded that such interest neither comes within the statutory definition of partnership items in section 6231(a)(3), because it was authorized by a provision in subtitle F of the Code, nor within the regulatory definition contained in Treas. Reg. § 301.6231(a)(3)-1, because it is not specifically listed there. *Field,* 328 F.2d at 59. Rather, the court found that section 6621(c) interest is an affected item, which it decided could be reviewed in a partner-level proceeding. *Id*; *see also Klein v. United States*, 86 F. Supp. 2d at 698 n.12; *Span Hansa Mgmt. Co. v. United States*, 1991 WL 82829 at *3 (W.D. Wash. 1991); *Korchak v. Comm'r of Internal Revenue*, 90 T.C.M. (CCH) 403, 416 (2005).

On the other side of this divide are cases such as *River City Ranches*, 401 F.3d at 1143, in which the Ninth Circuit, reversing a decision of the Tax Court, held that that court had jurisdiction, in a partnership-level proceeding, "to make factual findings concerning whether the partnerships' transactions were designed merely to secure tax benefits." It reasoned –

> The nature of the partnerships' transactions is a "partnership item" then, because it is "required to be taken into account . . . under . . . [the income tax provisions] of

> subtitle A," as affecting the income tax of the individual partners. As a "partnership item," the character of the partnership's transactions is within the Tax Court's scope of review.

*Id*. at 1444. The Ninth Circuit thus concluded that "[t]he Tax Court erred in holding that it had no jurisdiction to make findings concerning the character of the partnerships' transactions, for purposes of the 26 U.S.C. § 6621 penalty-interest provisions." *Id*. Subsequent Tax Court decisions applying *River City Ranches,* via that court's so-called *Golsen* rule,[23] have concluded that the court lacks jurisdiction, in a partner-level proceeding, to determine whether a transaction was tax-motivated under former section 6621. *See*, *e.g.*, *Ertz v. Comm'r of Internal Revenue*, 2007 WL 174133 (U.S. Tax. Court Jan. 24, 2007) ("we cannot determine whether petitioner had substantial underpayments of tax resulting from tax-motivated transactions and shall dismiss for lack of jurisdiction petitioner's claim regarding section 6621(c) interest").

In the court's view several observations flow from these seemingly conflicting cases. Initially, it is important to emphasize what the Ninth Circuit, in *River City Ranches*, did not say. It did ***not*** characterize the section 6621(c) interest as either a partnership item or an affected item. Indeed, it could not have concluded that the imposition of such interest was purely a partnership item because, *inter alia*, that interest was imposed only if there was a substantial understatement of income on the individual return, an issue that obviously cannot be resolved at the partnership level. *See White v. Comm'r of Internal Revenue*, 95 T.C. 209, 212 (1990). Rather, the Ninth Circuit merely concluded that questions concerning the nature of the partnership's transactions – whether they involved a sham, for example – were partnership items that needed to be resolved in a partnership-level proceeding. The latter result can be reconciled with cases like *Field* holding that section 6621(c) interest is an affected item under section 6231(a)(5) – with questions concerning the nature of the partnership's transactions being viewed as affecting the ultimate imposition of interest on an individual partner. Where some of the cases that characterize section 6621(c) as an affected item go astray is in assuming that because that interest is not itself a partnership item, a court is not required to resolve issues concerning the nature of the partnership's transactions in a unified partnership proceeding. As discussed at length above, however, the latter assumption is wrong because the partnership prong of an affected item must be resolved in a partnership-level proceeding, as a necessary precursor to the eventual consideration of the nonpartnership prong in a partner-level proceeding.

To be sure, the nature of what needs to be resolved in the partnership proceeding differs depending upon which sort of "tax-motivated transaction" in section 6621(c) is being asserted by the IRS. To the extent heightened interest is being imposed because the partner participated in a partnership that allegedly conducted a sham transaction, the issue whether the transaction, indeed, was a sham must be resolved first in a partnership-level proceeding, before any

---

[23] In *Golsen v. Comm'r of Internal Revenue*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971), *cert. denied*, 404 U.S. 940 (1971), the Tax Court held it was bound "to follow a Court of Appeals decision which is squarely [on] point where appeal from our decision lies to that Court of Appeals and to that court alone." 54 T.C. at 757.

consideration can be given in a refund action to whether the interest should have been imposed on an individual partner. Apart from the analysis above, this result draws strength from Treas. Reg. § 301.6231(a)(3)-1(b), which states that partnership items include "whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183." The section 183 inquiry identified in the regulation is very similar to the sham transaction analysis that must be conducted in deciding the partnership prong of the affected item associated with section 6621(c)(3) interest. *See Gilman v. Comm'r of Internal Revenue*, 933 F.2d 143, 147-48 (2d Cir. 1991); *Johnson v. United States*, 11 Cl. Ct. 17, 28 (1986); *see also Rose v. Comm'r of Internal Revenue*, 88 T.C. 386, 412-13 (1987). Accordingly, if the section 183 inquiry is a partnership item, so should the sham transaction inquiry. Similarly, to the extent penalty interest is being imposed under the at-risk rules of section 465, any issues involving the nonrecourse character of partnership notes or the economic substance of partnership transactions must first be resolved in a unified partnership proceeding, before any consideration can be given in a refund action as to the extent that an individual partner was actually at risk.

As in the case of plaintiffs' statute of limitations claims, the prerequisite for challenging the imposition of section 6621(c) interest as an affected item has not been met, thereby requiring the court to dismiss plaintiffs' claim for this interest. Again, this result proceeds directly from section 7422(h), as the imposition of section 6621(c) interest is, in part, "attributable to" partnership items. Here, plaintiffs were on notice that one of the issues pending in the unified partnership proceeding was whether the partnership's activities constitutes a series of sham transaction that lacked economic substance, as those assertions were specifically made in the 1991 FPAA. Yet, plaintiffs chose to withdraw from the partnership-level proceeding before the Tax Court, in its July 19, 2001, decision, specifically determined that the transactions lacked "economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v)." Accordingly, the precursor for raising this issue before this court does not exist. And, nothing in plaintiffs' settlement agreements alters this result. Indeed, those agreements seem to envision the imposition of the interest in question, stating that plaintiffs agreed to waive any restrictions on the assessment and collection of any deficiency attributable to partnership items "with interest as required by law." If this language did not resolve the interest issue, then in the court's view, the partnership prong of the section 6621(c) affected item remained alive in the partnership-level proceeding, ultimately to be resolved adversely by the Tax Court. In this regard, the court simply cannot conclude that every partner who enters into a section 6224(c) settlement agreement obtains the right to challenge in an individual partnership proceeding issues that otherwise should be – and in this case were – resolved in a partnership-level proceeding. Indeed, a contrary conclusion would render at least some of the TEFRA partnership provisions a nullity.

Accordingly, the court concludes that it, as well, lacks jurisdiction over plaintiffs' claims regarding the imposition of interest under section 6621(c).

## III. CONCLUSION

While plaintiffs assert that a ruling that this court lacks jurisdiction to consider their limitations and interest issues would violate due process, the fact of the matter is that plaintiffs

"plight" – if that word is appropriate – is a self-inflicted wound.[24] Plaintiffs had notice, via the FPAA, of the IRS claims and could have continued with the partnership-level proceeding, which would have left them bound by the adverse decision ultimately rendered by the Tax Court. They chose, however, to settle their cases, only now to contend that they really did not give up anything in exchange for the benefits that the IRS conferred under those agreements and that they instead should be allowed to relitigate issues previously resolved by the Tax Court. Contrary to their claims, however, the language of the relevant TEFRA provisions, including section 7422(h), precludes this result, requiring partners who intend to contest partnership-level issues to do so in the partnership-level proceeding, rather than in subsequent refund suits. Unlike plaintiffs' claims, that construction has the added benefit of construing the TEFRA partnership provisions consistent with their purposes. Plaintiffs have received all the process that is due.

Based on the foregoing, the court **GRANTS** defendant's partial motion for dismissal.[25]

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[24] Various cases have rejected claims that the TEFRA partnership provisions violate due process, holding that those provisions provide appropriate notice and an opportunity to present their objections. *See*, *e.g.*, *Transpac Drilling Venture 1982-12 v. Comm'r of Internal Revenue*, 147 F.3d 221, 225 (2d Cir. 1998); *Kaplan*, 133 F.3d at 475; *Walthall v. United States*, 131 F.3d 1289, 1294-95 (9th Cir. 1997); *Klein*, 86 F. Supp. 2d at 697 (rejecting similar claims regarding the impact of section 7422(h)).

[25] Based on the foregoing, the court need not address the arguments raised in defendant's second motion to dismiss.