No. 01-344 T
(Judge Lawrence J. Block)

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

ROBERT J. ISLER and SUSAN L. ISLER,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

RESPONSE TO PLAINTIFFS' POST ORAL ARGUMENT BRIEF

RICHARD T. MORRISON
Acting Assistant Attorney General

STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044
(202)307-6496
(202)514-9440 (facsimile)

**Page**

**INDEX**

Response to plaintiffs' post oral argument brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Court should follow the *Keener* decision. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Challenge Two after *McGann* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. Plaintiffs' settlements were partial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V. As plaintiffs' settlements were partial, the sham issue did not convert . . . . . . . . 10

VI. Plaintiffs' arguments regarding Extrinsic Evidence and Their Settlements . . . . 12

VII. Tax Court Decisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VIII. Plaintiff's Summary Judgment Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

APPENDIX (attached to brief and separately numbered):

Title 26, U.S.C.:[1]
§ 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Treas. Reg. § 301.6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Treas. Reg. § 301.6621-2T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

[1] Statutory provisions set forth in the Appendix appear as in effect with respect to the facts of the present case and not necessarily as currently codified.

**Page**

## TABLE OF AUTHORITIES

**Cases:**

*Allison v. Commissioner*, 1991 WL. 34612 (U.S. Tax Court Mar. 18, 1991) . . . . . . . . . 18

*Barber v. Commissioner*, 1989 WL. 61944 (U.S. Tax Court Jun. 13, 1989) . . . . . . . . 18

*Barlow v. Commissioner*, T.C. Memo. 2000-339, 2000 WL. 1649506 (U.S. Tax Court Nov. 3, 2000), *aff'd on other grounds*, 301 F.3d 714 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Becker v. Commissioner*, 1996 WL. 705778 (U.S. Tax Court Dec. 9, 1996) . . . . . . . . 19

*Boyer v. Commissioner*, 1992 WL. 379284 (U.S. Tax Court Dec. 22, 1992) . . . . . . . . 19

*Chakales v. Commissioner*, 79 F.3d 726 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chimblo v. Commissioner*, 177 F.3d 119 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Coltec Industrial, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) . . . . . . . . . . . . . 8

*Davenport Recycling Associates v. Commissioner*, 220 F.3d 1255 (11th Cir. 2000) . . . . . 2

*Dureiko v. United States*, 209 F.3d 1345 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 12

*Estate of Carberry v. Commissioner*, 933 F.2d 1124 (2d Cir. 1991) . . . . . . . . . . . . . . . 15

*Friedman v. Commissioner*, 1996 WL. 735497 (U.S. Tax Court Dec. 26, 1996) . . . . . . 20

*Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Gollin v. Commissioner*, 1996 WL. 579898 (U.S. Tax Court Oct. 9, 1996) . . . . . . . . . 19

*Grelsamer v. Commissioner*, 1996 WL. 482954 (U.S. Tax Court Aug. 27, 1996) . . . . . 19

*Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hinck v. United States*, 127 S. Ct. 2011 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Irom v. Commissioner*, 866 F.2d 545 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Page**

**Cases (continued):**

*Jaroff v. Commissioner*, 1996 WL. 684378 (U.S. Tax Court Nov. 27, 1996) . . . . . . . . . . 19

*Kaliban v. Commissioner*, 1997 WL. 325493 (U.S. Tax Court June 16, 1997) . . . . . . . 20

*Kaplan v. United States*, 133 F.3d 469 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Korchak v. Commissioner*, 2005 WL. 2656127 (U.S. Tax Court Oct. 18, 2005) . . . . . . 20

*McCrary v. Commissioner*, 92 T.C. 827 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Nowak v. Commissioner*, 1994 WL. 456791 (U.S. Tax Court Aug. 24, 1994) . . . . . . . . 19

*Olson v. United States*, 172 F.3d 1311 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 7, 11

*River City v. Commissioner*, 401 F.3d 1136 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 4, 5

*RJT Investments X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007) . . . . . . . . . . . . . . . . . . 5

*Sann v. Commissioner*, 1997 WL. 309116 (U.S. Tax Court June 10, 1997) . . . . . . . . . . 20

*Santa Monica Pictures, LLC v. Commissioner*, 2005 WL. 1111792 (U.S. Tax Court May 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Travelers Casualty and Surety Co. v. United States*, Fed. Cl. 696 (2007) . . . . . . . . . . . 10

*Thornsjo v. Commissioner*, 2001 WL. 617211 (U.S. Tax Court June 6, 2001) . . . . . . . . 20

*Todd v. Commissioner*, 862 F.2d 540 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Weber v. Commissioner*, 1994 WL. 386163 (U.S. Tax Court July 25, 1994) . . . . . . . . . 19

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 2, 3, 9, 11

*West v. Commissioner*, 2000 WL. 1899290 (U.S. Tax Court Dec. 22, 2000) . . . . . . . . . 20

*Zenkel v. Commissioner*, 1996 WL. 482093 (U.S. Tax Court Aug. 27, 1996) . . . . . . . . 19

**Page**

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C).:[2]

§ 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-7
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6-8, 10, 11
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 11
§ 6511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11
§ 6621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 17
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

**Miscellaneous:**

Treas. Regulations:

§ 301.6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
§ 301.6621-2 T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

[2] All statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986, as in effect for the taxable year at issue or as in effect otherwise with respect to the facts of the present cases. Internal Revenue Code sections are referenced throughout the brief as '§ [section]."

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 01-344 T
Judge Lawrence J. Block

---

ROBERT J. ISLER and SUSAN L. ISLER,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

RESPONSE TO PLAINTIFFS' POST ORAL ARGUMENT BRIEF

---

Defendant, the United States, respectfully submits this response to plaintiffs' post oral argument brief [Doc. #125].

**I. Introduction**

The briefing and argument before the Court cover three of plaintiffs' claims: (1) claims for abatement of interest in *Isler*, *Scuteri*, and *Prati*; (2) untimely assessment claims in *Isler* and *Scuteri*; and (3) claims for refund of tax motivated interest in *Isler*, *Scuteri*, and *Prati*.

The parties agree that the interest abatement claims were resolved by the Supreme Court's recent decision in *Hinck v. U.S.*, 127 S.Ct. 2011 (2007). Pursuant to that decision, this Court lacks subject matter jurisdiction and should dismiss those claims.

Plaintiffs' supplemental brief devotes little space to their untimely assessment claims. In response, we emphasize that four federal circuit courts of appeal and two decisions of the Court of Federal Claims have held that such claims may not be maintained in a partner level proceeding

such as this, but must be raised at the partnership level. *See Weiner v. U.S.*, 389 F.3d 152, 155-59 (5th Cir. 2004); *Davenport Recycling Assocs. v. Commissioner*, 220 F.3d 1255, 1260-61 (11th Cir. 2000); *Chimblo v. Commissioner*, 177 F.3d 119, 125 (2nd Cir. 1999); *Kaplan v. U.S.*, 133 F.3d 469, 473-74 (7th Cir. 1998); *Keener v. U.S.*, 76 Fed. Cl. 455, 459-466 (2007); *Slovacek v. U.S.*, 36 Fed. Cl. 250, 254-55 (1996). We respectfully request the Court to follow this authority and dismiss plaintiffs' untimely assessment claims.

Regarding the tax motivated interest claims, we have made two separate and independent challenges to the Court's subject matter jurisdiction. First, we moved to dismiss, on the grounds that plaintiffs' claims would require the Court to determine a partnership item (sham nature of a partnership transaction) in the present partner level proceeding, and to overturn both the IRS' FPAA and the Tax Court's prior partnership level sham determinations - actions prohibited by § 7422(h) (or § 6230(c)(4)). ("Challenge One"). *See Isler*, Fed. Cl. No. 01-344 T (hereafter "01-344") [Docs. ## 102, 113]; *Scuteri*, Fed. Cl. No. 01-358 T (hereafter "01-358") [Docs. ## 72, 84]; *Prati*, Fed. Cl. No. 02-60 T (hereafter "02-60") [Docs. ## 71, 78].

Second, we moved to dismiss, on the grounds that plaintiffs' administrative refund claims for tax motivated interest were filed untimely, outside the six month period of limitation in § 6230(c)(2)(A). ("Challenge Two"). *See Isler*, 01-344 [Docs. ## 115, 119]; *Scuteri*, 01-358 [Docs. ## 86, 90]; *Prati*, 02-60 [Docs. ## 80, 84].

## II. The Court should follow the *Keener* decision.

In *Keener v. U.S.*, 76 Fed. Cl. 455, 461, 466-70 (2007), the Court agreed with Challenge One, and dismissed AMCOR tax motivated interest claims identical to those at issue here. The Court held that, although the claims were for refund of an affected item, the claims included a

necessary partnership item issue (sham nature of partnership transaction), which had to be "resolved first in a partnership-level proceeding, before any consideration can be given in a refund action to whether the interest should have been imposed on an individual partner." *Id.* at 469. Noting that this issue had not been resolved at the partnership level - while the AMCOR partners were parties to a partnership level proceeding in which the sham nature of a partnership transaction was at issue, they withdrew before the Tax Court confirmed the transactions were shams - *Keener* dismissed the claims for lack of subject matter jurisdiction. *Id.* at 469-70.

*Keener* also concluded that, even if the AMCOR partners' settlements did not resolve the tax motivated interest issue in favor of defendant, then the sham nature of the partnership transaction remained contested at the partnership level post-settlement, "ultimately to be resolved adversely by the Tax Court." *Id.* at 470.

Because *Keener* dismissed tax motivated interest claims based on Challenge One, it did not address Challenge Two. *See id.* at 470 n.25.

*Keener* does not conflict with the Fifth Circuit's decision in *Weiner*. As we have explained, the Fifth Circuit simply was not presented with, and therefore did not address, the jurisdictional and *res judicata* arguments on tax motivated interest that *Keener* found persuasive. *See e.g. Isler*, 01-344 [Doc. #113] at 18-19.[3]

*Keener* also does not conflict with *McGann v. U.S.*, 76 Fed. Cl. 745 (2007). *McGann* addressed arguments based on Challenge Two (whether plaintiffs' administrative refund claims

---

[3] If the Fifth Circuit had been presented with the jurisdictional and *res judicata* arguments *Keener* found persuasive, it may have concluded as *Keener* did. The Fifth Circuit held that AMCOR partners' settlements were partial and did not settle every partnership item at issue in the Tax Court. *See Weiner*, 389 F.3d at156 n.2. The partial nature of AMCOR settlements anchors our arguments. *See e.g. Isler*, 01-344 [Doc. #113] at 5-16.

were filed untimely), on which *Keener* declined to rule, *see Keener*, 76 Fed. Cl. at 470 n.25. *McGann* explicitly noted this distinction. *See McGann*, 76 Fed. Cl. at 755 n.20.[4]

In addition, *McGann* based its decision on a determination that is not relevant to *Keener* and Challenge One. *McGann* is based on conclusions about a tax motivated transaction - profit motive under § 183 - which was not at issue in *Keener* or in *Isler*, *Prati*, and *Scuteri*. Instead, *Keener* and the present cases involve a different tax motivated transaction - sham partnership transaction. The difference is significant, as *McGann* explained:

> The application *vel non* of Section 183 is a significant factor in resolution of this case.[FN 20]
>
> FN20. In this respect, the court is required to extend several steps beyond the analysis by Judge Allegra in *Keener*, and reach issues associated with the role of Section 183 in a TEFRA partnership-level proceeding.

*McGann* is based primarily on the conclusion that § 183 profit motive is not a partnership item, *see McGann*, 76 Fed. Cl. at 752-758, and § 183 was not at issue in *Keener* or here.

Rather, the issue concerning a tax motivated transaction in *Keener* and here is the sham nature of a partnership transaction, which, all agree, is a partnership item. *See River City v. Commissioner*, 401 F.3d 1136, 1143-44 (9th Cir. 2005), *Isler*, 01-344 [Doc. #113] at 4 (citing

---

[4] Before *McGann* issued, plaintiffs' counsel argued for this distinction: "[t]he *Keener* opinion never addresses the §6230(c) limitations period [Challenge Two] and is, therefore, not relevant to the only issue raised by the defendant in its motion at issue here [in *McGann*]"; "[i]t is undisputed that Judge Allegra's opinion in *Keener* did not address the actual issue raised here [in *McGann*] by the defendant in its motion to dismiss"; "the issues addressed in *Keener* are not relevant to the sole issue raised here in the defendant's motion to dismiss." *See McGann*, Fed. Cl. No. 05-1189 T [Doc. #37] at 2-3. *McGann* agreed with plaintiffs' counsel's limited view of the scope of what was at issue. *See McGann*, 76 Fed. Cl. at 755 and n.20. But now, after issuance of *McGann*, plaintiffs' supplemental brief argues for an expansive view of *McGann* vis-a-vis *Keener*.

plaintiffs' agreement);[5] *see also RJT Investments X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007) (whether partnership is a sham is a partnership item).[6] Accordingly, while *McGann*'s conclusion that § 183 profit motive is not a partnership item led to the holding that § 183 is not a partnership item component of a refund claim for tax motivated interest; by contrast here and in *Keener*, the sham nature of a partnership transaction does constitute a partnership item component of plaintiffs' refund claims for tax motivated interest. Therefore, as *Keener* held, whether a partnership transaction was a sham had to be, but was not, resolved in plaintiffs' favor at the partnership level.[7]

The preceding observations distinguishing *Keener* and *McGann*, which *McGann* also observed, undermine plaintiffs' attempts to import *McGann* here. Plaintiffs' supplemental brief

[5] *McGann* incorrectly criticized *River City* for relying on 1997 amendments to § 6226(f) to classify the sham nature of a partnership transaction as a partnership item. *See McGann*, 76 Fed. Cl. at 754 n.17. *River City* did not. While *River City* quoted § 6226(f), as amended post 1997, its analysis did not rely on the 1997 amendments, but instead on an interpretation of the definition of partnership item found in § 6231(a)(3). *See River City*, 401 F.3d at 1143-44. Nevertheless, *McGann* agreed that the sham nature of a partnership transaction is a partnership item component of any subsequent imposition of tax motivated interest (when based on a sham tax motivated transaction). *See McGann*, 76 Fed. Cl. at 754 n.18.

[6] *RJT* issued after *Keener*, *McGann*, and oral argument in this case. *RJT* includes a detailed analysis of the language in § 6231(a)(3) "required to be taken into account . . . under any provision of subtitle A", and concludes that the statutory language does not require that a partnership item be referenced in subtitle A. *See RJT*, 491 F.3d at 736.

[7] To be sure, we have supported our argument that the sham nature of a partnership transaction is a partnership item by reference to the regulatory inclusion of section 183 profit motive within the definition of a partnership item, *see Treas. Reg.* § 301.6231(a)(3)-1(b) (1986). *Keener* followed suit. *See Keener*, 76 Fed. Cl. at 469. However, all agree that the sham nature of a partnership transaction is a partnership item, and use of § 183 is not necessary to support that conclusion. (We note that *McGann* did not address the regulatory inclusion of section 183 profit motive within the definition of partnership item, and think *McGann* erred in that regard.).

fails to mention § 183 or the centrality of § 183 to the holdings in *McGann*.[8]

We respectfully request that the Court follow *Keener* and dismiss plaintiffs' tax motivated interest claims for lack of jurisdiction based on Challenge One.

## III. Challenge Two After *McGann*

We also maintain that plaintiffs filed their refund claims with the IRS untimely after expiration of the six month period of limitation in § 6230(c)(2)(A) – Challenge Two. *See e.g. Isler,* 01-344 [Doc. #119]. Plaintiffs argue that the IRS erroneously used the tax motivated interest rate (instead of the regular rate) to compute interest owed on tax underpayments resulting from plaintiffs' settlements. Their settlements, they claim, do not attribute disallowed losses to sham transactions, and thus do not justify use of the higher rate. In sum, plaintiffs contend that the IRS erroneously computed the change in their interest liability. Such a claim is a challenge to a computational adjustment and falls squarely within § 6230(c)(1)(A)(ii), and a six month period of limitation applies.

*McGann's* primary holding on § 6230(c) is distinguishable. Section 6230(c)(1)(A)(ii) provides that a claim arises out of erroneous computations if the adjustment is necessary to apply to a partner a partnership level determination. *McGann* held that tax motivated interest claims did not fall within § 6230(c), because § 183 was not a partnership item and therefore assessment of interest at the tax motivated rate was not necessary to apply a partnership level determination.

---

[8] This is not the first time plaintiffs' counsel has attempted to use a decision on a profit motive tax motivated transaction out of context for litigating the different sham tax motivated transaction. Before the Eighth Circuit, plaintiffs' counsel relied on *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir. 1990), a case about profit motive tax motivated transaction, to argue about sham tax motivated transaction. *See Chakales v. Commissioner*, 79 F.3d 726, 728 (8th Cir. 1996). The Eighth Circuit rejected the attempt, and so should this Court.

*See McGann*, 76 Fed. Cl. at 757. By contrast, the sham nature of a partnership transaction is a partnership item component of plaintiffs' tax motivated interest claims here, and assessment of tax motivated interest is necessary to apply a sham partnership item determination. *See e.g. Isler*, 01-344 [Doc. #119] at 11-12.[9] But plaintiffs never mention § 183, when twice urging this Court to follow *McGann* and conclude their claims are not brought pursuant to § 6230(c). *See e.g. Isler*, 01-344 [Doc. #125] at 3, 18-19.

In addition, we respectfully think *McGann* erred regarding legal issues relevant to Challenge Two. First, following treasury regulations, the Federal Circuit has held that tax motivated interest is a computational adjustment. *See e.g. Isler*, 01-344 [Doc. #119] at 8-10. *McGann* appears to reject both. *McGann* nowhere addresses the Federal Circuit's holding. In a footnote concerning whether tax motivated interest is a partnership item, *McGann* reports that, in *Olson v. U.S.*, 172 F.3d 1311, 1315 n.1, 1318 n.2 (Fed. Cir. 1999), "the issue had been waived." *See McGann*, 76 Fed. Cl. at 754 n.18.

The footnote is incorrect. What was waived in *Olson* was issuance of a deficiency notice prior to assessment of tax motivated interest. The trial court initially considered a waiver necessary before assessment, but then changed its opinion. The Federal Circuit, noting the change, held no deficiency notice was needed, because tax motivated interest is a computational adjustment and so assessed. *See Olson*, 172 F.3d at 1315 n.1, 1318 n.2. Thus, based on the conclusion that tax motivated interest is a computational adjustment, the Federal Circuit

---

[9] *See also e.g. Barlow v. Commissioner*, T.C. Memo. 2000-339, 2000 WL 1649506, at *17 (U.S. Tax Ct. Nov. 3, 2000) ("We begin by observing that once we decide that there is a tax-motivated transaction such as a valuation overstatement or a sham or fraudulent transaction, the determination of additional interest is largely mechanical."), *aff'd on other grounds by Barlow v. Commissioner*, 301 F.3d 714 (6th Cir. 2002).

considered irrelevant the waiver *McGann* thought significant.

Regarding the regulation on which the Federal Circuit relied to conclude tax motivated interest a computational adjustment, *McGann* opines that the regulation does not in fact refer to tax motivated interest. *See McGann*, 76 Fed. Cl. at 753 n.16. But the Court of Federal Claims must follow the Federal Circuit even where it believes the appellate court has erred. *See e.g. Coltec Indus., Inc. v. U.S.*, 454 F.3d 1340, 1353 (Fed. Cir. 2006).

Second, *McGann* erred in holding that § 6230(d)(6) did not bar application of the two year period of § 6511 to refund claims contesting affected items. *See McGann*, 76 Fed. Cl. at 751 n.10. We have explained that the contrary is correct, that the plain language of § 6230(d)(6), as in effect for the taxable years at issue, barred application of the two year period to a refund claim contesting any affected item (such as tax motivated interest). *See e.g. Isler*, 01-344 [Doc. #119] at 2-6. *McGann* rejected the plain language based on its view that it was an anomaly rectified by a later Congress. A court, however, may not substitute its view for the legislature's.[10]

Third, *McGann* alternatively held that, even if § 6230(c) applied, the notice of computational adjustment mailed to plaintiffs there was insufficient to start the six month period of limitation applicable to a claim for erroneous computation of a computational adjustment. We respectfully disagree with *McGann* on this issue.

---

[10] On this issue, *McGann* may have overlooked defendant's argument. *McGann* refers to defendant's § 6230(d)(6) argument as "a passing reference," pointing only to page three of defendant's reply brief. *See McGann*, 76 Fed. Cl. at 751 n.10. Page three, part of the introduction, did cite § 6230(d)(6). Pages three through eight then followed with detailed analysis of § 6230(d)(6) and its applicability to the case. *See Reply* [Doc.# 23], Fed. Cl. No. 01-1189 T, at 3-8. Defendant's opening motion also argued § 6230(d)(6). *See Mot.* [Doc. #13], Fed. Cl. No. 01-1189 T, at 11-12, 13-14. Characterization of extensive argument as "passing reference" suggests an oversight and argues for a fresh review here.

However, plaintiffs do not press the alternative holding in *McGann*. Rather, plaintiffs mischaracterize *McGann* to reiterate the due process argument they raised earlier. Plaintiffs contend *McGann* supports their earlier argument that six months is too little time to liquidate assets, pay tax motivated interest, and file a refund claim - and further claim that Scuteri, the Pratis, and the Islers had at most only two months to pay and file. *See Isler,* 01-344 [Doc. #125] at 18-19. This due process argument is not mentioned in *McGann*. And we have already addressed why, as a factual and legal matter, plaintiffs' contentions are without merit, (and why the notices of computational adjustment mailed to them were sufficient to commence the six month period). *See Isler,* 01-344 [Doc. #119] at 13-14, (at 16-18); *see Prati*, 02-60, [Doc. #84] at 14-15, (at 16-18); *See Scuteri,* 01-358, [Doc. #90] at 14-15, (at 16-18).

**IV. Plaintiffs' settlements were partial.**

Before addressing additional arguments raised in plaintiffs' supplemental brief, we restate our view of plaintiffs' settlements. *See e.g. Isler*, 01-344 [Doc. #113] at 5-16. First, plaintiffs' settlements were partial. Multiple partnership items, including the sham nature of partnership transactions, were determined in the FPAAs the IRS issued to plaintiffs' partnerships and were at issue in the Tax Court. Plaintiffs did not settle all such items. While they settled the amounts of some partnership items, they did not settle the nature of their partnerships' transactions. Plaintiffs concede this. *See e.g.* Compl. [Doc. #1] ¶ 12c. ("There was no agreement that the adjustments resulted from tax motivated transactions as defined in §6621(c) or the relevant regulations."). Also unsettled was whether the time for assessing tax attributable to partnership items expired prior to issuance of the FPAAs. This unsettled item led the Fifth Circuit to conclude that AMCOR settlements were partial. *See Weiner*, 389 F.3d at 156 n.2.

Second, plaintiffs' settlements are unambiguous. Therefore, resort to extrinsic evidence is unnecessary to conclude that the settlements were partial and did not settle the sham nature of partnership transactions. *See Travelers Casualty and Surety Co. v. U.S.*, 75 Fed. Cl. 696, 710 (2007). The agreements specify the amounts of certain partnership items to which the IRS and plaintiffs agreed. No statement is made about the nature of partnership transactions. In addition, the agreements explicitly limit themselves to the determinations set forth in the schedule of adjustments attached to the agreements - and the schedules on their face make no claim to comprehensiveness but merely set forth the amounts of certain partnership items to be adjusted. *See e.g. Isler*, 01-344 [Doc. #110] at B27 (". . . the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items for the year shown on the attached schedule of adjustments."). In sum, the plain language of the settlements circumscribes their scope to the adjusted partnership items shown on the attached schedules.

Plaintiffs attempt to avoid this language by arguing that the phrase "shown on the attached schedule of adjustments" modifies only the word "year." But a cursory review of the attached schedule reveals that it shows both a "year" and "the determination of partnership items." The schedule does not merely show a year, as plaintiffs' interpretation would require, but also shows the determination of certain partnership items, for example, adjustments to claimed farming expenses.

## V. As plaintiffs' settlements were partial, the sham issue did not convert.

Regarding Challenge Two (but not Challenge One), plaintiffs contend that the conversion of a partnership item to a non-partnership item by settlement, pursuant to § 6231(b)(1)(C), renders § 6230(d)(6) inapplicable to their refund claim for tax motivated interest. Section 6231(b)(1)(C)

provides that the execution of a settlement agreement causes settled partnership items to become nonpartnership items. *See* § 6231(b)(1)(C); *Weiner*, 389 F.3d at 156 n.2.

Plaintiffs, assuming that their settlements were comprehensive and settled every partnership item, argue that tax motivated interest was assessed on converted non-partnership items and therefore is not an affected item in this case. Plaintiffs conclude that their refund claims are not therefore attributable to an affected item and § 6230(d)(6) does not apply to preclude the two year period of § 6511 for filing a refund claim.

Plaintiffs' new position is problematic on two grounds. First, it requires them to contradict the position they advanced in earlier briefs that tax motivated interest is an affected item.

Second, plaintiffs' new position assumes a comprehensive settlement. As discussed above, the settlements were partial. The sham determination, a partnership item, was not settled. And the assessment of tax motivated interest is affected by that partnership item, because the sham partnership level determination requires the imposition of tax motivated interest at the partner level (if the resulting underpayment exceeds $1,000). Plaintiffs' refund claims are therefore attributable to an affected item and § 6230(d)(6) bars a two year refund claim period.[11]

[11] Although not directly at issue, we note our disagreement with plaintiffs' premise that § 6231(b)(1)(C) converts partnership items for purposes of § 7422(h). Rather, § 6231(b)(1) provides that there are five circumstances that cause partnership items to become nonpartnership items "[f]or purposes of this subchapter," *i.e.* Subchapter C of Chapter 63 of Subtitle F of the Internal Revenue Code. Since § 7422(h) is in a different subchapter - - Subchapter B of Chapter 76 of Subtitle F - - partnership items are not converted into nonpartnership items for purposes of § 7422(h) (when, for example, the IRS and a taxpayer enter into a settlement agreement with respect to partnership items). This legal position is not, as plaintiffs say, contrary to the Federal Circuit's decision in *Olson v. U.S.*, 172 F.3d 1311 (Fed. Cir. 1999). Plaintiffs cite to nothing in the decision for support.

## VI. Plaintiffs' Arguments Regarding Extrinsic Evidence and Their Settlements

Plaintiffs challenge what they label "[t]he Government's extrinsic evidence." *See Br.* [Doc. #125] at 5. Their primary focus is to convince the Court that their settlements are unambiguous and therefore resort to extrinsic evidence is not necessary. We agree. Plaintiffs' settlements are unambiguous. They did not settle all partnership item determinations at issue in the Tax Court. The four corners of the settlements reveal this fact.

Plaintiffs, however, contend the settlements are unambiguously comprehensive, even though they are silent about contested partnership items, including the sham determination and the timeliness of the FPAA. Plaintiffs' position is untenable. Silence in an agreement on an issue does not mean that the agreement unambiguously settled the issue, as plaintiffs would have it (and in plaintiffs' favor to boot). Rather, silence on the sham issue gives rise to the opposite conclusion: if the agreements are, as both plaintiffs and defendant agree, unambiguous, then the sham partnership determination was not settled.

We submitted evidence with our reply brief, for example, the Gossett declaration, to rebut plaintiffs' contention that silence equals an unambiguous intention of the contracting parties' to settle whether partnership transactions were shams:

> Because plaintiffs attempt to squeeze a settlement of the sham issue from terms that on their face do not mention it but only settle amounts of certain partnership items, extrinsic evidence is permitted to demonstrate that the IRS and plaintiffs never contracted on the sham issue. *See e.g. Dureiko v. U.S.*, 209 F.3d 1345, 1356-57 (Fed. Cir. 2000).

*See e.g. Isler*, 01-344 [Doc. #113] at 11 n.5. In other words, only if the Court concluded that the agreements were ambiguous (against which both parties argue), would the Court have to resolve the parties' contracting intent. The extrinsic evidence demonstrates that the IRS' intent was to

settle the issue of tax motivated interest. Thus, assuming plaintiffs did not so intend, the extrinsic evidence leads to the same conclusion as the unambiguous settlement language: the sham issue was not settled.

Relatedly, plaintiffs criticize *Keener* for

> appear[ing] to have accepted at face value the Government's allegations that the parties agreed the transactions were sham transactions. This acceptance is apparent from the court's initial background statement:
>
> In 1991, the IRS sent each of the aforementioned partnerships a FPAA, which states that the loss deductions reported in 1984 and 1985 were not allowable because each 'partnership's activities consitute[d] a series of sham transactions.'" *Keener* at 456.

*Br*. [Doc. #125] at 16. Defendant has never alleged "that the parties agreed the transactions were sham transactions," so there would have been no need for the Court to accept a statement that was never made. Plaintiffs cite no brief filed by defendant in *Keener* in which such "allegations" are made. Further, the quoted portion of the *Keener* opinion merely recites a position taken by the IRS in FPAAs mailed to the partnerships - nothing in the statement evidences an agreement between the parties on whether partnership transactions were a sham.

Plaintiffs also misrepresent defendant's position when they say we offered extrinsic evidence to create ambiguity. *See e.g. Isler*, 01-344 [Doc. #125] at 5. We do not believe the settlements were ambiguous. It is plaintiffs who, equating silence with settlement, argue in favor of ambiguity. Relatedly, plaintiffs accuse us of using extrinsic evidence to contend the parties intended to settle tax motivated interest. *See e.g. Isler*, 01-344 [Doc. #125] at 6. We did not. The evidence merely demonstrated the IRS' intent, not also the same intent on plaintiffs' part that would be necessary to settle the issue.

In addition, plaintiffs contend the following provision of their settlements means the settlements were comprehensive and settled all partnership items:

> If this offer is accepted for the Commissioner, the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund of partnership items may be filed or prosecuted.

*See e.g. Isler*, 01-344 [Doc. #125] at 7. This provision merely prohibits reopening treatment of those partnership items that were settled under the agreement - *i.e.*, the adjustments on the attached schedule. It does not address unsettled items.

Finally, plaintiffs misstate the subject of the settlements, by saying they adjusted "transactions." *See Isler*, 01-344 [Doc. #125] at 8. They did not. The agreements specify the amounts of certain partnership items to which plaintiffs and the IRS agreed. They say nothing about transactions. Similarly, plaintiffs contend that settlement of the amount of farming expenses equals a settlement *sub silencio* on the nature of the underlying "farming" transactions. No such ambiguity exists in the settlements. Amounts of farming expenses are settled; the nature of partnership transactions is not.

## VII. Tax Court Decisions

In an about face, plaintiffs urge the Court to review extensive extrinsic evidence and disregard the plain language of Tax Court decisions. Those decisions attributed disallowed partnership losses to sham tax motivated transactions, for example:

> . . . the adjustment to partnership income and expense for the 1984 taxable year are attributable to transactions which lacked economic substance, *as described in former I.R.C. § 6621(c)(3)(A)(v)*. . . .

*Isler*, 01-344 [Doc. #110] at B126 (emphasis added).[12]

Plaintiffs' new evidence, closing agreements with AMCOR tax matters partners, are consistent with the Tax Court Decisions. In them, the tax matters partners agreed to the applicability of tax motivated interest to tax assessed based on the Tax Court decisions. On the grounds that the IRS determined "certain expenses claimed were not deductible since they related to transactions which were factual or economic shams," the partners, "as the tax matters partner for each of the [AMCOR] partnerships" agreed:

> Effective upon the entry of the Decisions submitted herewith and such Decisions becoming final, Frederick H. Behrens agrees that the increased rate of interest set forth at I.R.C. § 6621(c) applies to any tax that is assessed as a result of the adjustments set forth in the Decision documents . . . .

*Isler*, 01-344 [Doc. #125-2] at 3, 4, 5; *see also id.* at 10, 11, 12.[13]

---

[12] The explicit attribution to a sham transaction for purposes of the tax motivated interest statute belies plaintiffs' claim that the "actual language" of the decisions does not make such attribution, *see Isler*, 01-344 [Doc. #125] at 12. Moreover, as a legal matter, contrary to plaintiffs' view, transactions which lack economic substance are tax motivated transactions. *See e.g. Estate of Carberry v. Commissioner*, 933 F.2d 1124, 1127, 1129-30 (2d Cir. 1991). Plaintiffs cite no authority for their position. And, contrary to plaintiffs' position, the decisions prove that a partial disallowance is not inconsistent with attribution to a sham transaction.

[13] Plaintiffs' new evidence is puzzling. The agreements are signed February 2002, but the relevant Tax Court decisions became final in October 2001. The language of the agreements suggests they were drafted before the decisions were entered, which is perhaps why the agreements comport with the motions for entry of decision and the decisions. *See e.g. Isler*, 01-344 [Doc. #125-2] at 3 ("WHEREAS, the respondent and the tax matters partner for each of the partnerships listed in Attachment A, whose partnership items are in dispute in docketed proceedings before the United States Tax Court, have reached a contingent agreement with respect to all of the disputed partnership items at issue in the cases listed in Attachment A, which agreement is set forth below and reflected in the Decision documents, submitted with Respondent's Motion for Entry of Decision in the cases listed in Attachments A and B and will become non-contingent as to each case listed in Attachment A when the Decision entered by the United States Tax Court in such case becomes final.").

Finally, apart from what the new evidence does or does not show, even if the Tax Court did not attribute losses to sham transactions, the Court would lack jurisdiction over plaintiffs' claims. The sham transaction issue was contested before the Tax Court and, as *Keener* concluded, unless it was resolved there, a subsequent partner level refund suit can not proceed.

## VIII. Plaintiffs' Summary Judgment Motion

Plaintiffs' supplemental brief reiterates their summary judgment argument. As in *Keener*, the jurisdictional issues raised by Challenge One and Challenge Two must be addressed first, before plaintiffs' motion may be addressed. Plaintiffs' motions may be resolved only if the Court rejects both jurisdictional challenges before it.

Plaintiffs' motion is predicated on the following faulty reasoning: if a partnership loss is disallowed for more than one reason and only one of the reasons is a tax motivated transaction, then the underpayment resulting from disallowance is not attributable to a tax motivated transaction. Common sense, plain statutory and regulatory language, and case law support the contrary position - that if an underpayment of tax is attributable to a tax motivated transaction, that attribution is not negated because the underpayment is also attributable to something else.

Common sense suggests that attribution to a sham transaction is not negated, because, in addition to losses being disallowed because attributable to a sham transaction (a tax motivated transaction), the losses are also disallowed for another reason, for example, the taxpayer's failure to substantiate them (a non-tax motivated transaction).

The applicable statue follows common sense. It requires imposition of tax motivated interest, whenever an underpayment is attributable to a tax motivated transaction, without regard to whether the underpayment also is attributable to something else:

> In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the annual rate of interest established under this section *shall be* 120 percent of the underpayment rate established under this subsection.
>
> . . . the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions . . . .

§ 6621(c)(1, 2) (1989) (emphasis added).

Plaintiffs, however, argue that attribution of the underpayment to something in addition to a tax motivated transaction circumvents the statutory mandate to impose tax motivated interest. Plaintiffs own brief, however, concedes their interpretation requires alteration of the statute by addition of the word "solely":

> . . . if there are *multiple, independent* grounds for adjusting the same transaction, some of which are TMTs and some of which are not, then there is no means to determine whether the underpayment is *solely* attributable to a tax motivated ground for adjustment without conducting a trial to eliminate all of the other non-tax motivated grounds for adjustment.

*Isler*, 01-344 [Doc. #125] at 14 (emphasis of first line of quote in original, otherwise emphasis added). The statute is not so restrictive. It does not require that an underpayment be *solely* attributable to a tax motivated transaction, before tax motivated interest may be assessed. It mandates, instead, imposition of the interest where the underpayment is attributable to a tax motivated transaction.

Similarly, the relevant regulation directs that the amount of a tax motivated underpayment is determined by first calculating tax liability as if all items were properly reported (i.e. adding back into reported taxable income all disallowed losses), and second by performing the same

calculation "[w]ithout taking into account any adjustments . . . that are attributable to tax motivated transactions," (i.e. calculate tax liability without adding back into reported taxable income disallowed losses attributable to tax motivated transactions). *See Treas. Reg.* § 301.6621-2T, Q-5, A-5 (1), (2) (1984). The difference between the two calculations is the amount of the tax motivated underpayment (on which tax motivated interest is charged).

Plaintiffs argue both calculations are equal where disallowed partnership losses are attributable to both a tax motivated transaction and to something else. Like their statutory interpretation, plaintiffs' interpretation adds the word "solely" where the regulation does not employ it, i.e., plaintiffs read step two as "without taking into account any adjustments . . . that are *solely* attributable to tax motivated transactions." The regulation, like the statute, is not so restrictive. Rather, the second calculation called for by the regulation precludes adding back into taxable income an adjustment (e.g. disallowed loss) attributable to a tax motivated transactions, even if the adjustment is also attributable to something else.

Case law supports our statutory and regulatory construction. Where a disallowance is attributable both to a tax motivated transaction and to a non-tax motivated transaction, imposition of tax motivated interest on the resulting underpayment is appropriate. *See Allison v. Commissioner*, 1991 WL 34612 (U.S. Tax Court Mar. 18, 1991); *Barber v. Commissioner*, 1989 WL 61944 (U.S. Tax Court Jun. 13, 1989).

By contrast, where a disallowance (and resulting underpayment) is solely attributable to a single non-tax motivated transaction, tax motivated interest is appropriate only if the non-tax motivated ground is intertwined with a tax motivated ground. *See e.g. Gainer v. Commissioner*, 893 F.2d 225 (9th Cir. 1990); *Irom v. Commissioner*, 866 F.2d 545 (2d Cir. 1989); *Todd v.*

*Commissioner*, 862 F.2d 540 (5th Cir. 1988); *McCrary v. Commissioner*, 92 T.C. 827 (1989).

Plaintiffs' prior briefing blurs this dichotomy, characterizing *Todd* and *McCrary* as cases involving attribution of a disallowance (and resulting tax liability) to more than a single non-tax motivated grounds. *See e.g. Br.*, 01-344 [Doc. #59] at 17-21. As the Tax Court explained, however, in *Todd*, the tax liability was solely attributable to a ground (failure to place in service) that did not support the imposition of tax motivated interest:

> In *Gainer* and *Todd*, the taxpayers made valuation overstatements of certain property and claimed depreciation deductions and investment tax credits on the basis of these valuations. This Court and the Courts of Appeals determined, however, that the properties had not been placed in service; therefore, the taxpayers' claimed deductions were disallowed on that ground and not because of any valuation overstatement.

*Santa Monica Pictures, LLC v. Commissioner*, 2005 WL 1111792, at *97 (U.S. Tax Court May 11, 2005); *Zenkel v. Commissioner*, 1996 WL 482093, at *27 (U.S. Tax Court Aug. 27, 1996). In the *McCrary* case, the Tax Court likewise explained that the ground for the underpayment was not on a ground to which tax motivated interest applied:

> In the *McCrary* case, the underpayments were deemed to result from a concession that the agreement at issue was a license and not a lease. Although property was overvalued in each of those cases, the overvaluations were not the ground on which the taxpayers' liability was sustained.

*Zenkel v. Commissioner*, *supra*.[14]

---

[14] *See also Boyer v. Commissioner*, 1992 WL 379284, at *21 n.9 (U.S. Tax Court Dec. 22, 1992); *Weber v. Commissioner*, 1994 WL 386163, at *7 (U.S. Tax Court July 25, 1994); *Nowak v. Commissioner*, 1994 WL 456791, at *4 (U.S. Tax Court Aug. 24, 1994); *Grelsamer v. Commissioner*, 1996 WL 482954, at *26 (U.S. Tax Court Aug. 27, 1996); *Gollin v. Commissioner*, 1996 WL 579898, at *29 (U.S. Tax Court Oct. 9, 1996); *Jaroff v. Commissioner*, 1996 WL 684378, at *25 (U.S. Tax Court Nov. 27, 1996); *Becker v. Commissioner*, 1996 WL

(continued...)

In sum, where a tax underpayment is attributable to a tax motivated transaction, tax motivated interest is mandatory, even if the underpayment is also attributable to something else.

## IX. Conclusion

In accord with *Keener*, plaintiffs' claims for tax motivated interest should be dismissed.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

RICHARD T. MORRISON
*Acting Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

October 4, 2007

---

[14] (...continued)
705778, at *19 (U.S. Tax Court Dec. 9, 1996); *Friedman v. Commissioner*, 1996 WL 735497, at *24 (U.S. Tax Court Dec. 26, 1996); *Sann v. Comissioner*, 1997 WL 309116, at *31 (U.S. Tax Court June 10, 1997); *Kaliban v. Commissioner*, 1997 WL 325493, at *24 (U.S. Tax Court June 16, 1997); *West v. Commissioner*, 2000 WL 1899290, at *12 (U.S. Tax Court Dec. 22, 2000); *Thornsjo v. Commissioner*, 2001 WL 617211, at *15 (U.S. Tax Court June 6, 2001); *Korchak v. Commissioner*, 2005 WL 2656127, at *16 (U.S. Tax Court Oct. 18, 2005).

## APPENDIX: STATUTES and REGULATIONS

### SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT.

**[Sec. 183(a)]**

(a) GENERAL RULE.– In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

. . .

### SEC. 6226. JUDICIAL REVIEW OF FINAL PARTNERSHIP ADMINISTRATIVE ADJUSTMENTS.

. . .

**[Sec. 6226(f)]**

(f) SCOPE OF JUDICIAL REVIEW.– A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates and the proper allocation of such items among the partners.

. . .

### SEC. 6230. ADDITIONAL ADMINISTRATIVE PROVISIONS.

. . .

**[Sec. 6230(c)]**

(c) CLAIMS ARISING OUT OF ERRONEOUS COMPUTATIONS, ETC.–

(1) IN GENERAL.– A partner may file a claim for refund on the grounds that–

(A) the Secretary erroneously computed any computational adjustment necessary–

(i) to make the partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return, or

(ii) to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or

(B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

(2) TIME FOR FILING CLAIM.–

(A) UNDER PARAGRAPH (1)(A).– Any claim under paragraph (1)(A) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

(B) UNDER PARAGRAPH (1)(B).– Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:

(i) the day on which the settlement is entered into,

(ii) the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires, or

(iii) the day on which the decision of the court becomes final.

. . .

(4) NO REVIEW OF SUBSTANTIVE ISSUES.– For purposes of any claim or suit under this subsection, the treatment of partnership items on the partnership return, under the settlement, under the final partnership administrative adjustment, or under the decision of the court (whichever is appropriate) shall be conclusive.

**[Sec. 6230(d)(6)]**

(d) SPECIAL RULES WITH RESPECT TO CREDITS OR REFUNDS ATTRIBUTABLE TO PARTNERSHIP ITEMS.–

. . .

(6) SUBCHAPTER B OF CHAPTER 66 NOT APPLICABLE.– Subchapter B of chapter 66 (relating to limitations on credit or refund) shall not apply to any credit or refund of an overpayment attributable to a partnership item (or an affected item).

. . .

**SEC. 6231. DEFINITIONS AND SPECIAL RULES**

**[Sec. 6231(a)]**

(a) DEFINITIONS.–For purposes of this subchapter–

…

(3) PARTNERSHIP ITEM.– The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that,

for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

**[Sec. 6231(b)]**

(b) ITEMS CEASE TO BE PARTNERSHIP ITEMS IN CERTAIN CASES.–

(1) In General.–For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date–

(A) the Secretary mails to such partner a notice that such items shall be treated as nonpartnership items,

(B) the partner files suit under section 6228(b) after the Secretary fails to allow an administrative adjustment request with respect to any of such items,

(C) the Secretary enters into a settlement agreement with the partner with respect to such items, or

(D) such change occurs under subsection (e) of section 6223 (relating to effect of Secretary's failure to provide notice) or under subsection (C) of this section.

**SEC. 7422. CIVIL ACTIONS FOR REFUND.**

. . .

**[Sec. 7422(h)]**

(h) SPECIAL RULE FOR ACTIONS WITH RESPECT TO PARTNERSHIP ITEMS.– No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

**TREAS. REG. SEC. 301.6231(a)(3)-1. PARTNERSHIP ITEMS. (1986)**

. . .

**[Sec. 301.6231(a)(3)-1(b)]**

**(b)** ***Factors that affect the determination of partnership items.*****–**The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.

. . .

**TREAS. REG. SEC. 301.6221-2T. QUESTIONS AND ANSWERS RELATING TO THE INCREASED RATE OF INTEREST ON SUBSTANTIAL UNDERPAYMENTS ATTRIBUTABLE TO CERTAIN TAX MOTIVATED TRANSACTIONS (TEMPORARY). (1984)**

. . .

Q-5. How is the amount of a tax motivated underpayment determined?

A-5. Except as provided in A-6 of this section, the amount of a tax motivated underpayment is determined in the following manner:

(1) Calculate the amount of the tax liability for the taxable year as if all items of income, gain, loss, deduction, or credit, had been reported properly on the income tax return of the taxpayer ("total tax liability"); and

(2) Without taking into account any adjustments to items of income, gain, loss, deduction, or credit that are attributable to tax motivated transactions (as defined in A-2 through A-4 of this section), calculate the amount of the tax liability for the taxable year as if all other items of income, gain, loss, deduction, or credit had been reported properly on the income tax return of the taxpayer ("tax liability without regard to tax motivated transactions").

(3) The difference between the total tax liability and the tax liability without regard to tax motivated transactions is the amount of the tax motivated underpayment.